**Fill in this information to identify the case:**

United States Bankruptcy Court for the District of <u>Eastern District of Missouri</u>

Case number (*if known*): _____ Chapter <u>11</u>

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Briggs & Stratton Corporation |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years** <br><br> Include any assumed names, trade names, and *doing business as* names | Briggs & Stratton Power Products Group, LLC <br> Briggs & Stratton Power Products, LLC <br> Briggs & Stratton Power Products Group |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 39-0182330 |

4.  **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 12301   W. Wirth Street <br> Number   Street | Number   Street |
| | P.O. Box 702 <br> P.O. Box |
| Wauwatosa   WI   53222 <br> City   State   ZIP Code | Milwaukee   WI   53201 <br> City   State   ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| United States of America <br> County | Number   Street |
| | City   State   ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | https://www.basco.com/ |

6.  **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other.  Specify: _____

| Debtor | Briggs & Stratton Corporation | Case number (if known) | 20-_____ ( ) |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
☐ Railroad (as defined in 11 U.S.C. § 101(44))
☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
☒ None of the above

B. *Check all that apply:*

☐ Tax- exempt entity (as described in 26 U.S.C. § 501)
☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes.
3353 – Electrical Equipment Manufacturing

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7
☐ Chapter 9
☒ Chapter 11. *Check all that apply*:

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1). Its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000 **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☒ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11 (Official Form 201A)* with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes    District _____    When _____    Case number _____
                                              MM/ DD/ YYYY

                District _____    When _____    Case number _____
                                              MM / DD/ YYYY

Debtor    Briggs & Stratton Corporation                                    Case number (if known)    20-_____  (   )
          Name

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No

☒ Yes

| | | | | |
|---|---|---|---|---|
| Debtor | See Schedule 1 | | Relationship | See Schedule 1 |
| District | Eastern District of Missouri | | When | July 20, 2020 |
| | | | | MM / DD/ YYYY |
| Case number, if known | | | | |

List all cases. If more than 1, attach a separate list.

**11. Why is the case filed in this district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____

| | | |
|---|---|---|
| Number | Street | |
| City | State | ZIP Code |

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact Name _____

Phone _____

---

## Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

(on a consolidated basis with all affiliated debtors)

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☒ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

| Debtor | Briggs & Stratton Corporation | | | Case number (if known) | 20-_____ ( ) |
| | Name | | | | |

**15. Estimated assets**
(on a consolidated basis with all affiliated debtors)

| | | | | | |
|---|---|---|---|---|---|
| ☐ | $0-$50,000 | ☐ | $1,000,001-$10 million | ☐ | $500,000,001-$1 billion |
| ☐ | $50,001-$100,000 | ☐ | $10,000,001-$50 million | ☒ | $1,000,000,001-$10 billion |
| ☐ | $100,001-$500,000 | ☐ | $50,000,001-$100 million | ☐ | $10,000,000,001-$50 billion |
| ☐ | $500,001-$1 million | ☐ | $100,000,001-$500 million | ☐ | More than $50 billion |

**16. Estimated liabilities**
(on a consolidated basis with all affiliated debtors)

| | | | | | |
|---|---|---|---|---|---|
| ☐ | $0-$50,000 | ☐ | $1,000,001-$10 million | ☐ | $500,000,001-$1 billion |
| ☐ | $50,001-$100,000 | ☐ | $10,000,001-$50 million | ☒ | $1,000,000,001-$10 billion |
| ☐ | $100,001-$500,000 | ☐ | $50,000,001-$100 million | ☐ | $10,000,000,001-$50 billion |
| ☐ | $500,001-$1 million | ☐ | $100,000,001-$500 million | ☐ | More than $50 billion |

---

### Request for Relief, Declaration, and Signatures

**WARNING** – Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

- ▪ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

- ▪ I have been authorized to file this petition on behalf of the debtor.

- ▪ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __July 20, 2020__
MM / DD / YYYY

**✗** _____    Mark A. Schwertfeger
Signature of authorized representative of    Printed name
debtor

Senior Vice President and Chief
Financial Officer
Title

**18. Signature of attorney**

**✗** [ ] /s/ Robert E. Eggmann    Date    July 20, 2020
Signature of attorney for debtor    MM / DD / YYYY

Robert E. Eggmann    Ronit J. Berkovich
Printed Name

Carmody MacDonald P.C.    Weil, Gotshal & Manges LLP
Firm Name

120 S. Central Avenue, Suite 1800    767 Fifth Avenue
Address

St. Louis, Missouri 63105    New York, New York 10153
City/State/Zip

(314) 854-8600    (212) 310-8000
Contact Phone

ree@carmodymacdonald.com    Ronit.Berkovich@weil.com
Email Address

#37374MO    Missouri
Bar Number    State

## Schedule 1

### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the affiliated entities listed below (including the debtor in this chapter 11 case, collectively, the "**Debtors**") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Missouri. The Debtors have filed a motion requesting that the chapter 11 cases of these entities be consolidated for procedural purposes only and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

| COMPANY |
| --- |
| Briggs & Stratton Corporation |
| Billy Goat Industries, Inc. |
| Allmand Bros., Inc. |
| Briggs & Stratton International, Inc. |
| Briggs & Stratton Tech, LLC |

**RESOLUTIONS ADOPTED BY**
**THE BOARD OF DIRECTORS OF**
**BRIGGS & STRATTON CORPORATION**
**AT A MEETING HELD ON JULY 19, 2020**

**WHEREAS**, the board of directors (the "Board") of Briggs & Stratton Corporation, a Wisconsin corporation (the "Company"), has reviewed and had the opportunity to ask questions about the materials presented by the management and the legal and financial advisors of the Company regarding the liabilities and liquidity of the Company, the strategic alternatives available to it and the impact of the foregoing on the Company's businesses; and

**WHEREAS**, the Board has had the opportunity to consult with the management and the legal and financial advisors of the Company to fully consider each of the strategic alternatives available to the Company; and

**WHEREAS**, the Board believes that commencing the Chapter 11 Cases (as defined below) is in the best interests of the Company; and

**WHEREAS**, it is proposed that the Company and certain of its direct wholly-owned subsidiaries (together with the Company, the "Sellers") enter into a Stock and Asset Purchase Agreement (the "SAPA") with Bucephalus Buyer, LLC (the "Buyer"), consistent with the form thereof discussed with the directors of the Company prior to and on the date hereof, pursuant to which, among other things, (i) the Buyer will act as a "stalking horse" bidder in the Court-supervised sale process for the business and assets of the Sellers and (ii) subject to the receipt of higher or better offers in accordance with the Bidding Procedures Order (as defined in the SAPA) as well as the approval of the Bankruptcy Court (as defined below) and other customary conditions set forth in the SAPA, the Buyer will purchase, acquire and assume from the Sellers the Acquired Assets, the Acquired Equity Interests and the Assumed Liabilities (each as defined in the SAPA), in each case as set forth in the SAPA, for a cash purchase price of $550,000,000 subject to certain adjustments as set forth in the SAPA; and

**WHEREAS**, the Board believes that entering into the lending transactions or the guarantee of the lending transactions, as applicable, under that certain debtor-in-possession credit facility is in the best interests of the Company; and

**WHEREAS**, the Company (as party to that certain Senior Secured Debtor-In-Possession Revolving and Term Credit Agreement, the "DIP Borrower") desires to enter into, deliver, and perform its obligations under that certain Senior Secured Debtor-In-Possession Revolving and Term Credit Agreement, dated on or around the date hereof (as may be amended, restated, amended and restated, supplemented, and/or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the DIP Borrower, Briggs & Stratton AG, a Swiss corporation ("Swiss Borrower"), and the other borrowers from time to time party thereto, as borrowers (together with the DIP Borrower and the Swiss Borrower, each individually a "Borrower" and, collectively, the "Borrowers"), the lenders from time to time party thereto (the "DIP Lenders") and JPMorgan Chase Bank, N.A., as administrative agent for the DIP Lenders (in such capacity, including any successor thereto, the "DIP Administrative Agent") and as collateral agent for the DIP Lenders (in such capacity, including any successor thereto, the "DIP Collateral Agent," and together with the DIP Administrative Agent, the "DIP Agents"), pursuant to which $677,500,000 in aggregate principal amount will be made available to the Borrowers on the terms and conditions set forth in the DIP Credit Agreement; and

**WHEREAS**, severally pursuant to (i) the entry by the applicable bankruptcy court of any interim and final orders approving the DIP Credit Agreement, (ii) that certain U.S. Senior Secured

in-Possession Collateral Agreement, dated on or around the date hereof (as may be amended, restated, amended and restated, supplemented, and/or otherwise modified from time to time, the "DIP Security Agreement"), by and among, the DIP Borrower, the other pledgors from time to time party thereto (together with the DIP Borrower, each individually a "DIP Pledgor" and, collectively, the "DIP Pledgors") and the DIP Collateral Agent and (iii) that certain Debtor-in-Possession Guarantee Agreement, dated on or around the date hereof (as may be amended, restated, amended and restated, supplemented, and/or otherwise modified from time to time, the "DIP Guarantee Agreement"), among the DIP Borrower, the subsidiaries of the DIP Borrower from time to time party thereto (together with the DIP Borrower, each individually a "DIP Guarantor" and, collectively, the "DIP Guarantors") and the DIP Collateral Agent, (x) the DIP Pledgors shall grant to the DIP Collateral Agent for the benefit of the DIP Lenders and the other secured parties a legal, valid, continuing, and enforceable security interest in the Collateral (with the priority fully described therein and in the DIP Credit Agreement), (such grant, the "Security Grant") and (y) the DIP Guarantors shall guarantee, without limitation, the obligations of the Borrowers (under, without limitation, the DIP Credit Agreement) (such guarantee the "Guaranty of Obligations").

        **WHEREAS**, the Board believes that taking the actions set forth below are in the best interests of the Company and, therefore, desires to approve the following resolutions.

## I.      Commencement of Chapter 11 Case

        **NOW, THEREFORE, BE IT RESOLVED**, that the Board has determined, after due consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company, its creditors, and other parties in interest that a petition be filed by the Company seeking relief under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and be it further

        **RESOLVED**, that any elected officer or director of the Company (each, an "Authorized Officer") be, and each of them, with full power and authority to act without the others, hereby is, authorized, empowered and directed to execute and file in the name and on behalf of the Company, and under its corporate seal or otherwise, all petitions, schedules, statements, motions, lists, applications, pleadings, orders, and other documents in the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court"), and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers and other professionals, and to take and perform any and all further acts and deeds which such Authorized Officer, who may act without the joinder of any other Authorized Officer, deems necessary, proper, or desirable in connection with the Company's chapter 11 cases (each, a "Chapter 11 Case" and together, the "Chapter 11 Cases"), including, without limitation, continuing to use cash in the ordinary course and negotiating, executing, delivering, and performing any and all documents, agreements, certificates, and/or instruments in connection with the transactions and professional retentions set forth in this resolution, with a view to the successful prosecution of such Chapter 11 Cases; and be it further

## II.     Stalking Horse Agreement

        **RESOLVED**, that the Board has carefully considered the terms and conditions of the transactions contemplated thereby, and the Board has determined, after due consultation with the management and the legal and financial advisors of the Company, that it is advisable and in the best interests of the Company, its creditors, and other parties in interest to enter into the SAPA substantially in the form discussed with the directors of the Company prior to and on the date hereof; and be it further

**RESOLVED**, that the form, terms and provisions of the SAPA, and the execution, delivery and performance thereof and the consummation of the transactions contemplated thereunder by the Company, are hereby authorized and approved in all respects; and be it further

**RESOLVED**, that the Authorized Officers be, and each of them, with full power and authority to act without the others, hereby is, authorized, empowered and directed in the name and on behalf of the Company to negotiate, finalize, execute and deliver the SAPA, with any such changes, revisions, amendments and additions thereto as any such Authorized Officer shall, in his or her sole discretion, deem appropriate, such approval to be conclusively evidenced by such negotiation, finalization, execution and delivery thereof, and that each Authorized Officer be, and each of them, with full power and authority to act without the others, hereby is, authorized, empowered and directed in the name and on behalf of the Company to cause the Company to perform its obligations under the SAPA and to cause the Company to consummate the transactions contemplated by the SAPA in accordance with the terms of the SAPA and to do any and all other acts and things, and to negotiate, finalize, execute and deliver any and all additional certificates, documents or instruments, that, in the opinion of such Authorized Officer, shall be necessary, desirable or appropriate to carry into effect the purposes and intent of these resolutions; and be it further

**RESOLVED**, that, in order for the Company to comply with all applicable requirements, rules and regulations of domestic or foreign (whether national, federal, state, provincial, local or otherwise) administrative or governmental agencies in each jurisdiction where the Company or any of its subsidiaries conducts any business or owns any property or assets, the Authorized Officers be, and each of them, with full power and authority to act without the others, hereby is, authorized, empowered and directed in the name and on behalf of the Company to prepare or cause to be prepared, execute and file or cause to be filed, and to pay any and all fees and costs related thereto or associated therewith, all registrations, notifications, reports, statements, declarations, documents and information required to be filed by the Company with any such administrative or governmental agency or agencies as may, in their judgment, be required or advisable in connection with the SAPA or the transactions contemplated thereunder; and be it further

**RESOLVED**, that the Authorized Officers be, and each of them, with full power and authority to act without the others, hereby is, authorized, empowered and directed in the name and on behalf of the Company to negotiate, enter into, execute, deliver and perform obligations under one or more ancillary agreements, including transfer documents relating to the SAPA and such similar agreements as any such Authorized Officer shall, in his or her sole discretion, deem necessary, desirable or appropriate, and to consent to or approve, the designation of any agent pursuant thereto; and be it further

**RESOLVED,** that the Authorized Officers be, and each of them, with full power and authority to act without the others, hereby is, authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, perform, and approve any necessary public disclosures and filings, including any regulatory, governmental or industry-related filings or actions, related to, and such other documents, agreements, instruments and certificates as may be required by the SAPA, and to take such other actions that in the judgment of the Authorized Officer shall be or become necessary, proper or desirable in connection execution or implementation of the SAPA; and be it further

## III.    Retention of Advisors

**RESOLVED**, that the law firm of Weil, Gotshal & Manges LLP, located at 767 Fifth Avenue, New York, New York 10153, is hereby retained as attorneys for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm of Carmody MacDonald P.C., located at 120 South Central Avenue #1800, Clayton, Missouri 63105, is hereby retained as attorneys for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm Foley & Lardner LLP, located at 777 East Wisconsin Avenue, Milwaukee, WI 53202, is hereby retained as corporate counsel for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm of Houlihan Lokey Inc., located at 111 South Wacker Drive, 37th Floor, Chicago, Illinois 60606, is hereby retained as investment banker for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm of Ernst & Young, LLP, located at 5 Times Square, New York, New York 10036, is hereby retained as restructuring and tax advisors for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm of Deloitte LLP, located at 30 Rockefeller Plaza, New York, New York 10112 is hereby retained as auditor and tax consultant for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

**RESOLVED**, that the firm of Kurtzman Carson Consultants LLC, located at 1290 Avenue of the Americas, 9th Floor, New York, New York 10104, is hereby retained as claims and noticing agent for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval; and be it further

## IV.    <u>Entry into Debtor-In-Possession Facility</u>

**RESOLVED**, that in connection with the Chapter 11 Cases, it is in the best interest of the Company to engage in, and the Company will obtain benefits from, the lending transactions or the guarantee of the lending transactions, as applicable, under that certain debtor-in-possession credit facility in an aggregate principal amount of up to $677,500,000 as evidenced by the DIP Credit Agreement; in each case, subject to approval by the Bankruptcy Court, which is necessary and appropriate to the conduct, promotion and attainment of the business of the Company (the "<u>Debtor-in-Possession Financing</u>"); and be it further

**RESOLVED**, that the form, terms and provisions of each of (i) the DIP Credit Agreement, including the use of proceeds to provide liquidity for the Company throughout the Chapter 11 Cases, substantially in the form presented to the Board, (ii) the DIP Guarantee Agreement,  (iii) the DIP Security Agreement, and (iv) any and all of the other agreements, including, without limitation, any guarantee, security agreement, letters, certificates, documents, and instruments authorized, executed, delivered, reaffirmed, verified, and/or filed in connection with the Debtor-in-Possession Financing (together with the DIP Credit Agreement, the DIP Guarantee Agreement and the DIP Security Agreement, collectively, the "<u>DIP Financing Documents</u>") and the Company's performance of its obligations thereunder, including, without limitation, the borrowings, grants of security interests and guarantees, as applicable, contemplated thereunder, are hereby confirmed, ratified and approved in all respects; and be it further

**RESOLVED**, that the Authorized Officers be, and each of them, with full power and authority to act without the others, hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to cause the Company to negotiate and approve the terms, provisions of and performance of, and to prepare, execute and deliver the DIP Financing Documents to which it is a party, in the name and on behalf of the Company under its corporate seal or otherwise, and such other documents, agreements, instruments, and certificates as may be required by any DIP Agent or the DIP Lenders or required by the DIP Credit Agreement and any other DIP Financing Documents; and be it further

**RESOLVED**, that the Company be, and hereby is, authorized, empowered and directed to incur or guarantee, as applicable, the obligations (including, without limitation, the Obligations as defined in the DIP Credit Agreement) and to undertake any and all related transactions contemplated under the DIP Financing Documents including the granting of security thereunder (collectively, the "DIP Financing Transactions"); and be it further

**RESOLVED**, that the Authorized Officers be, and each of them, with full power and authority to act without the others, hereby is, authorized, empowered and directed to, as part of the adequate protection to be provided to the DIP Lenders and DIP Agents under the DIP Credit Agreement, to grant replacement security interests in, and replacement liens on, any and all property of the Company as collateral pursuant to the Bankruptcy Court's orders to secure all of the obligations and liabilities of the Company thereunder to the DIP Lenders and the DIP Agents, and to authorize, execute, verify, file, and/or deliver to the DIP Agents, on behalf of the Company, all agreements, documents, and instruments required by the DIP Lenders or the DIP Agents in connection with the foregoing; and be it further

**RESOLVED**, that the Authorized Officers be, and each of them, with full power and authority to act without the others, hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to take all such further actions including, without limitation, to pay all fees and expenses, in accordance with the terms of the DIP Financing Documents, which shall, in such Authorized Officer's sole judgment, be necessary, proper, or advisable to perform the Company's obligations under or in connection with the DIP Financing Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and be it further

**RESOLVED**, that the Authorized Officers be, and each of them, with full power and authority to act without the others, hereby is, authorized, empowered and directed, in the name and on behalf of the Company, to execute and deliver any amendments, supplements, modifications, renewals, reaffirmations, replacements, consolidations, substitutions, and extensions of the DIP Credit Agreement and/or any of the DIP Financing Documents which shall, in such Authorized Officer's sole judgment, be necessary, proper, or advisable; and be it further

## V.    Debtor-In-Possession Financing

**RESOLVED**, that the DIP Borrower is hereby authorized to execute and deliver, and to borrow and obtain letters of credit, as applicable, under, the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement, and the Additional DIP Documents (as defined below) to which the DIP Borrower is a party or signatory and the performance of its obligations thereunder and transactions contemplated thereby thereunder and under the Interim Order (as defined in the DIP Credit Agreement) and the Final Order (as defined in the DIP Credit Agreement), including, without limitation, the incurrence of debt, the granting of security interests (including without limitation, the Security Grant), the granting of pledges, and the making of guarantees thereunder (including, without limitation, the Guaranty of Obligations) and such other actions, and omissions to take actions, as are necessary, appropriate or desirable in connection with the foregoing, and that any elected officer (including, without limitation, any chief executive officer, chief financial officer, treasurer, assistant treasurer, president, vice president, secretary and assistant secretary) of the DIP Borrower (each, an "Authorized Person"), be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of the DIP Borrower, to execute and deliver the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement, and the Additional DIP Documents to which the DIP Borrower is a party or signatory and the performance of its obligations thereunder and under the Interim Order and the Final Order, including, without limitation, the incurrence of debt, the granting of security interests (including, without limitation, the Security Grant) and the making of guarantees thereunder (including, without limitation, the Guaranty of Obligations) and

such other actions, and omissions to take actions, as are necessary, appropriate or desirable in connection with the foregoing, with such modifications thereto as such Authorized Person executing the same shall approve, his or her execution thereof being deemed conclusive evidence of such approval; and be it further

**RESOLVED**, that the Authorized Persons of the DIP Borrower be, and each of them, with full power and authority to act without the others, hereby is individually authorized, empowered and directed, in the name and on behalf of the DIP Borrower, to execute and deliver, and attest to such execution and delivery of, in the name of and on behalf of the DIP Borrower, all such other agreements (including, without limitation, any security agreements, pledge agreements, guaranty agreements, notes, intercreditor agreements, mortgages, deeds, control agreements, and other collateral documents), certificates, instruments and other writings (as may be amended, restated, amended and restated, supplemented, and/or otherwise modified from time to time, the "Additional DIP Documents"), and to take all such other actions, as such Authorized Person may deem necessary or appropriate in connection with the transactions contemplated by these resolutions; and be it further

**RESOLVED**, the DIP Borrower will obtain benefits from the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement and the Additional DIP Documents, and it is in the best interest of the DIP Borrower to enter into the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement and the Additional DIP Documents and be bound by the Interim Order and the Final Order; and be it further

**RESOLVED**, that the DIP Borrower hereby authorizes, adopts and approves, in all respects the form, terms and provisions of the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement, the Interim Order, the Final Order and any other Additional DIP Documents; and be it further

**RESOLVED**, that the DIP Borrower is authorized to update the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement, and any Additional DIP Documents and the transactions contemplated thereby and is authorized to enter into any Additional DIP Documents to which the DIP Borrower is or is contemplated to be a party and any other agreements, documents, certificates or filings that any Authorized Person of the DIP Borrower determines are necessary, appropriate or desirable in connection with the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement, the Interim Order, the Final Order and any other Additional DIP Documents to which the DIP Borrower is or is contemplated to be a party, as security for the Obligations or any portion of them and as otherwise provided in the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement, or the Additional DIP Documents; and be it further

**RESOLVED**, that the Authorized Persons of the DIP Borrower be, and each of them, with full power and authority to act without the others, hereby is individually authorized, empowered and directed, in the name and on behalf of the DIP Borrower, to execute and deliver such additional assignments, stock powers, powers of attorney, notices (including, without limitation, borrowing requests), lien perfection documents, consents to assignment, subordination agreements, interest rate protection and other hedging agreements, letters of credit and master letter of credit agreements, cash management agreements, assignments, collateral assignments, fee letters and other customary loan documents, third party collateral access agreements, bailee letters, deposit account control agreements, securities account control agreements, insurance certificates, UCC financing statements, mortgages, deeds of trust, warehouse notifications, collateral assignments, and other customary secured loan documents and other agreements, certificates, instruments and other writings (all of the foregoing, for the avoidance of doubt, constituting Additional DIP Documents hereunder) as any DIP Agent or the DIP Lenders may request or as may be necessary or appropriate in the sole judgment of such Authorized Person to create, preserve and perfect the

security interests and other liens required or contemplated pursuant to, or otherwise to give effect to any of the transactions contemplated by, any of the Additional DIP Documents; and be it further

**RESOLVED**, that the Authorized Persons of the DIP Borrower be, and each of them, with full power and authority to act without the others, hereby is individually authorized, authorized, empowered and directed, in the name and on behalf of the DIP Borrower, to execute and deliver all such other agreements, certificates, instruments and other writings, and to take all such other actions, as any such Authorized Person may deem necessary or appropriate in connection with the transactions contemplated by these resolutions (and the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement, the Additional DIP Documents, the Interim Order and the Final Order); and be it further

**RESOLVED**, that all actions, proceedings, elections, appointments, approvals, assignments, grants, transfers, agreements, acts, declarations, instruments, documents, executions and transactions, whether done, taken, executed or acted upon, or purported to be done, taken, executed or acted upon prior to the date hereof, by or on behalf of the DIP Borrower in connection with the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement, or any of the Additional DIP Documents, be, and the same hereby are, approved, adopted, ratified and confirmed in all respects; and be it further

**RESOLVED**, that the Authorized Persons of the DIP Borrower be, and each of them, with full power and authority to act without the others, hereby is individually authorized, empowered and directed, in the name and on behalf of the DIP Borrower, to take such additional actions, to perform all acts and deeds, and to execute, ratify, certify, deliver, file and record such additional agreements, certificates, instruments and other writings as any of them may deem necessary or appropriate to implement the provisions of the foregoing resolutions (including, without limitation, amendments, restatements, replacements, supplements, extensions, reaffirmations or other modifications of the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement, the Additional DIP Documents and any of the foregoing documents from time to time) or otherwise in connection with the DIP Credit Agreement, the DIP Security Agreement, the DIP Guarantee Agreement or any of the Additional DIP Documents, to appoint such agents on behalf of the DIP Borrower as any such Authorized Person may deem necessary or appropriate in connection with the foregoing resolutions or to comply with the requirements of the agreements, certificates, instruments and other writings approved by the foregoing resolutions, the authority for the taking or performing of such actions, acts or deeds and the execution, ratification, certification, delivery, filing or recording of such agreements, certificates, instruments or other writings to be conclusively evidenced thereby; and be it further

**RESOLVED**, that, to the extent the DIP Borrower serves as the sole member, managing member or other governing body (collectively, a "Controlling Company"), in each case, of any other company (a "Controlled Company"), each Authorized Person, any one of whom may act without the joinder of any of the others, be, and each of them hereby is, severally authorized, empowered and directed in the name and on behalf of such Controlling Company (acting for such Controlled Company in the capacity set forth above, as applicable), to take all of the actions on behalf of such Controlled Company that an Authorized Person is herein duly authorized to take on behalf of such Controlling Company; and be it further

## VI.   General Authority and Ratification

**RESOLVED**, that any Authorized Officer, who may act without the joinder of any other Authorized Officer, is hereby authorized, empowered, and directed, in the name and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file and/or record, and perform, such agreements, instruments, motions, affidavits, applications for approvals or rulings of

governmental or regulatory authorities, certificates, or other documents, and to take such other actions that in the judgment of any Authorized Officer, who may act without the joinder of any other Authorized Officer, shall be or become necessary, proper, or desirable in connection with these resolutions; and be it further

**RESOLVED**, that any and all past actions heretofore taken by any Authorized Officer in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects as the acts and deeds of the Company.

**Fill in this information to identify the case:**

Debtor name:  Briggs & Stratton Corporation

United States Bankruptcy Court for the Eastern District of Missouri
(State)

Case number (If known):  _____

☐  Check if this is an amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case.  Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Wilmington Trust N.A.  50 South Sixth Street, Suite 1290 Minneapolis, Minnesota 55402 | Attn.: Peter Finkel Phone: Facsimile: 612-217-5651 Email: pfinkel@wilmingtontrust.com | Unsecured Notes | Unliquidated | | | $195,462,000 |
| 2 | MuniStrategies, LLC Muni Strategies Sub- CDE#24, LLC  2819 North State Street (39216-4306) P.O. Box 2170 Jackson, MS 39225-2170 | Attn.:  Mark McCreery Phone: (601) 213-0414 Facsimile: Email: mark@munistrategies.com | New Market Tax Credit Financing | | $12,375,000 | $338,250 | $12,036,750 |
| 3 | DV Community Investment, LLC DVCI CDE XXXIV, LLC c/o Dudley Ventures  22 E. Jackson Street Phoenix, AZ 85004 | Attn.:  DV Community Investment, LLC DVCI CDE XXXIV, LLC Phone: (602)759-5292 Facsimile: Email: jlewis@dudleyventures.com | New Market Tax Credit Financing | | $7,760,000 | $225,000 | $7,535,000 |
| 4 | ZHEJIANG ZHOULI INDUSTRIAL CO  JINYANSHAN INDUSTRIAL ZONE WUYI 130, CN 321210 | Attn.: Zhou Jei (Danny Zhou) Phone:     +86 18869915999 Facsimile: Email: sales@chinazhouyi.cn | Trade Payables | | | | $ 4,941,699 |
| 5 | Sears, Roebuck & Co. Bankruptcy  2600 Eagan Woods Drive, Suite 400 St. Paul, MN 55121 | Attn.: Brigette G. Mcgrath and Gary Underdahl, ASK LLP Phone: 651-289-3857 Facsimile: 651-406-9676 Email: gunderdahl@askllp.com | General Litigation | Contingent, Unliquidated, Disputed | | | $3,816,056 |
| 6 | SunTrust Community Capital, LLC BS Statesboro Investment Fund, LLC ST CDE XXXVIII, LLC c/o SunTrust Bank  1155 Peachtree Street, Suite 300 Atlanta, GA 30309 | Attn: Steve Ross Phone: (404) 813-2415 Facsimile: Email: steve.ross@suntrust.com | New Market Tax Credit Financing | | $3,500,000 | $36,094 | $3,463,906 |

Briggs & Stratton Corporation                                    Case number (if known)     20-_____ (   )
Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 7    AMERICAN HONDA MOTOR COMPANY INC<br><br>1919 TORRANCE BLVD TORRANCE, CA US 90501-2746 | Attn.: Dan Wahn Phone: (678) 339-2597 Facsimile: Email: Dan_Wahn@ahm.honda.com | Trade Payables | | | | $ 3,250,478 |
| 8    JIANGSU JIANGHUAI ENGINE CO LTD<br><br>NO 58 SOUTH XIWANG ROAD YANCHENG 100 CN 224007 | Attn.: Bian Ming Phone: +86 13961996066 Facsimile: Email: bianming@dongyin.com | Trade Payables | | | | $3,058,526 |
| 9    HYDRO-GEAR LP<br><br>120 SOUTH LASALLE ST CHICAGO, IL US 60603-3403 | Attn.: Mike McCoy Phone: (317) 821-0477 Facsimile: Email: MMcCoy@hydro-gear.com | Trade Payables | | | | $2,694,164 |
| 10   STARTING USA CORPORATION<br><br>1676 ROWE PKWY POPLAR BLUFF, MO US 63901-7014 | Attn.: Charles Fortner, President Phone: (573) 686-9388 ext 113 Facsimile: Email: charlie.fortner@startingusa.com | Trade Payables | | | | $2,553,100 |
| 11   Leslie and Daniel Fassett re: Matter #454<br><br>c/o Ross Feller Casey, LLP 1650 Market Street Suite 3450 Philadelphia, PA  19103 | Attn.: Matthew Casey Phone: 215-574-2000 Facsimile: Email: mcasey@rossfellercasey.com; rgoldgen@rossfellercasey.com | Product Liability Litigation | | | | $2,000,000 |
| 12   ZHEJIANG CONSTANT ENGINE<br><br>YUEYING ROAD PAOJIANG IND COM PARK SHAOXING 130 CN 312000 | Attn.: Meng Yang, Eric Yin Phone:      +86 13957551800 1-909-680-9096 Facsimile: Email: mengy@zjconstant.com ericyin@zjconstant.com | Trade Payables | | | | $1,975,149 |
| 13   ANTHEM BLUE CROSS BLUE SHIELD<br><br>1671 W Streetsboro Rd Peninsula, OH 44264 | Attn.: Emily Wilson Phone: (708) 638-9355 Facsimile: Email: | Employee Medical Insurance Claims | Contingent, Unliquidated | | | $1,756,287 |
| 14   CHANGZHOU GLOBE CO LTD<br><br>NO. 65 (3-4) XINGGANG ROAD ZHONGLOU ZONE, CHANGZHOU 100 CN 213023 | Attn.: Chen Yin Phone: +86 15895061888 Facsimile: Email: yin@globetools.com | Trade Payables | | | | $1,519,651 |
| 15   METAL TECHNOLOGIES<br><br>2260 RELIABLE PKWY CHICAGO, IL US 60686-0022 | Attn.: Matt Fetter Phone: (260) 572-2150 Facsimile: Email: mfetter@metal-technologies.com | Trade Payables | | | | $1,124,037 |
| 16   MAZAK OPTONICS CORPORATION<br><br>39003 TREASURY CTR Chicago, IL US 60694-9000 | Attn.: Sherry Liu Phone: Facsimile: Email: sliu@mazaklaser.com | Trade Payables | | | | $1,120,500 |

Briggs & Stratton Corporation

Name

Case number (if known)    20-_____ ( )

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 17 | ACCURATE FABRICATION LLC<br><br>2050 CONSTITUTION AVE<br>HARTFORD, WI US 53027-8915 | Attn.:  Dave Meixelsperger<br>Phone: (262) 670-9428 ext 204<br>Facsimile:<br>Email: DaveM@accuratefab.net | Trade Payables | | | | $1,024,350 |
| 18 | GREEN BAY PACKAGING INC<br><br>BIN 53139<br>MILWAUKEE, WI US 53288-0001 | Attn.:  Roy Schneider<br>Phone: (920) 433-5230<br>Facsimile:<br>Email: rschneider@gbp.com | Trade Payables | | | | $969,440 |
| 19 | TREND TECHNOLOGIES LLC<br><br>4626 Eucalyptus Ave<br>Chino, CA 91710 | Attn.:  Brian Dickstein<br>Phone: (847) 640-2382<br>Facsimile:<br>Email: bdickstein@trendtechnologies.com | Trade Payables | | | | $913,657 |
| 20 | HOFFER PLASTICS CORPORATION<br><br>LOCK BOX 6617 131 S. DEARBORN<br>CHICAGO, IL US 60678-6617 | Attn.:  William Hoffer<br>Phone: (847)-741-5740<br>Facsimile:<br>Email: hoffer@hofferpl.com | Trade Payables | | | | $884,545 |
| 21 | R R DONNELLEY & SONS COMPANY<br><br>7810 SOLUTION CTR<br>CHICAGO, IL US 60677-0001 | Attn.:  William Gust<br>Phone: (713) 907-6432<br>Facsimile:<br>Email: william.gust@rrd.com | Trade Payables | | | | $816,590 |
| 22 | PLASTOCON INC<br><br>1200 W 2ND ST<br>OCONOMOWOC, WI US 53066-3403 | Attn.:  Joe Chmielewski<br>Phone: (262) 569-3131<br>Facsimile:<br>Email: joe.c@plastocon.com | Trade Payables | | | | $804,214 |
| 23 | WRIGHT METAL PRODUCTS CRATES LLC<br><br>111 FRANKLIN ST<br>LAVONIA, GA US 30553-4403 | Attn.:  Clyde Edwards<br>Phone: (256) 239-6769<br>Facsimile:<br>Email: cedwards@wmpcrates.com | Trade Payables | | | | $681,857 |
| 24 | DANTHERM S.P.A.<br><br>Via Gardesana 11<br>37010 Pastrengo (VR), Italy | Attn.:<br>Phone: +39 045 6770533<br>Facsimile: +39 045 6770534<br>Email: info.it@dantherm.com | Trade Payables | | | | $656,981 |
| 25 | DUTCHLAND PLASTICS LLC<br><br>54 ENTERPRISE CT<br>OOSTBURG, WI US 53070-1656 | Attn.:  Raka Rao<br>Phone: (920) 918-1855<br>Facsimile:<br>Email: rakarao@dutchland.com | Trade Payables | | | | $618,560 |
| 26 | G H TOOL & MOLD INC<br><br>28 CHAMBER DR<br>Washington, MO US 63090-5279 | Attn.:  Michelle Stuckhoff<br>Phone: 636-231-6504<br>Facsimile:<br>Email: michelle@ghtool.com | Trade Payables | | | | $610,948 |
| 27 | PRO UNLIMITED, INC.<br><br>7777 Glades Road<br>Suite 208<br>Boca Raton, FL 33434 | Attn.:<br>Phone: 800-291-1099<br>Facsimile:<br>Email: information@prounlimited.com | Trade Payables | | | | $594,911 |

Briggs & Stratton Corporation

Name

Case number (if known)    20-_____ ( )

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 28   A R NORTH AMERICA<br><br>140 81ST AVE NE<br>Minneapolis, MN US 55432-1770 | Attn.:  Jon Notch<br>Phone: (763) 398-6074<br>Facsimile:<br>Email: JonN@arnorthamerica.com | Trade Payables | | | | $588,652 |
| 29   CDW LIMITED<br><br>200 N MILWAUKEE AVENUE<br>Vernon Hills, IL 43785 | Attn.:  Bruce Kurkiewicz<br>Phone: 262-521-5660<br>Facsimile:<br>Email: bruce.kurkiewicz@cdw.com | Trade Payables | | | | $537,459 |
| 30   LELAND POWELL FASTENERS LLC<br><br>288 Holbrook Drive<br>Wheeling, IL 60090 | Attn.:<br>Phone: 812-689-8990<br>Facsimile:<br>Email: | Trade Payables | | | | $527,367 |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

|  |  |  |
|---|---|---|
| | § | **Chapter 11** |
| In re: | § | |
| | § | **Case No. 20-_____-_____** |
| **BRIGGS & STRATTON** | § | |
| **CORPORATION,** | § | |
| | § | |
| Debtor. | § | |

**CONSOLIDATED CORPORATE OWNERSHIP STATEMENT**
**PURSUANT TO FED. R. BANKR. P. 1007(a)(1) AND 7007.1**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedures, attached hereto as **Exhibit A** is an organizational chart reflecting all of the ownership interests in Briggs & Stratton Corporation, a Wisconsin Corporation ("**Briggs & Stratton**"), and its affiliated debtors (the "**Affiliated Debtors**") as proposed debtors and debtors-in-possession in the above captioned chapter 11 cases (collectively, the "**Debtors**").  Briggs & Stratton, on behalf of itself and the Affiliated Debtors, respectfully represents as follows:

1.      The following entities own equity interests in Briggs & Stratton in the following amounts: (i) BlackRock Fund Advisors (15.03%), (ii) Dimensional Fund Advisors, LP (7.02%), (iii) GMT Capital Corp. (5.40%), and (iv) The Vanguard Group, Inc. (5.27%).  To the best of the Debtors' knowledge and belief, no other person or entity owns, either directly or indirectly, 10% or more of the common stock of Briggs & Stratton.

2.      Briggs & Stratton owns 100% of the equity interests of Billy Goat Industries, Inc.

3.      Briggs & Stratton owns 100% of the equity interests of Allmand Bros., Inc.

4.      Briggs & Stratton owns 100% of the equity interests of Briggs & Stratton International, Inc.

5.      Briggs & Stratton owns 100% of the equity interests of Briggs & Stratton Tech, LLC.

## __Exhibit A__

**Organizational Chart**



**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | § § § | **Chapter 11** |
| **BRIGGS & STRATTON CORPORATION,** | § § § | **Case No. 20-_____-_____** |
|  | § § |  |
| Debtor. | § |  |

**Attachment to Voluntary Petition for**
**Non-Individuals Filing for Bankruptcy under Chapter 11**

1.      If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is 1-1370.

2.      The following financial data is the latest available information and refers to the debtor's condition on March 29, 2020.

|  |  |  |
|---|---|---|
| a. | Total assets | $ 1,589,398,000 |
| b. | Total debts (including debts listed in 2.c., below) | $ 1,350,058,000 |
| c. | Debt securities held by more than 500 holders: | |

Approximate number of holders:

| secured ☐ | unsecured ☒ | subordinated ☐ | $202.2 million of Unsecured Notes | Unknown[1] |
| secured ☐ | unsecured ☐ | subordinated ☐ | $_____ | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $_____ | _____ |
| secured ☐ | unsecured ☐ | subordinated ☐ | $_____ | _____ |

Number of shares of preferred stock            0
Number of shares of common stock            42,452,035

Comments, if any:

_____
_____

---

[1] As of the Petition Date, approximately $195.5 million of principal, plus all accrued but unpaid interest (including approximately $6.7 million of unpaid interest due on June 15, 2020), fees, and expenses is outstanding under the Unsecured Notes. The total number of holders is presently unknown, as the Unsecured Notes are held through a third party.  While the Debtors do not have access to the total amount of holders, they have included the Unsecured Notes herein out of an abundance of caution.

3.      Brief description of debtor's business:

<u>Briggs & Stratton Corporation is a producer of gasoline engines for outdoor power equipment and a designer, manufacturer and marketer of power generation, pressure washer, lawn and garden, turf care, and job site products.</u>

4.      List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor:

| | |
|---|---|
| Blackrock, Inc. | 15.03% |
| Dimensional Fund Advisors L.P. | 7.02% |
| GMT Capital Corp. | 5.40% |
| The Vanguard Group, Inc. | 5.27% |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| | § | **Chapter 11** |
| In re: | § | |
| | § | **Case No. 20-_____-_____** |
| **BRIGGS & STRATTON** | § | |
| **CORPORATION,** | § | |
| | § | |
| Debtor. | § | |

**LIST OF EQUITY HOLDERS PURSUANT TO FED. R. BANKR. P. 1007(a)(3)**[2]

        Pursuant to Rule 1007(a)(3) of the Federal Rules of Bankruptcy Procedure, the following identifies all holders having a direct or indirect ownership interest, of the above-captioned debtor in possession.

Check applicable box:

☐     There are no equity security holders or corporations that directly or indirectly own 10% or more of any class of the debtor's equity interest.

☒     The following are the debtor's equity security holders (list holders of each class, showing the number and kind of interests registered in the name of each holder, and the last known address or place of business of each holder):

| Name and Last Known Address of Equity Interest Holder | Kind/Class of Interest | Number of Interests Held |
|---|---|---|
| BlackRock Fund Advisors<br>55 East 52nd Street<br>New York, NY 10055 | Common Stock | 15.03% |
| Dimensional Fund Advisors LP<br>Building One<br>6300 Bee Cave Road<br>Austin, TX 78746 | Common Stock | 7.02% |

---

[2]   This list reflects holders of five percent or more of Briggs & Stratton Corporation's common stock, as of March 31, 2020.  This list serves as the required disclosure by the Debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure.  By separate motion filed contemporaneously herewith, the Debtor is requesting a waiver of the requirement under Rule 1007 to file a list of all its equity security holders.

| Name and Last Known Address of Equity Interest Holder | Kind/Class of Interest | Number of Interests Held |
|---|---|---|
| GMT Capital Corp. 2300 Windy Ridge Parkway Suite 550 South Atlanta, GA 30339-5665 | Common Stock | 5.40% |
| The Vanguard Group, Inc. 100 Vanguard Blvd. Malvern, PA 19355 | Common Stock | 5.27% |

**Fill in this information to identify the case:**

Debtor name:  Briggs & Stratton Corporation

United States Bankruptcy Court for the  Eastern District of Missouri

_____
                                              (State)
Case number (*If known*):        _____

# Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors           12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING – Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)

☐   Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

☐   Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

☐   Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)

☐   Schedule H: Codebtors (Official Form 206H)

☐   Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)

☐   Amended Schedule _____

☑   Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)

☑   Other document that requires a declaration Consolidated Corporate Ownership Statement, Form 201A, and List of Equity Holders

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  July 20, 2020        **X** _____
             MM / DD /YYYY                Signature of individual signing on behalf of debtor

                                    Mark A. Schwertfeger
                                    Printed name

                                    Senior Vice President and Chief Financial Officer
                                    Position or relationship to debtor