UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| | § | Case No. 20-43597-399 |
| **BRIGGS & STRATTON** | § | |
| **CORPORATION,** *et al.,* | § § | **(Jointly Administered)** |
| Debtors. | § § | |

## DELOITTE ENGAGEMENT LETTER

Respectfully submitted,

CARMODY MACDONALD P.C.

*/s/ Robert E. Eggmann*
Robert E. Eggmann, #37374MO
Christopher J. Lawhorn, #45713MO
Thomas H. Riske, #61838MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 854-8600
Facsimile: (314) 854-8669
Email: ree@carmodymacdonald.com
cjl@carmodymacdonald.com
thr@carmodymacdonald.com

*Proposed Local Counsel to the Debtors and Debtors in Possession*

-and-

WEIL, GOTSHAL & MANGES LLP
Ronit J. Berkovich (admitted *pro hac vice*)
Debora A. Hoehne (admitted *pro hac vice*)
Martha E. Martir (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Ronit.Berkovich@weil.com
Debora.Hoehne@weil.com
Martha.Martir@weil.com

*Proposed Counsel to the Debtors and
Debtors in Possession*

# Deloitte.

Deloitte & Touche LLP
555 East Wells Street
Suite 1400
Milwaukee, WI 53202-3824
USA

Tel: +1 414 271 3000
Fax: +1 414 347 6200
www.deloitte.com

October 30, 2019

Ms. Patricia Kampling
Audit Committee Chair
The Audit Committee of Briggs & Stratton Corporation
12301 West Wirth Street
Wauwatosa, Wisconsin 53222

Mr. Mark Schwertfeger
Senior Vice President and Chief Financial Officer
Briggs & Stratton Corporation
12301 West Wirth Street
Wauwatosa, Wisconsin 53222

Dear Ms. Kampling and Mr. Schwertfeger:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as the independent registered public accounting firm for Briggs & Stratton Corporation (the "Company" or "you" or "your"). Mr. Eric Kulju will be responsible for the services that we perform for the Company hereunder.

In addition to the audit and review services we are engaged to provide under this engagement letter, we would also be pleased to assist the Company on issues as they arise throughout the year. Hence, we hope that you will call Mr. Kulju whenever you believe D&T can be of assistance. This assistance will require approval by the Company's audit committee (the "Audit Committee") in accordance with its preapproval policies and procedures.

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions set forth herein and in the accompanying appendices. Such terms and conditions shall be effective as of the date of the commencement of such services.

## Audit of Financial Statements and the Effectiveness of Internal Control over Financial Reporting

Our engagement is to perform an integrated audit in accordance with the standards of the Public Company Accounting Oversight Board (PCAOB) (United States) (the "PCAOB Standards"). The objectives of an integrated audit conducted in accordance with the PCAOB Standards are the expression of opinions on (1) the fairness of the presentation of the Company's financial statements for the year ending June 28, 2020, in conformity with accounting principles generally accepted in the United States of America ("generally accepted accounting principles"), in all material respects, and (2) the effectiveness of the Company's internal control over financial reporting as of June 28, 2020, based on the criteria established in *Internal Control — Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission (the "COSO Framework").

Appendix A contains a description of an integrated audit in accordance with the PCAOB Standards.

Our ability to express any opinion or to issue any report as a result of this engagement and the wording thereof will, of course, be dependent on the facts and circumstances at the date of our reports. If, for any reason, we are unable to complete our audit or are unable to form or have not formed any opinion, we may decline to express any opinion or decline to issue any report as a result of this engagement. If we are unable to complete our audit, or if any report to be issued by D&T as a result of this engagement requires modification, the reasons for this will be discussed with the Audit Committee and the Company's management.

## Reviews of Interim Financial Information

We will also perform a review of the Company's condensed interim financial information (the "interim financial information") in accordance with the PCAOB Standards ("interim review") for each of the quarters in the year ending June 28, 2020, prepared for submission to the Securities and Exchange Commission (SEC). The objective of an interim review is to provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with generally accepted accounting principles. The objective of an interim review is also to provide us with a basis for determining whether we are aware of any material modifications that, in our judgment, should be made to management's disclosures about changes in internal control over financial reporting that have materially affected or are reasonably likely to materially affect the Company's internal control over financial reporting for management's certifications to be accurate and to comply with the requirements of Section 302 of the Sarbanes-Oxley Act of 2002 and related SEC rules and regulations.

Appendix A also contains a description of an interim review in accordance with the PCAOB Standards.

If we become aware of material modifications that should be made to the interim financial information for it to conform with generally accepted accounting principles, or if we become aware of deficiencies in internal control over financial reporting so significant that they would preclude management's preparation of interim financial information in conformity with generally accepted accounting principles, we may be precluded from completing any of our reviews. If, for any reason, we are unable to complete any of our interim reviews, the reasons for this will be discussed with the Audit Committee and the Company's management.

## Management's Responsibilities

Appendix B describes management's responsibilities.

## Audit Committee's Responsibility and Auditor Communications

As the independent registered public accounting firm of the Company, we acknowledge that the Audit Committee is directly responsible for the appointment, compensation, and oversight of our work, and accordingly, except as otherwise specifically noted, we will report directly to the Audit Committee. You have advised us that the services to be performed under this engagement letter, including, where applicable, the use by D&T of affiliates or related entities as subcontractors in connection with this engagement, have been approved by the Audit Committee in accordance with the Audit Committee's established preapproval policies and procedures.

Under the PCAOB Standards and SEC Rule 2-07 of Regulation S-X, we are required to communicate with the Audit Committee about various matters in connection with our audit and interim reviews. Appendix C describes such communications.

## Fees

We estimate that our fees for the integrated audit and the interim reviews for the year ending June 28, 2020, will be $932,000, plus expenses. Based on the anticipated timing of the work, our fees will be billed approximately as follows:

| Invoice Date | Amount |
|---|---|
| November 2019 | $200,000 |
| January 2020 | 200,000 |
| April 2020 | 300,000 |
| July 2020 | 232,000 |

We anticipate sending invoices according to the above schedule, and payments are due 30 days from the date of the invoice. Engagement-related expenses, such as technology- and administrative-related charges will be billed in addition to the fees and will be stated separately on the invoices.

Our continued service on this engagement is dependent upon payment of our invoices in accordance with these terms. Our estimated fees are based on certain assumptions, including (1) timely and accurate completion of the requested entity participation schedules and additional supporting information, (2) no inefficiencies during the audit or interim review process or changes in scope caused by events that are beyond our control, (3) the effectiveness of internal control over financial reporting throughout the periods under audit and interim review, (4) a minimal level of audit adjustments (recorded or unrecorded), and (5) no changes to the timing or extent of our work plans. We will notify you promptly of any circumstances we encounter that could significantly affect our estimate and discuss with you any additional fees, as necessary.

## INCLUSION OF D&T REPORTS OR REFERENCES TO D&T IN OTHER DOCUMENTS OR ELECTRONIC SITES

If the Company intends to publish or otherwise reproduce in any document any report issued as a result of this engagement, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements (e.g., in a periodic filing with the SEC or other regulator, in a debt or equity offering circular, or in a private placement memorandum), thereby associating D&T with such document, the Company agrees that its management will provide D&T with a draft of the document to read and obtain our approval for the inclusion or incorporation by reference of any of our reports, or the reference to D&T, in such document before the document is printed and distributed. The inclusion or incorporation by reference of any of our reports in any such document would constitute the reissuance of such reports. The Company also agrees that its management will notify us and obtain our approval prior to including any of our reports on an electronic site.

Our engagement to perform the services described herein does not constitute our agreement to be associated with any such documents published or reproduced by or on behalf of the Company. Any request by the Company to reissue any report issued as a result of this engagement, to consent to any such report's inclusion or incorporation by reference in an offering or other document, or to agree to any such report's inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request. The estimated fees outlined herein do not include any procedures that would need to be performed in connection with any such request. Should D&T agree to perform such procedures, fees for such procedures would be subject to the mutual agreement of the Company and D&T.

## Requests for Production of Documents or Information

The Company acknowledges its obligations under the waiver agreement relating to D&T's cooperation with the PCAOB and the SEC under Sections 102 and 106 of the Sarbanes-Oxley Act of 2002.

\* \* \* \* \* \*

The parties acknowledge and agree that D&T is being engaged under this engagement letter to provide only the services described herein. Should the Company or the Audit Committee request, and should D&T agree to provide, services (including audit services) beyond those described herein, such services will constitute a separate engagement and will be governed by a separate engagement letter.

This engagement letter, including Appendices A through E attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

*Deloitte & Touche LLP*

Acknowledged and agreed to on behalf of
the Audit Committee of Briggs & Stratton Corporation:

By: _[signature]_

Title: _Chair, Audit Committee_

Date: _10/30/19_

Accepted and agreed to by
Briggs & Stratton Corporation:

By: _[signature]_

Title: _SVP - CFO_

Date: _10/30/19_

**APPENDIX A**

# DESCRIPTION OF AN INTEGRATED AUDIT AND INTERIM REVIEW IN ACCORDANCE WITH THE PCAOB STANDARDS

This Appendix A is part of the engagement letter dated October 30, 2019, between Deloitte & Touche LLP and Briggs & Stratton Corporation and acknowledged and agreed to by the Audit Committee of Briggs & Stratton Corporation.

## Components of an Integrated Audit

An integrated audit includes the following:

- Examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements

- Inquiring directly of the Audit Committee regarding (1) its views about fraud risks in the Company, (2) whether it has knowledge of any actual, suspected, or alleged fraud affecting the Company, and (3) whether it is aware of tips or complaints regarding the Company's financial reporting (including those received through any internal whistleblower program, if such program exists) and, if so, its responses to such tips and complaints

- Assessing the accounting principles used and significant estimates made by management

- Evaluating the overall financial statement presentation

- Examining, on a test basis, evidence supporting the design and operating effectiveness of internal control over financial reporting

- Evaluating the effectiveness of internal control over financial reporting

An integrated audit does not include the performance of any procedures with respect to financial information in an interactive data format using eXtensible Business Reporting Language (XBRL). Any procedures that the Company requests D&T to perform related to any such XBRL interactive data would be described in a separate engagement letter.

## Reasonable Assurance

The PCAOB Standards require that we plan and perform the audit to obtain reasonable, rather than absolute, assurance about (1) whether the financial statements are free of material misstatement, whether caused by error or fraud, and (2) whether effective internal control over financial reporting was maintained in all material respects. However, because of the characteristics of fraud, a properly planned and performed audit may not detect a material misstatement or material weakness. Accordingly, there is some risk that a material misstatement of the financial statements or a material weakness in internal control over financial reporting would remain undetected. Also, an integrated audit is not designed to detect error or fraud that is immaterial to the financial statements or deficiencies in internal control over financial reporting that, individually or in combination, are less severe than a material weakness.

## Inherent Limitations of Internal Control over Financial Reporting

Because of the inherent limitations of internal control over financial reporting, including the possibility of collusion or improper management override of controls, material misstatements due to error or fraud may occur and not be detected. Also, projections of any evaluation of the internal control over financial reporting to future periods are subject to the risk that the internal control may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

## Interim Reviews

An interim review is substantially less in scope than an audit in accordance with the PCAOB Standards, the objective of which is to express an opinion on the financial statements taken as a whole. Accordingly, an interim review will not result in the expression of an opinion concerning the fairness of the presentation of the interim financial information in conformity with generally accepted accounting principles and cannot be relied on to reveal all significant matters that would be disclosed in an audit.

An interim review consists principally of applying analytical procedures to pertinent financial data and making inquiries of, and evaluating responses from, certain management personnel of the Company who have responsibility for financial and accounting matters. An interim review also includes obtaining sufficient knowledge of the Company's business and its internal control as they relate to the preparation of both annual and interim financial information to (1) identify the types of potential material misstatements in the interim financial information and consider the likelihood of their occurrence, and (2) select the inquiries and analytical procedures that will provide us with a basis for communicating whether we are aware of any material modifications that should be made to the interim financial information for it to conform with generally accepted accounting principles. An interim review is not designed to provide assurance on internal control or to identify control deficiencies.

An interim review does not include the performance of any procedures with respect to interim financial information in an interactive data format using XBRL.

An interim review also includes procedures, principally observation and inquiries, relating to management's disclosures about changes in internal control over financial reporting to provide us with a basis for communicating whether we are aware of any modifications that, in our judgment, should be made to such disclosures for management's certifications to be accurate and to comply with the requirements of Section 302 of the Sarbanes-Oxley Act of 2002 and related SEC rules and regulations. These procedures are substantially less in scope than an audit of internal control over financial reporting in accordance with the PCAOB Standards. Accordingly, an interim review cannot be relied on to reveal all significant matters that would be disclosed in an audit of internal control over financial reporting, and we will not express an opinion on the effectiveness of internal control over financial reporting.

**APPENDIX B**

## MANAGEMENT'S RESPONSIBILITIES

This Appendix B is part of the engagement letter dated October 30, 2019, between Deloitte & Touche LLP and Briggs & Stratton Corporation and acknowledged and agreed to by the Audit Committee of Briggs & Stratton Corporation.

### Financial Statements and the Effectiveness of Internal Control over Financial Reporting

Management is responsible for the preparation, fair presentation, and overall accuracy of the financial statements and interim financial information, including disclosures, in conformity with generally accepted accounting principles. The assessment of the effectiveness of internal control over financial reporting to comply with Section 404 of the Sarbanes-Oxley Act of 2002 and related SEC rules and regulations is also the responsibility of management. In this regard, management has the responsibility for, among other things:

- Selecting and applying the accounting policies

- Establishing and maintaining effective internal control over financial reporting and informing D&T of all deficiencies in the design or operation of internal control over financial reporting identified as part of management's evaluation, including separately disclosing to D&T all such deficiencies that management believes to be significant deficiencies or material weaknesses in internal control over financial reporting

- Informing D&T of significant changes in the design or operation of the Company's internal control over financial reporting that occurred during each fiscal quarter or subsequent to the date being reported on

- Identifying and ensuring that the Company complies with the laws and regulations applicable to its activities and informing us of any known or possible material violations of such laws or regulations

- Adjusting the financial statements to correct material misstatements relating to accounts or disclosures, and affirming to D&T in the representation letter that the effects of any uncorrected misstatements aggregated by us are immaterial, both individually and in the aggregate, to the financial statements taken as a whole

- Providing D&T with (1) access to all information of which management and, where appropriate, the Audit Committee are aware that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters, (2) additional information that we may request from management and, where appropriate, the Audit Committee for the purpose of our audit, and (3) unrestricted access to personnel within the Company from whom we determine it necessary to obtain evidence

D&T will use the Company's internal auditors to perform audit procedures under our direction, supervision, and review ("direct assistance"). In connection therewith, management and the Audit Committee acknowledge and agree that (1) the internal auditors that will provide direct assistance to us will be allowed to follow our instructions, and (2) the Company will not intervene in the work performed by such internal auditors for us.

### Management's Representations

We will make specific inquiries of the Company's management about the representations embodied in the financial statements and management's assessment of the effectiveness of the Company's internal control over financial reporting. In addition, we will request that management provide us with the written representations the Company is required to provide to its independent registered public accounting firm under the PCAOB Standards. The responses to those inquiries and the written representations of management are part of the evidential matter that D&T will rely on in forming its opinions. We will also request a similar representation letter as part of our interim reviews.

### Process for Obtaining Preapproval of Services

Management is responsible for the coordination of obtaining the preapproval of the Audit Committee, in accordance with the Audit Committee's preapproval process, for any services to be provided by D&T to the Company.

### Program and Subscription Services

D&T makes available to clients and nonclients various educational and informational programs, seminars, tools, and related services, such as live programs, webcasts (including the Dbriefs webcast series), podcasts, websites, database subscriptions (including some that provide access to D&T proprietary information and tools that offer technical support and advice), checklists, research reports, surveys, published books and other materials, applications, local office seminars, Technical Library, and CXO conferences (collectively, "programs and subscriptions"). D&T may provide these programs and subscriptions free of charge, for a nominal fee, or for a fee at prevailing market rates. In some instances, D&T may include complimentary rooms or meals as part of programs or seminars. Any programs and subscriptions requested by the Company or its affiliates and the related fees (if any) would be subject to the mutual agreement of the Company or its affiliates, as applicable, and D&T and may be described in a separate written agreement. The Company hereby confirms that any use or receipt by the Company or its affiliates of these programs and subscriptions is approved by the Audit Committee in accordance with the Audit Committee's established preapproval policies and procedures.

### Independence Matters

In connection with our engagement, D&T, management, and the Audit Committee will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence and ensuring compliance with the securities laws and regulations. D&T will communicate to its partners, principals, and employees that the Company is an attest client. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, has policies and procedures in place for the purpose of ensuring that neither the Company nor any such subsidiary or other entity will act to engage D&T or accept from D&T any service that either has not been subjected to their preapproval process or that under SEC or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Kulju.

In connection with the foregoing, the Company agrees to furnish to D&T and keep D&T updated with respect to (1) a corporate tree that identifies the legal names of the Company's affiliates, including affiliates as defined in SEC Rule 2-01(f)(4) of Regulation S-X, (e.g., parents, subsidiaries, investors, or investees), together with the ownership relationship among such entities, and (2) any equity or debt securities of the Company and its affiliates (including, without limitation, tax-advantaged debt of such entities that is issued through governmental authorities) that are available to individual investors (whether through stock, bond, commodity, futures or similar markets in or outside of the United States, or equity, debt, or any other securities offerings), together with related securities identification information (e.g., ticker symbols or CUSIP®, ISIN®, or Sedol® numbers). The Company acknowledges and consents that such information may be treated by D&T as being in the public domain.

Management will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees for certain positions. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, also has policies and procedures in place for purposes of ensuring that D&T's independence will not be impaired by hiring a former or current D&T partner, principal, or professional employee in an accounting role or financial reporting oversight role that would cause a violation of securities laws and regulations. Any employment opportunities with the Company for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Kulju and approved by the Audit Committee before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee, if such opportunity relates to serving (1) as chief executive officer, controller, chief financial officer, chief accounting officer, or any equivalent position for the Company or in a comparable position at a significant subsidiary of the Company; (2) on the Company's board of directors; (3) as a member of the Audit Committee; or (4) in any other position that would cause a violation of securities laws and regulations.

For purposes of the preceding five paragraphs, "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu Limited, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu Limited and its member firms; and, in all cases, any successor or assignee.

**APPENDIX C**

# COMMUNICATIONS WITH THE AUDIT COMMITTEE

This Appendix C is part of the engagement letter dated October 30, 2019, between Deloitte & Touche LLP and Briggs & Stratton Corporation and acknowledged and agreed to by the Audit Committee of Briggs & Stratton Corporation.

## Independence Communications

We have the responsibility to comply with the rules and standards of the PCAOB and the securities laws and regulations administered by the SEC regarding auditor independence. To demonstrate compliance with those requirements and in accordance with PCAOB Ethics and Independence Rule 3526, *Communication with Audit Committees Concerning Independence* ("Rule 3526"), we will describe to the Audit Committee, in writing, all relationships between D&T and the Company, its affiliates, or persons in "financial reporting oversight roles" (as defined in SEC Rule 2-01 of Regulation S-X) at the Company, that may reasonably be thought to bear on our independence and affirm to the Audit Committee in such communication whether we are independent of the Company within the meaning of the rules and standards of the PCAOB and the securities laws and regulations administered by the SEC. We also will discuss our independence with the Audit Committee in accordance with Rule 3526. For purposes of this paragraph, "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu Limited, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu Limited and its member firms; and, in all cases, any successor or assignee.

## Other Communications Arising from the Audit or Interim Reviews

### *Fraud and Illegal Acts*

We will report directly to the Audit Committee any fraud of which we become aware that involves senior management and any fraud (whether caused by senior management or other employees) of which we become aware that causes a material misstatement of the financial statements. We will report to senior management any fraud perpetrated by lower level employees of which we become aware that does not cause a material misstatement of the financial statements; however, we will not report such matters directly to the Audit Committee, unless otherwise directed by the Audit Committee.

We will inform the appropriate level of management of the Company and determine that the Audit Committee is adequately informed with respect to illegal acts that have been detected or have otherwise come to our attention during the course of our audit, unless the illegal acts are clearly inconsequential.

### *Internal Control Matters*

We will communicate in writing to management and the Audit Committee all material weaknesses (as defined in the PCAOB Standards) identified during the audit. We will also communicate in writing to the Audit Committee all significant deficiencies (as defined in the PCAOB Standards) identified during the audit. If we conclude that the oversight of the Company's external financial reporting and internal control over financial reporting by the Audit Committee is ineffective, we will also communicate that conclusion in writing to the Company's board of directors.

In addition, we will communicate to management in writing all deficiencies in internal control over financial reporting (i.e., those deficiencies in internal control over financial reporting that are of a lesser magnitude than material weaknesses) identified during the audit and inform the Audit Committee when such communication has been made. When making this communication, we will not repeat information about deficiencies that has been included in previously issued written communications, whether those communications were made by us, internal auditors, or others within the Company.

### Other Matters

We will communicate matters required by PCAOB Auditing Standard 1301, *Communications with Audit Committees*, and SEC Rule 2-07 of Regulation S-X prior to the Company filing our report or consent with the SEC.

In addition, at the request of the Audit Committee, we will provide the Audit Committee with a report in connection with the New York Stock Exchange Corporate Governance Listing Standards.

### Interim Reviews

At the Audit Committee's request, we will not issue a written review report upon completion of our interim reviews; however, we will communicate to management and, if appropriate, the Audit Committee matters that cause us to believe that (1) material modifications should be made to the interim financial information for it to conform with generally accepted accounting principles, (2) modifications to management's disclosures about changes in internal control over financial reporting are necessary for management's certifications to be accurate and to comply with the requirements of Section 302 of the Sarbanes-Oxley Act of 2002 and related SEC rules and regulations, or (3) the Company filed the Form 10-Q before the completion of our review. When conducting our interim reviews, we will also determine whether any other matters required by regulations or the PCAOB Standards as they relate to interim financial information have been identified. If such matters have been identified, we will communicate them to the Audit Committee prior to the filing of interim financial information with the SEC.

**APPENDIX D**

# GENERAL BUSINESS TERMS

This Appendix D is part of the engagement letter to which these terms are attached (the engagement letter, including its appendices, the "engagement letter") dated October 30, 2019, between Deloitte & Touche LLP and Briggs & Stratton Corporation and acknowledged and agreed to by the Audit Committee of Briggs & Stratton Corporation.

1. Independent Contractor. D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner, fiduciary, or representative of the Company or the Audit Committee.

2. Survival. The agreements and undertakings of the Company and the Audit Committee contained in the engagement letter will survive the completion or termination of this engagement.

3. Assignment and Subcontracting. Except as provided below, no party may assign any of its rights or obligations (including, without limitation, interests or claims) relating to this engagement without the prior written consent of the other parties. The Company and the Audit Committee hereby consent to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

4. Severability. If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

5. Force Majeure. No party shall be deemed to be in breach of the engagement letter as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6. Confidentiality. To the extent that, in connection with this engagement, D&T comes into possession of any confidential information of the Company, D&T shall not disclose such information to any third party without the Company's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The Company and the Audit Committee hereby consent to D&T disclosing such information (1) as may be required by law or regulation, or to respond to governmental inquiries, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; (2) to the extent such information (i) is or becomes publicly available other than as the result of a disclosure in breach hereof, (ii) becomes available to D&T on a nonconfidential basis from a source that D&T believes is not prohibited from disclosing such information to D&T, (iii) is already known by D&T without any obligation of confidentiality with respect thereto, or (iv) is developed by D&T independently of any disclosures made to D&T hereunder; or (3) to contractors providing administrative, infrastructure, and other support services to D&T and subcontractors providing services in connection with this engagement, in each case, whether located within or outside of the United States, provided that such contractors and subcontractors have agreed to be bound by confidentiality obligations similar to those in this paragraph. To the extent that any information obtained by D&T from or on behalf of the Company or its employees in connection with the performance of services under the engagement letter relates to a resident of Massachusetts and constitutes "Personal Information" as defined in 201 CMR 17.02 (as may be amended), D&T shall

      comply with the obligations of 201 CMR 17.00 et. seq. (as may be amended), entitled "Standards for the Protection of Personal Information of Residents of the Commonwealth," with respect to such information.

7. <u>Dispute Resolution</u>. Any controversy or claim between the parties arising out of or relating to the engagement letter or this engagement (a "Dispute") shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix E and made a part hereof.

# APPENDIX E

# DISPUTE RESOLUTION PROVISION

This Appendix E is part of the engagement letter dated October 30, 2019, between Deloitte & Touche LLP and Briggs & Stratton Corporation and acknowledged and agreed to by the Audit Committee of Briggs & Stratton Corporation.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of Disputes and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

Mediation: All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

Arbitration Procedures: If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in New York, New York. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules, and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the laws of the State of New York (without giving effect to its choice of law principles) in connection with the Dispute. The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be conducted in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

Costs: Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.