## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| | § | **Chapter 11** |
| In re: | § | |
| | § | **Case No. 20-43597-339** |
| **BRIGGS & STRATTON** | § | **(Jointly Administered)** |
| **CORPORATION**, *et al.*, | § | |
| | § | |
| Debtors. | § | Related Docket No. 35 |

### FINAL ORDER (I) AUTHORIZING
### DEBTORS TO OBTAIN POSTPETITION FINANCING,
### (II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL,
### (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS,
### (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION
### SECURED PARTIES, AND (V) MODIFYING AUTOMATIC STAY

Upon the motion (the "Motion") of Briggs & Stratton Corporation (the "Company") and the other debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") under sections 105, 361, 362, 363, 364, 503, 506, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), for entry of the Interim Order (as defined below) and a final order (this "Order"):

(I)     authorizing the Debtors to obtain senior secured priming debtor-in-possession financing in an aggregate principal amount not to exceed $677.5 million pursuant to the terms and conditions of the *Senior Secured Debtor-in-Possession Revolving and Term Credit Agreement* attached hereto as **Exhibit A** (as amended, supplemented, or otherwise modified in accordance with its terms and the terms of this Order, the "DIP Credit Agreement"), and all other agreements, documents, and instruments executed and delivered in connection with the DIP Credit Agreement (collectively with the DIP Credit Agreement, the "DIP Documents"), with such debtor-in-possession financing consisting of:

a)     a first-out, asset based revolving facility in an aggregate principal amount not to exceed on the DIP Closing Date $412.5 million, subject to a reduction on the DIP Term Loan Closing Date to $350 million (the "DIP ABL Facility," and all extensions of credit thereunder, the "DIP ABL Loans"),

with up to $6 million (other than the Prepetition Letters of Credit (as defined below)) available under a letter of credit sublimit plus the deemed issuance of the Prepetition Letters of Credit as letters of credit issued under the DIP ABL Facility (all such letters of credit, the "DIP Letters of Credit"), provided that (i) not more than, on the DIP Closing Date, $383.7 million and, on the DIP Term Loan Closing Date, $321.2 million, in principal amount of the DIP ABL Facility shall be made available to Briggs & Stratton Corporation (the "North American Revolving Facility") and (ii) not more than, both on the DIP Closing Date and on the DIP Term Loan Closing Date, $28.8 million in principal amount of the DIP ABL Facility shall be made available to Briggs & Stratton AG (the "Swiss Revolving Facility"), among:

1.    as borrowers, the Company and Briggs & Stratton AG (the "Non-Debtor DIP ABL Borrower") (collectively, "DIP ABL Borrowers"),

2.    as guarantors, (a) Billy Goat Industries, Inc., Allmand Bros., Inc., Briggs & Stratton International, Inc., and Briggs & Stratton Tech, LLC, (b) Briggs & Stratton International AG, Briggs & Stratton Australia Pty. Limited and Victa Ltd. and subject to customary exceptions consistent with the Prepetition ABL Agreement, each other subsidiary of the Company organized in a jurisdiction outside the United States (the "Non-Debtor Foreign DIP Guarantors"), and (c) to the extent not otherwise listed above, each other Debtor (the entities referenced in the immediately preceding clauses (a) through (c), together with the DIP ABL Borrowers, collectively, the "DIP Guarantors," and together with the DIP ABL Borrowers, the "DIP ABL Loan Parties"),[1]

3.    as administrative agent and collateral agent, JPMorgan Chase Bank, N.A. (in such capacity, the "DIP Agent"),

4.    as lead-left arranger and lead-left bookrunner, JPMorgan Chase Bank, N.A. (the "DIP Arranger"),

5.    as swingline lender, JPMorgan Chase Bank, N.A. (the "Swingline Lender"), and

6.    the lenders from time to time party thereto (collectively with the Swingline Lender, the "DIP ABL Lenders" and collectively with the DIP Agent and all other secured parties

---

[1]    In addition and notwithstanding the foregoing, the Debtors will guaranty the Swiss Revolving Facility, and Briggs & Stratton AG and the Non-Debtor Foreign DIP Guarantors will guaranty the North American Revolving Facility, subject to the terms of the DIP Credit Agreement.

WEIL:\97593850\3\30180.0004

in connection with the DIP ABL Facility, collectively, the "DIP ABL Secured Parties"); and

b)   a superpriority senior secured priming last-out term loan facility in an aggregate principal amount of $265 million (the "DIP Term Loan Facility," and together with the DIP ABL Facility, the "DIP Facilities"; all extensions of credit under the DIP Term Loan Facility, the "DIP Term Loans," and together with the DIP ABL Loans, the "DIP Loans"), among:

1.   as borrower, the Company (the "DIP Term Loan Borrower," and together with the DIP ABL Borrowers, the "DIP Borrowers"),

2.   as guarantors, the DIP Guarantors (together with the DIP Term Loan Borrower, the "DIP Term Loan Parties"; the DIP Term Loan Parties and the DIP ABL Loan Parties shall be collectively referred to herein as the "DIP Loan Parties"),

3.   as administrative agent and collateral agent, the DIP Agent,

4.   as sole lead arranger and sole bookrunner, the DIP Arranger, and

5.   the lenders from time to time party thereto (the "DIP Term Loan Lenders," and together with the DIP ABL Lenders, the "DIP Lenders," and the DIP Term Loan Lenders, the DIP Agent and all other secured parties in connection with the DIP Term Loan Facility, collectively, the "DIP Term Secured Parties");

(II)   authorizing the Debtors to use Cash Collateral (as defined in paragraph 9 below) and all other Prepetition Collateral (as defined in paragraph 8(b) below) pursuant to section 363 of the Bankruptcy Code in accordance with this Order;

(III)   authorizing the Debtors to provide adequate protection to the Prepetition Secured Parties (as defined in this clause) under the Revolving Credit Agreement, dated as of September 27, 2019 (as amended, supplemented or otherwise modified prior to the Petition Date, the "Prepetition ABL Agreement," and together with all security, pledge, and guaranty agreements and all other documentation executed in connection therewith (including all "Loan Documents" under, and as defined in, the Prepetition ABL Agreement), each as amended, supplemented, or otherwise modified, the "Prepetition ABL Documents"), among (A) the Company and the subsidiary borrowers and guarantors from time to time party thereto (collectively, the "Prepetition ABL Loan Parties"), (B) the lenders from time to time party thereto (the "Prepetition ABL Lenders"), and (C) JPMorgan Chase Bank, N.A., as administrative agent and collateral agent for the Prepetition ABL Lenders (in such capacity, the "Prepetition ABL Agent," and together with the Prepetition ABL

WEIL:\97593850\3\30180.0004

Lenders and all other secured parties under the Prepetition ABL Documents, the "Prepetition Secured Parties");

(IV)    granting to the DIP Agent, the DIP Lenders and all other secured parties under the DIP Documents (collectively, the "DIP Secured Parties"), pursuant to section 364 of the Bankruptcy Code, allowed superpriority administrative expense claims in respect of all DIP Obligations (as defined in paragraph 11(g) below) and valid, enforceable, non-avoidable, and automatically perfected security interests in and liens on all of the DIP Collateral (as defined in paragraph 21 below) to secure the DIP Obligations, in each case as and to the extent set forth herein;

(V)    authorizing the DIP Agent, on behalf of the DIP Secured Parties at the direction of either the Required Revolving Lenders (as defined in the DIP Credit Agreement) or the Required DIP Term Lenders (as defined in the DIP Credit Agreement) and subject to the terms and conditions herein, to exercise remedies under the DIP Documents and this Order upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Credit Agreement) (each, a "DIP Event of Default");

(VI)    subject to the Carve Out, the Termination Payment and the Expense Reimbursement Payment (each as defined in this Order), authorizing the Debtors to waive (A) their right to surcharge the Prepetition Collateral (as defined in this Order) pursuant to section 506(c) of the Bankruptcy Code and (B) any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and

(VII)    granting related relief.

The Court having considered the Motion, the *Declaration of Jeffrey Ficks, Financial Advisor of Briggs & Stratton Corporation, in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (ECF No. 51), the *Declaration of Jeffrey Lewis In Support of Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Claims, (IV) Granting Adequate Protection to Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling Final Hearing, and (VII) Granting Related Relief* (ECF No. 36), any exhibits attached to the foregoing, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on the Motion by this Court on July 21, 2020 (the "Interim Hearing") and at the final hearing held on the Motion by this Court on August [18], 2020 (the

"Final Hearing"); and notice of the Interim Hearing and Final Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d); and the Interim Hearing and Final Hearing to consider the relief requested in the Motion having been held and concluded; and it appearing to the Court that granting the relief requested in the Motion (i) is fair and reasonable, (ii) is in the best interests of the Debtors and their estates, creditors, and equity holders, and (iii) is essential for the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED, AND ADJUDGED**, that:[2]

1.      ***Petition Date***.  On July 20, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Missouri, Southeastern Division (the "Court").  On July 21, 2020, this Court entered an order approving the joint administration of the Chapter 11 Cases.

2.      ***Debtors in Possession***.  The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

3.      ***Jurisdiction and Venue***.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

---

[2]      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

WEIL:\97593850\3\30180.0004

Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 363(m), 364(c), 364(d)(1), 364(e), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Bankruptcy Local Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1.

4.    ***Committee Formation***.  On August 5, 2020, the United States Trustee for the Eastern District of Missouri (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code (ECF No. 304).

5.    ***Interim Order***.  On July 21, 2020, the Court entered an order granting the relief requested in the Motion on an interim basis (ECF No. 123) (the "Interim Order"), (a) allowing the Debtors to borrow under the DIP Credit Agreement (i) up to an aggregate principal amount of $137 million (including the issuance of letters of credit (other than the Prepetition Letters of Credit) on or after the date of closing of the DIP ABL Facility until the Final Hearing) plus the deemed issuance of the Prepetition Letters of Credit as letters of credit issued under the DIP ABL Facility and (ii) up to $20 million under the DIP Term Loan Facility and (b) requiring all cash, collections, and proceeds of the Prepetition Collateral (including Cash Collateral) to be paid and applied to repay Prepetition ABL Obligations.

6.    ***Notice***.  The Debtors have represented that adequate and proper notice of the Motion, the relief requested therein, and the Final Hearing has been provided in accordance with and satisfaction of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court of the Eastern District of Missouri.  Such notice

is adequate and appropriate under the circumstances, and no other or further notice need be provided.

7.      *Approval of Motion*.  The relief requested in the Motion is granted on a final basis as set forth herein.  Except as otherwise expressly provided in this Order, any objection, reservation of rights, or other statement with respect to the entry of this Order that has not been withdrawn, waived, resolved, or settled is hereby denied and overruled on the merits.

8.      *Stipulations*.  Without prejudice to the rights of any other party, and subject to the limitations thereon contained in paragraphs 10 and 19 below, the Debtors represent, admit, stipulate, and agree as follows:

(a)      Prepetition ABL Obligations.  As of the Petition Date, the Debtors hereby stipulate and agree that they were truly and justly indebted and liable to the Prepetition Secured Parties, without defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $325,897,815.58 in respect of loans, other extensions of credit made, letters of credit issued (the "Prepetition Letters of Credit"), and other financial accommodations made, in each case pursuant to the Prepetition ABL Documents, plus accrued and unpaid interest thereon and any fees and expenses (including fees and expenses of attorneys) related thereto as provided in the Prepetition ABL Documents, plus all other outstanding amounts that would constitute "Obligations" under, and as defined in, the Prepetition ABL Agreement (collectively, the "Prepetition ABL Obligations").  No portion of the Prepetition ABL Obligations shall be subject to avoidance, recharacterization, recovery, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

(b)      Prepetition ABL Secured Liens Granted by the Prepetition ABL Loan Parties.  The liens and security interests granted by the Debtors to the Prepetition ABL Agent (for

the ratable benefit of the Prepetition Secured Parties) to secure the Prepetition ABL Obligations are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the Prepetition ABL Agreement) liens on and security interests in the Prepetition ABL Loan Parties' real and personal property constituting Collateral[3] under, and as defined in, the Prepetition ABL Agreement (all such Collateral, the "Prepetition ABL Collateral," and such Collateral, including, Cash Collateral, in which the Debtors have an interest, the "Prepetition Collateral"); (ii) not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (iii) subject and subordinate only to other valid and unavoidable liens on the Prepetition ABL Collateral perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are senior to the liens securing the Prepetition ABL Obligations (the "Prior Senior Liens").

(c)    No Causes of Action.  The Debtors do not have, and forever release, any claims, counterclaims, causes of action, defenses, or setoff rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against any of the Prepetition Secured Parties and each of their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys, and advisors, each in their capacity as such, in each case in connection with any matter arising on or prior to the date hereof related to the Prepetition ABL Obligations, the Prepetition ABL Documents, the financing and transactions contemplated thereby, or the Prepetition ABL Collateral.

---

[3]    "Collateral" includes but is not limited to accounts, cash, equipment, fixtures, intellectual property, letters of credit, and the products and proceeds of the foregoing, but excludes Excluded Property (as defined in the Prepetition ABL Agreement).

(d)     Prepetition ABL Collateral Value.  As of the Petition Date, (i) the aggregate value of the Prepetition ABL Collateral securing the Prepetition ABL Obligations exceeds the aggregate amount of the Prepetition ABL Obligations; and (ii) the aggregate value of the Prepetition Collateral securing the Prepetition ABL Obligations owed by the Debtors exceeds the aggregate amount of the Prepetition ABL Obligations owed by the Debtors.

9.     *The Debtors' Cash Collateral*.  All of the Debtors' cash and cash equivalents (including without limitation, all cash, securities and other amounts on deposit or maintained by the Debtors in any account or accounts with any Prepetition Secured Party and any cash proceeds of the disposition of any Prepetition Collateral) other than the Excluded Property (as defined in the prepetition ABL Agreement) constitute proceeds of the Prepetition Collateral and, therefore, are cash collateral of the Prepetition Secured Parties, within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

10.     *Effect of Stipulations on Third Parties*.

(a)     The stipulations and admissions contained in this Order (including those in paragraphs 8 and 9 of this Order) shall be binding upon the Debtors under all circumstances and, with respect to the stipulations of the Debtors herein, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases and any other person or entity acting or seeking to act by, through or on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes, unless (i) any party in interest (including the Committee) with requisite standing from the Court as of the time of filing has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including without limitation, in this paragraph) by no later than (a) the earlier of

9

(x) an order confirming a chapter 11 plan, (y) for all parties in interest other than the Committee, 75 days after entry of this Order, and (z) for the Committee, 75 days after the date of its formation; and (b) any such later date agreed to in writing by the Prepetition ABL Agent (the time period established by the foregoing clauses (a)-(b), the "Challenge Period"), (A) challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition ABL Obligations or the liens on Prepetition Collateral securing the Prepetition ABL Obligations or (B) otherwise asserting or prosecuting action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims, causes of action, objections, contests, or defenses (collectively, the "Challenges") against any of the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors, each in their capacity as such, in connection with any matter related to the Prepetition ABL Obligations or the Prepetition Collateral and (ii) an order is entered and becomes final and non-appealable in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided that, as to the Debtors, all such Challenges are hereby irrevocably waived, released, and relinquished as of the Petition Date.

(b)     If no such adversary proceeding or contested matter is timely filed prior to the expiration of the Challenge Period by a party with requisite standing in respect of the Prepetition ABL Obligations, (i) the Prepetition ABL Obligations, to the extent not already indefeasibly repaid, shall constitute allowed claims against the Debtors, not subject to any Challenges (whether characterized as counterclaim, setoff, subordination, re-characterization, defense, or avoidance, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, if any; (ii) the liens on the Prepetition Collateral securing the Prepetition ABL Obligations, shall be deemed to have been, as of the Petition Date, and to thereafter remain, legal, valid, binding,

WEIL:\97593850\3\30180.0004

perfected, and of the priority specified in paragraph 8, not subject to any defense, counterclaim, re-characterization, subordination, or avoidance; and (iii) the Prepetition ABL Obligations, the Prepetition ABL Lenders (in their capacities as such), the Prepetition ABL Agent (in its capacity as such), and the liens on the Prepetition Collateral granted to secure the Prepetition ABL Obligations shall not be subject to any other or further challenge by any party in interest (including the Committee), and parties in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).

(c)     If any such adversary proceeding or contested matter is timely filed by a party with standing, the stipulations and admissions of the Debtors contained in this Order (including those in paragraphs 8 and 9) shall nonetheless remain binding and preclusive (as provided in this paragraph 10(c)) on all parties in interest (including the Committee), except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding or contested matter.  In the event that (i) there is a timely successful challenge to the repayment of the Prepetition ABL Obligations pursuant to this Order based upon a successful challenge to the validity, enforceability, extent, perfection, or priority of the Prepetition ABL Obligations or the liens securing the same and (ii) such challenge has been deemed successful and approved by a final non-appealable order, then pursuant and subject to the limitations contained in this paragraph 10, the Court shall have the power to unwind or otherwise modify such repayment of Prepetition ABL Obligations made before entry of such final non-appealable order (which might include the disgorgement or reallocation of interest, fees, principal, or other incremental consideration paid in respect of the Prepetition ABL Obligations or the

11

avoidance of liens and/or guarantees with respect to the Debtors), as the Court shall determine after notice and a hearing.

11.    ***Findings Regarding the DIP Loans***.

(a)    Good cause has been shown for the entry of this Order.

(b)    The Debtors need to obtain the DIP Loans and to use Prepetition Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going-concern value of the Debtors and their non-Debtor affiliates, make payroll and satisfy other working capital and general corporate purposes of the Debtors (including costs related to the administration of the Chapter 11 Cases), and repay Prepetition ABL Obligations—a critical step to permit the Debtors to obtain this financing.

(c)    Repaying all outstanding Prepetition ABL Obligations of the Debtors with the proceeds of the DIP Term Loans is appropriate because, among other things, (i) entry into the DIP Credit Agreement represents a sound exercise of the Debtors' business judgment, reflects the best financing terms available to the Debtors, and avoids costly "priming" and/or adequate protection litigation with the Prepetition Secured Parties, (ii) the aggregate value of the Prepetition Collateral securing the Prepetition ABL Obligations of the Debtors exceeds the aggregate amount of the Prepetition ABL Obligations of the Debtors, (iii) the Debtors will derive benefit from having a fully functioning revolving credit facility in these Chapter 11 Cases that will allow the Debtors to borrow, repay, and re-borrow DIP ABL Loans in a manner that minimizes administrative expenses in these Chapter 11 Cases, (iv) without the Prepetition Secured Parties' agreement in the DIP Credit Agreement to forbear with respect to the non-Debtor Prepetition ABL Loan Parties and their assets, the Prepetition Secured Parties would have the right under applicable non-United States law to immediately exercise default-related rights and remedies against the non-Debtor

12

Prepetition ABL Loan Parties and their Prepetition ABL Collateral because certain events of default under the Prepetition ABL Documents have occurred and are continuing as a result of the commencement of the Chapter 11 Cases and any other defaults thereunder, (v) the Debtors cannot access DIP Loans to fund the Debtors' administrative expenses in these Chapter 11 Cases unless all proceeds of Prepetition Collateral are applied to repay Prepetition ABL Obligations of the Debtors and, upon entry of this Order, proceeds of the DIP Term Loans are first used to repay in full in cash all then-outstanding Prepetition ABL Obligations, as required under the DIP Credit Agreement, (vi) repayment of the Prepetition ABL Obligations was a material inducement for the DIP ABL Lenders agreeing to subordinate their DIP ABL Obligations to the Carve-Out (as defined in paragraph 26), (vii)  repayment of the Prepetition ABL Obligations contemplated by this Order will materially reduce administrative expenses of the Debtors' financing because (A) the applicable interest rate for the DIP ABL Loans is 5.25% lower than the applicable interest rate payable on the Prepetition ABL Obligations projected to be repaid in these Chapter 11 Cases, and (B) the applicable interest rate for the DIP Term Loans is 1.75% lower than the applicable interest rate payable on the Prepetition ABL Obligations projected to be repaid by proceeds of DIP Term Loans, (viii) the repayment of the Prepetition ABL Obligations contemplated by this Order and the DIP Documents is otherwise a net neutral for the Debtors' estates as the Debtors would be required to adequately protect the Prepetition Secured Parties' interests in the Prepetition Collateral during the Chapter 11 Cases in any event, and (ix) the Debtors' stalking horse bidder was not willing to execute the Stalking Horse Agreement[4] without the commitments of financing provided by the DIP Facilities in accordance with the terms of the DIP Documents and this Order.

---

[4]    As used herein, "Stalking Horse Agreement" means that certain Stock and Asset Purchase Agreement by and among the Debtors and Bucephalus Buyer, LLC, dated July 19, 2020.

WEIL:\97593850\3\30180.0004

(d)    The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and this Order and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without granting priming liens under section 364(d)(1) of the Bankruptcy Code and the DIP Superpriority Claims (as defined in paragraph 22 below) and repaying in full the Prepetition ABL Obligations, in each case on the terms and conditions set forth in this Order and the DIP Documents.

(e)    The terms of the DIP Loans and the use of Prepetition Collateral (including Cash Collateral) to pay Prepetition ABL Obligations are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

(f)    The DIP Documents, the form of this Order and the use of Prepetition Collateral (including Cash Collateral) and the DIP Term Loans to pay Prepetition ABL Obligations have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the non-Debtor Prepetition ABL Loan Parties, the DIP Agent, the DIP Lenders, the DIP Arranger, and the Prepetition Secured Parties.

(g)    All of the Debtors' obligations and indebtedness owing at any time to the respective DIP ABL Secured Parties under or in connection with  the DIP Documents, including, without limitation, all DIP ABL Loans, any permitted hedging and cash management agreements to which any Debtor and any DIP ABL Lender (or any affiliate or managed fund thereof) are party all obligations owing to the DIP ABL Secured Parties arising under this Order, and all other

14

"Obligations" under, and as defined in, the DIP Credit Agreement, owing at any time to the DIP ABL Secured Parties are referred to herein as the "<u>DIP ABL Obligations</u>."

(h)     All of the Debtors' obligations and indebtedness owing at any time to the respective DIP Term Secured Parties under or in connection with the DIP Documents, including, without limitation, all DIP Term Loans, all obligations owing to the DIP Term Secured Parties arising under this Order, and all other "Obligations" under, and as defined in, the DIP Credit Agreement, owing at any time to the DIP Term Secured Parties are referred to herein as the "<u>DIP Term Obligations</u>" (the DIP ABL Obligations and the DIP Term Obligations, collectively, the "<u>DIP Obligations</u>").

(i)     All DIP Obligations shall be (A) deemed to have been extended by the DIP Agent and other DIP Secured Parties in "good faith" as such term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections set forth therein and (B) entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

12.     ***Authorization of the DIP Loans and the DIP Documents***.

(a)     The Debtors are hereby authorized, on a final basis, to (i) enter into and perform under the DIP Documents and (ii) use proceeds from the DIP Facilities for the purposes specified in the DIP Documents and subject to the terms of this Order, including the DIP ABL Budget Covenant and DIP Term Budget Covenant (each as defined in paragraph 18), as applicable. The amendment to the DIP Credit Agreement attached hereto as <u>Exhibit B</u> is hereby approved.

(b)     <u>DIP Loans</u>.  Pursuant to the terms and conditions of the DIP Documents, on a final basis, (i) the Company is hereby authorized to borrow the DIP ABL Loans, (ii) the DIP

WEIL:\97593850\3\30180.0004

Term Loan Borrower is hereby authorized to borrow the DIP Term Loans, and (iii) the DIP Guarantors are hereby authorized to unconditionally guarantee the DIP Loans.

(c)    Prepetition Letters of Credit.    Upon entry of the Interim Order, all Prepetition Letters of Credit were deemed for all purposes letters of credit issued and outstanding under the DIP ABL Facility, shall continue to constitute DIP ABL Obligations under the DIP Documents and this Order, and shall be entitled to all of the benefits and security of the DIP ABL Obligations under this Order and the DIP Documents.

(d)    General Authorization.    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and empowered to perform all acts and to execute and deliver all instruments and documents that the DIP Agent or the Required Lenders (as defined in the DIP Credit Agreement) determine to be reasonably required or necessary for the Debtors' performance of their obligations under the applicable DIP Documents and this Order, including, without limitation:

(i)    the execution, delivery, and performance of the DIP Documents;

(ii)    the execution, delivery, and performance of one or more amendments, waivers, consents, or other modifications to and under the DIP Documents, in each case in accordance with the terms of the applicable DIP Documents and in such form as the Debtors, the DIP Agent, and the requisite number and/or percentage of DIP Lenders under the DIP Credit Agreement may agree, and no further approval of this Court shall be required for any amendment, waiver, consent, or other modification to and under the DIP Documents (and any fees paid in connection therewith) that do not (A) shorten the maturity of the respective DIP Loans, (B) increase the principal amount of, or the rate of interest payable on, the DIP Loans (other than as contemplated by this clause

16

(ii)), or (C) change any Event of Default or add or amend any covenants within the DIP

Documents, in any such case to be materially more restrictive; provided, however, that a

copy of any such amendment, waiver, consent, or other modification shall be filed by the

Debtors with this Court and served by the Debtors on the U.S. Trustee and counsel to the

Committee five (5) business days in advance of its effectiveness, and any such waiver,

consent, or other modification that materially alters the substantive terms of the DIP

Documents shall require the consent of counsel to the Committee;

(iii)     the non-refundable payment to the DIP Agent, the DIP Arranger,

and the applicable DIP Lenders, as the case may be, of the commitment, underwriting,

arranger, and administrative agency fees set forth in the applicable DIP Documents, as

described in the Motion and/or referred to therein and the fee letter executed among the

Debtors, the DIP Agent, and the DIP Arranger (the "Fee Letter"); and

(iv)     the performance of all other acts required under or in connection

with the DIP Documents or this Order.

(e)     Each Debtor is authorized and directed to perform its respective obligations

under the Fee Letter, subject to the terms therein.

(f)     Upon the execution thereof, the DIP Documents shall constitute valid and

binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms

of this Order and the DIP Documents.  No obligation, payment, transfer, or grant of security by

the Debtors under the DIP Documents (as approved by this Order) or this Order shall be voidable,

avoidable, or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law

(including, without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any

applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform

Voidable Transactions Act, or similar statute or common law) or subject to any defense, reduction, setoff, recoupment, or counterclaim.

13.      **Prepetition Hedging Agreements**.  As of the Petition Date, all prepetition hedging agreements between any of the Debtors, on the one hand, and any of the Prepetition ABL Lenders or their respective affiliates, on the other hand, shall be terminated and any of the Prepetition ABL Loan Parties' obligations resulting therefrom shall be deemed Prepetition ABL Obligations.

14.      **Application of Proceeds of Prepetition Collateral to Prepetition and DIP ABL Obligations.**  During the pendency of the Chapter 11 Cases until all Prepetition ABL Obligations are paid in full, all cash, collections, and proceeds of the Prepetition Collateral (including Cash Collateral) shall be paid and applied, *first*, to permanently repay Prepetition ABL Obligations, as calculated based on the applicable default rate set forth in the Prepetition ABL Agreement, and, *second*, to repay DIP ABL Obligations, subject to re-borrowing in accordance with this Order and the DIP Credit Agreement.

15.      **Use of Proceeds of DIP Term Loans and Refinance of Prepetition ABL Obligations.**  Upon entry of this Order, the Debtors shall use proceeds of the DIP Term Loans, *first*, to repay in full in cash all Prepetition ABL Obligations on the date the DIP Term Facility closes, as calculated based on the applicable default rate set forth in the Prepetition ABL Agreement, and, *second*, to fund operating and other administrative expenses in the Chapter 11 Cases in accordance with the DIP Budget Covenants.

16.      **Prepetition Secured Parties' Consent**.  Subject to the terms and conditions of this Order, the Prepetition ABL Agent, on behalf of, and at the direction of, the requisite Prepetition Secured Parties, have agreed (a) to permit the Debtors to use the Cash Collateral solely to repay Prepetition ABL Obligations and DIP ABL Obligations in accordance with the terms of this Order,

and (b) not to object to the DIP Facilities, including the DIP Liens and DIP Superpriority Claims contemplated in connection therewith, pursuant to the DIP Documents and this Order.

17.     ***Use of Prepetition Collateral (Including Cash Collateral)***.  The Debtors are hereby authorized to use Prepetition Collateral, including Cash Collateral, in accordance with the terms and conditions of this Order; <u>provided</u> that (a) the Prepetition Secured Parties are granted adequate protection as set forth in this Order, (b) Cash Collateral shall only be used to repay Prepetition ABL Obligations and DIP ABL Obligations as provided for in paragraph 14 of this Order, and (c) except on the terms of this Order, the Debtors are not authorized to use the Cash Collateral.

18.     ***DIP Budget Covenants***.

(a)     Attached hereto as <u>Exhibit C</u> is a 13-week budget (the "<u>Initial Approved DIP Budget</u>"), which sets forth for each week during such 13-week period all forecasted (a) cash receipts of the Debtors (the "<u>Cash Receipts</u>"), (b) cash operating disbursements of the Debtors (the "<u>Cash Operating Disbursements</u>"), (c) non-operating, bankruptcy-related cash disbursements of the Debtors (including professional and U.S. Trustee fees, costs, and expenses) (the "<u>Cash Bankruptcy Disbursements</u>"), and (d) the net operating cash flow (<u>i.e.</u>, Cash Receipts minus Cash Operating Disbursements) of the Debtors (the "<u>Net Operating Cash Flow</u>," and each of Cash Receipts, Cash Operating Disbursements, and Cash Bankruptcy Disbursements shall be referred to herein individually as a "<u>Measurement Item</u>" and collectively as the "<u>Measurement Items</u>").

(b)     By 4:00 p.m. (New York City time) every Thursday after the Petition Date (starting with the second full week following the Petition Date), the Debtors shall prepare and deliver to the DIP Agent (for prompt distribution to the respective DIP Secured Parties) and to the Committee (i) an updated version of the Initial Approved DIP Budget (each, a "<u>Revised DIP ABL Budget</u>") to reflect the additional weeks of projections and any variations from the immediately

WEIL:\97593850\3\30180.0004

preceding Approved ABL Budget (as defined below), (ii) a weekly and cumulative variance report in a form acceptable to the DIP Agent, which shall (A) detail the variance, if any, on a line item basis between the actual amount of each Measurement Item for the immediately preceding week and the projected amount of each Measurement Item for the immediately preceding week as set forth in the Approved ABL Budget then in effect, and (B) provide an explanation of any Measurement Item variance greater than 20% and $250,000, and (iii) a monthly borrowing base forecast. All variations between the Initial Approved DIP Budget and each subsequently delivered Revised DIP ABL Budget shall be subject to the approval of the DIP Agent without further order of the Court. The Initial Approved DIP Budget and each subsequently delivered Revised DIP ABL Budget that is approved by the DIP Agent and the Required DIP ABL Lenders and takes effect is referred to herein as an "Approved ABL Budget"; provided, however, that, unless and until a Revised DIP ABL Budget is approved by the DIP Agent and the Required DIP ABL Lenders, such Revised DIP ABL Budget shall not constitute an Approved ABL Budget and the Debtors shall continue to make disbursements in accordance with the last Approved ABL Budget in effect. For the avoidance of doubt, the DIP Term Lenders shall not have any approval rights over any Revised DIP ABL Budget.

(c)     DIP ABL Budget Covenant. The Debtors' compliance with the Approved ABL Budget then in effect will be tested every Thursday of each week, starting with the second full week following the Petition Date, for the period beginning as of the first full week after the Petition Date and ending the week prior to the week on which compliance is tested (each, a "Testing Period") (such covenant, the "DIP ABL Budget Covenant"). Each date on which compliance with the Approved ABL Budget then in effect is tested is referred to herein as a "ABL Testing Date." As provided in the DIP Credit Agreement, the DIP ABL Lenders shall have the

WEIL:\97593850\3\30180.0004

exclusive right to call a DIP Event of Default resulting from any breach of the DIP ABL Budget Covenant and any breach of the DIP ABL Budget Covenant shall not create a DIP Event of Default under the DIP Term Loan Facility until the Required DIP ABL Lenders (as defined in the DIP Credit Agreement) have exercised remedies in respect of such breach.

(i)     On the ABL Testing Date in the second full week following the Petition Date, the cumulative actual Net Operating Cash Flow during the applicable Testing Period shall not be less than 70% of the cumulative estimated Net Operating Cash Flow set forth in the Approved ABL Budget then in effect for such Testing Period;

(ii)     On the ABL Testing Date in the third full week following the Petition Date, the cumulative actual Net Operating Cash Flow during the applicable Testing Period shall not be less than 75% of the cumulative estimated Net Operating Cash Flow set forth in the Approved ABL Budget then in effect for such Testing Period; and

(iii)     On each ABL Testing Date in and following the fourth full week following the Petition Date, the cumulative actual Net Operating Cash Flow during the applicable Testing Period shall not be less than 80% of the cumulative estimated Net Operating Cash Flow set forth in the Approved ABL Budget then in effect for such Testing Period.

(d)     DIP Term Budget Covenant.  Attached hereto as Exhibit D is an extended version of the Initial Approved Budget that contains the same projections as the Initial Approved Budget for the first 13 weeks of the Chapter 11 Cases but also includes projections for the remaining period between the Petition Date and November 20, 2020 (the "DIP Term Budget"). On the first Thursday of each month commencing with the first full month following the month in which this Order is entered (each, a "Term Testing Date"), the Debtors' actual cumulative Net

21

Operating Cash Flow less Cash Bankruptcy Disbursements (the "Net Cash Flow") between the Petition Date and the last day of the immediately preceding month (each, a "Term Test Period") shall not be less than the Debtors' projected Net Cash Flow during each Term Test Period set forth in the DIP Term Budget by more than the "Available Variance Amount" (the "DIP Term Budget Covenant," and together with the DIP ABL Budget Covenant, the "DIP Budget Covenants").  The "Available Variance Amount" means, as of any Term Testing Date, (i) $50,000,000, plus or minus, as applicable, (ii) the aggregate amount by which the Debtors' actual cumulative Net Cash Flow for the applicable Term Test Period was less than or greater than, as applicable, the Debtors' projected cumulative Net Cash Flow for such Term Test Period set forth in the DIP Term Budget.

(e)    Notwithstanding anything to the contrary in this paragraph 18, the reasonable fees, costs, and expenses incurred by, or for the benefit of, the DIP Agent shall (i) not be included in any actual or projected Measurement Item in the Initial Approved DIP Budget or any other Approved ABL Budget for purposes of compliance with any DIP Budget Covenant; and (ii) be paid by the Debtors in accordance with the DIP Documents and this Order, and shall not be subject to subject to any cap or other amount, timing, or other restriction set forth in the Initial Approved DIP Budget or any other Approved ABL Budget.

(f)    The approval or consent of the DIP Agent or DIP Lenders to the Initial Approved DIP Budget or any subsequent Approved ABL Budget shall not be construed as consent to the use of any Cash Collateral or DIP Loans after the occurrence of any DIP Event of Default, regardless of whether the aggregate funds shown on the applicable Approved ABL Budget have been expended, other than funds necessary to satisfy the Carve-Out.

(g)    Notwithstanding anything set forth herein or in the DIP Documents to the contrary, the budget for the fees and expenses of the Committee Professionals as set forth in the

22

DIP Term Budget shall not be reduced without the express written consent of the Committee and the applicable professional.

19.        ***Limitation on Use of DIP Loans, DIP Collateral, and Prepetition Collateral***. Notwithstanding anything herein or in any other order of this Court to the contrary, no DIP Loans, no DIP Collateral, no Prepetition Collateral (including the Cash Collateral), nor the Carve-Out may be used to (a) object, contest, or raise any defense to the validity, perfection, priority, extent, or enforceability of any amount due under the DIP Documents, the Prepetition ABL Documents, or the liens or claims granted under this Order, the DIP Documents, or the Prepetition ABL Documents; (b) assert any Challenges or any other causes of action against the DIP Agent, the DIP Arranger, the DIP Lenders, the Prepetition Secured Parties, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; (c) prevent, hinder, or otherwise delay the DIP Agent's assertion, enforcement, or realization on the DIP Collateral in accordance with the DIP Documents or this Order; (d) seek to modify any of the rights granted to the DIP Agent, the DIP Arranger, the DIP Lenders, or the Prepetition Secured Parties hereunder or under the DIP Documents or the Prepetition ABL Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent; or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents; <u>provided</u> that, notwithstanding anything to the contrary herein, no more than an aggregate of $150,000 of the Prepetition Collateral (including the Cash Collateral), the DIP Loans, the DIP Collateral, and the Carve-Out may be used by the Committee to investigate (A) the validity, enforceability, or priority of the Prepetition ABL Obligations owed by the Debtors, (B) the Debtors' liens on the Prepetition Collateral securing the Prepetition ABL Obligations, and (C) any Challenges held by the Debtors

23

against the Prepetition Secured Parties (the "Challenge Budget").  No fees and expenses of the Committee and its retained professionals incurred in connection with the investigation of the matters described in this paragraph in excess of the Challenge Budget shall be included in the Carve-Out or entitled to administrative expense priority pursuant to section 503(b) of the Bankruptcy Code.

20.      ***Adequate Protection for the Prepetition Secured Parties***.  Subject in all respects to the Carve-Out, at any time Prepetition ABL Obligations remain outstanding, the Prepetition Secured Parties shall be entitled, pursuant to sections 361, 363(c)(2), 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of their interests in the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease, or use by the Debtors (or other decline in value) of the Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition ABL Agent's liens on the Prepetition Collateral by the DIP Liens, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (any such diminution in value, "Diminution in Value"); provided that nothing in this Order shall constitute a finding of Diminution in Value and any Diminution in Value shall only be determined by the Court after notice and a hearing.  For the avoidance of doubt, the rights of the Prepetition Secured Parties, the Debtors, the Committee, and all other parties in interest in respect of whether any Diminution in Value has occurred and the extent of any Diminution in Value are reserved.  The Prepetition Secured Parties are hereby granted the following adequate protection to the extent of any Diminution in Value (collectively, the "Adequate Protection Obligations"):

WEIL:\97593850\3\30180.0004

(i)    <u>ABL Adequate Protection Liens</u>.  Effective and perfected as of the date of entry of this Order, without the necessity of the execution by any Debtor of mortgages, security agreements, pledge agreements, financing statements, or other agreements, solely for the DIP Agent, on behalf of the Prepetition Secured Parties, a security interest in and lien upon all of the DIP Collateral to the extent of any Diminution in Value (the "<u>Adequate Protection Liens</u>"), subject and subordinate only to the DIP Liens, the Carve-Out, Permitted Liens (as defined in the DIP Credit Agreement), and any Prior Senior Liens.

(ii)    <u>ABL Superpriority Claims</u>.  Allowed superpriority administrative claims, not to exceed any Diminution in Value, solely for the benefit of the Prepetition Secured Parties, against each of the Debtors (the "<u>ABL Superpriority Claims</u>") with priority over any and all other administrative expenses and other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under sections 503(b) and 507(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof; <u>provided</u> that the ABL Superpriority Claims shall be subordinate only to (a) the DIP Superpriority Claims, except as otherwise provided in Section 11.02 of the DIP Credit Agreement, (b) the Carve-Out, and (c) any Termination Payment and Expense Reimbursement Payment (each as defined in the Stalking Horse Agreement).  Notwithstanding the foregoing, the Prepetition Secured Parties may not assert an ABL Superpriority Claim against any

25

proceeds to which the Debtors' estates are entitled arising from Avoidance Actions, commercial tort claims, or any other claim or cause of action asserted against the Prepetition Secured Parties pursuant to a Challenge that is commenced, prosecuted and sustained by final, non-appealable order of this Court, in each case in accordance with the terms of this Order.

(iii)    Prepetition Secured Party Fees and Expenses. Without limiting any rights of the Prepetition Secured Parties under section 506(b) of the Bankruptcy Code, which are hereby preserved, the Debtors are authorized and directed to pay, in accordance with paragraph 32 of this Order, (A) all reasonable and documented accrued and unpaid fees and disbursements (including, but not limited to, the reasonable and documented fees owed to the Prepetition ABL Agent) owing to the Prepetition Secured Parties under the Prepetition ABL Documents and incurred prior to the Petition Date; and (B) current cash payments of all reasonable and documented actual fees and out-of-pocket disbursements incurred on or after the Petition Date of (1) Latham & Watkins LLP, (2) Bryan Cave Leighton Paisner LLP, (3) FTI Consulting, Inc., and (4) such other professionals as may be retained or may have been retained from time to time by the Prepetition ABL Agent or the Prepetition ABL Lenders, in their reasonable discretions.

(iv)    Payment of Interest. Without limiting any rights of the Prepetition Secured Parties under section 506(b) of the Bankruptcy Code, which are hereby preserved, the Debtors are authorized and have agreed to pay to the Prepetition ABL Agent for the ratable benefit of the Prepetition Secured Parties:  (A) no later than three business days after entry of this Order, all accrued and unpaid interest, fees, and costs due and payable under the Prepetition ABL Agreement as of the Petition Date, in each case, calculated

WEIL:\97593850\3\30180.0004

based on the applicable default rates set forth in the Prepetition ABL Agreement or other applicable documents; and (B) all accrued and unpaid postpetition interest, fees, and costs, in each case calculated based on the applicable default rates under the Prepetition ABL Agreement, as, when, and in the respective amounts due and payable under the Prepetition ABL Agreement; provided, however, the Committee reserves the right to seek to recharacterize any interest, fees and costs paid to the Prepetition Secured Parties pursuant to the terms of paragraphs 20(iii) and 20(iv) of this Order in the event that the Court enters a final, non-appealable order after notice and a hearing finding that (1) the Prepetition Secured Parties were undersecured on the Petition Date and (2) there is insufficient Diminution in Value of the Prepetition Secured Parties' interests to otherwise cover payments of such interest, fees and costs..

(v)     Application of Prepetition Collateral Proceeds to Prepetition Obligations.  The payments provided for in paragraph 14 hereof shall also constitute adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral.

(vi)     Reporting.  Receipt of financial and all other reporting (including each Revised DIP ABL Budget), as described in the DIP Documents.

(b)     Nothing in this Order or the DIP Documents shall impair or prejudice the rights, remedies, and privileges of the Prepetition ABL Agent and the Prepetition ABL Lenders granted under the Bankruptcy Code or as set forth in the Prepetition ABL Documents to the extent the Prepetition ABL Obligations are, after repayment, required to be disgorged or otherwise avoided or reinstated, and all of the Prepetition ABL Agent's and Prepetition ABL Lenders' rights

WEIL:\97593850\3\30180.0004

and remedies under the Bankruptcy Code and the Prepetition ABL Documents are hereby fully preserved, including their right to seek additional or further adequate protection.

21.     *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted by the Debtors to the DIP Agent, for itself and the respective benefit of the applicable DIP Lenders (all property of the Debtors identified in clauses (a) and (b) of this paragraph 21, including all Prepetition Collateral, being collectively referred to as the "DIP Collateral"; all such liens and security interests granted to the DIP Agent pursuant to this Order, the "DIP Liens"), subject and subordinate to (i) the Carve-Out, (ii) any Termination Payment, and (iii) any Expense Reimbursement Payment, and having the priorities set forth in this paragraph 21:

(a)     First Priority Lien on Unencumbered Property.     Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, non-avoidable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors, whether now existing or hereafter acquired, that is not subject to either (i) valid, perfected, non-avoidable, and enforceable liens in existence on or as of the Petition Date or (ii) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"); provided that the Unencumbered Property shall exclude (i) any of the Debtors' claims and causes of actions arising under chapter 5 of the Bankruptcy Code (collectively, the "Avoidance Actions") and (ii) all proceeds or property

Pg 29 of 51

recovered in respect of any Avoidance Actions. The DIP Liens on the Unencumbered Property shall only be subject and subordinate to (i) the Carve-Out, (ii) any Termination Payment, and (iii) any Expense Reimbursement Payment.

(b)    First Priority, Priming Lien on all Encumbered Property. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, non-avoidable, fully-perfected first priority, senior priming lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtors (including the Prepetition Collateral), whether now existing or hereafter acquired, excluding the Unencumbered Property (such property, the "Encumbered Property"); provided that such liens shall only be subject and subordinate to (i) the Prior Senior Liens, (ii) the Carve-Out, (iii) any Termination Payment, and (iv) any Expense Reimbursement Payment.

22.    *DIP Superpriority Claims*. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative claims (the "DIP Superpriority Claims") against the Debtors (without the need to file any proof of claim or request for payment of administrative expense) with priority over any and all administrative claims, adequate protection claims (including the ABL Superpriority Claims), and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever (including, without limitation, all administrative expenses and claims arising under sections 105, 326, 328, 330, 331, 364(c)(1), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment; provided, however, the DIP Superpriority Claims shall be subordinated to (i) the Carve-Out, (ii) any Termination Payment, and (iii) any Expense Reimbursement Payment; provided, further, that, subject to the limitations set forth in

Section 11.02 of the DIP Credit Agreement with respect to the Aggregate First Out Obligations (as defined in the DIP Credit Agreement), the DIP Superpriority Claims arising from the DIP Term Obligations shall be junior and subordinate in right and time of payment to (a) the DIP Superpriority Claims arising from the DIP ABL Obligations and (b) the Prepetition ABL Obligations and the ABL Superpriority Claims, respectively, until the Prepetition ABL Obligations are indefeasibly repaid in full in cash or otherwise "rolled up" into DIP Obligations.

23.      ***Subordination of DIP Term Obligations to Prepetition ABL Obligations.*** Notwithstanding anything herein to the contrary, the DIP Term Obligations shall be subordinated in right of payment to the Prepetition ABL Obligations as provided in and in accordance with Section 11.02 of the DIP Credit Agreement.

24.      ***Forbearance of Prepetition Secured Parties***.  The Prepetition Secured Parties shall forbear from exercising their default-related rights and remedies under the Prepetition ABL Documents against the Non-Debtor Foreign DIP Guarantors or their assets pursuant to, and in accordance with, the DIP Credit Agreement.

25.      ***Credit Bidding***.  The Prepetition ABL Lenders and the DIP Lenders shall have the unqualified right, in accordance with the terms of the Prepetition ABL Agreement or the DIP Credit Agreement, as applicable, to credit bid up to the full amount of the outstanding Prepetition ABL Obligations or respective DIP Obligations, as applicable (each such bid, a "<u>Credit Bid</u>") in each case pursuant to section 363(k) of the Bankruptcy Code in any sale or transfer authorized by the Court pursuant to section 363, 725, or 1123 of the Bankruptcy Code (the "<u>Sale</u>"); <u>provided</u> that (i) any Credit Bid by the Prepetition ABL Lenders must include cash in an amount sufficient to repay the DIP ABL Obligations in full on the closing date of any such sale; (ii) any Credit Bid by the DIP Term Lenders, including for the avoidance of doubt any credit bid against the Stalking

WEIL:\97593850\3\30180.0004

Horse Bid in accordance with the DIP Credit Agreement, must include cash in an amount sufficient to repay the DIP ABL Obligations and Prepetition ABL Obligations in full on the closing date of any such sale, in each case, for so long as such DIP ABL Obligations and Prepetition ABL Obligations do not constitute Excess Obligations and subject to the requirements set forth in paragraph 23 above; (iii) any Credit Bid by any Prepetition ABL Lender or any DIP Lender must include a commitment to provide cash consideration sufficient to pay in full any Termination Payment or Expense Reimbursement Payment approved by the Court as and when due; and (iv) any Credit Bid must comply with the Bidding Procedures Order (as defined in the DIP Credit Agreement). For the avoidance of doubt, any Credit Bid of the DIP Term Lenders made in accordance with the DIP Credit Agreement may be applied to the purchase price under the Stalking Horse APA as provided therein.

26.    ***Carve-Out.***

(a)    The "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (b) below); (ii) fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (b) below); (iii) to the extent allowed at any time, whether by interim or final compensation order, all unpaid fees and expenses (including transaction fees or success fees earned by or payable to a Professional Person) (the "Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and the Committee pursuant to section 1102 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first

WEIL:\97593850\3\30180.0004

business day after delivery by the DIP Agent (at the direction of either the Required Revolving Lenders or the Required DIP Term Lenders) of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice and without regard to whether such fees and expenses are provided for in the Initial Approved DIP Budget or any Approved ABL Budget; and (iv) Professional Fees incurred after the first business day following delivery by the DIP Agent (at the direction of either the Required Revolving Lenders or the Required DIP Term Lenders) of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (A) in an aggregate amount, excluding any success or transaction fees owed to Debtor Professionals, not to exceed $4,000,000 with respect to the Debtor Professionals and in an aggregate amount not to exceed $750,000 with respect to the Committee Professionals, plus (B) in an aggregate amount equal to any success or transaction fees owed to Debtor Professionals not to exceed $15,000,000 (the sum of such amounts, the "Post-Carve-Out Trigger Notice Cap").

(b)      For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (at the direction of either the Required Revolving Lenders or the Required DIP Term Lenders) to the Debtors, its lead restructuring counsel, the United States Trustee, and lead counsel to the Committee, stating that the Post-Carve-Out Trigger Notice Cap has been invoked, which notice may be delivered following the occurrence and during the continuation of any DIP Event of Default.

(c)      On the day on which a Carve-Out Trigger Notice is received by the Debtors, the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand and any available cash thereafter to transfer to the Professional Fees Account cash in an amount equal to the Carve-Out.

(d)      Following delivery of a Carve-Out Trigger Notice, the DIP Agent shall deposit into the Professional Fees Account (as defined below) any cash swept or foreclosed upon and any cash received as a result of the sale or other disposition of any assets until the Professional Fees Account has been fully funded in an amount equal to the Carve-Out prior to any and all other claims.  Notwithstanding anything to the contrary in the DIP Documents, the Interim Order, or this Order, following delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep, foreclose on or apply to DIP Obligations cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fees Account has been fully funded in an amount equal to the Carve-Out.

(e)      Further, notwithstanding anything to the contrary herein, (i) disbursements by the Debtors from the Professional Fees Account shall not constitute DIP Loans, (ii) the failure of the Professional Fees Account to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out and (iii) in no way shall the Carve-Out, Professional Fees Account, or any Approved ABL Budget or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors or that may be allowed by the Court at any time (whether by interim order, final order, or otherwise).  No portion of the Carve-Out, any cash collateral, any other DIP Collateral, or any proceeds of the DIP Facility, including any disbursements set forth in the Initial Approved DIP Budget or any Approved ABL Budget or obligations benefitting from the Carve-Out, shall be used for the payment of Professional Fees, disbursements, costs, or expenses incurred by any person, including, without limitation, any committee appointed in the Chapter 11 Cases, in connection with challenging the liens or claims of the DIP Secured Parties, preventing, hindering, or delaying any of the DIP Secured Parties' or Prepetition Secured Parties' enforcement or realization upon any of the DIP Collateral, or initiating

33

or prosecuting any claim or action against any DIP Secured Party, unless otherwise ordered by the Court, other than with respect to seeking a determination that a DIP Event of Default has not occurred or is not continuing.

(f)     For the avoidance of doubt and notwithstanding anything to the contrary herein or in the DIP Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Facilities, any adequate protection liens, any superpriority claims (whether granted to secure the DIP Facilities or as adequate protection), any and all other liens or claims securing the DIP Facilities, any Termination Payment, and any Expense Reimbursement Payment.

27.     *Professional Fees Account*.

(a)     The Debtors shall (i) contemporaneously with the initial funding of the DIP Loans, transfer cash proceeds from the DIP Facilities in an amount equal to the total budgeted weekly Professional Fees for the first two weekly periods set forth in the Initial Approved DIP Budget and (ii) thereafter on a weekly basis transfer cash proceeds from the DIP Facilities or cash on hand, in an amount equal to the aggregate amount of estimated unpaid fees and expenses incurred during the preceding week by each Professional Person or if an estimate is not provided, the total budgeted weekly fees of Professional Persons for the prior week set forth in the Approved ABL Budget, in each case into a segregated account not subject to the control, lien, security interest, or claims of the DIP Agent, any DIP Secured Party, or any Prepetition Secured Party (the "Professional Fees Account"); provided that, upon the closing of any sale, restructuring, financing, or other transaction upon which one or more success or transaction fees is earned and becomes payable to the Debtor Professionals, the Debtors shall fund the Professional Fees Account with an additional amount equal to the sum of all such fees, to the extent such fees are not paid to Debtor Professionals upon the closing of such transaction out of the cash proceeds of such transaction.

34

(b)      The Debtors shall be authorized to use funds held in the Professional Fees Account solely to pay Professional Fees as they become allowed and payable pursuant to any interim or final orders of the Court or otherwise; provided that when all allowed Professional Fees have been paid in full (regardless of when such Professional Fees are allowed by the Court) and the Carve-Out is funded, any funds remaining in the Professional Fees Account shall revert to the Debtors for use in a manner not inconsistent with this Order and the DIP Documents; provided further that the Debtors' obligations to pay allowed Professional Fees shall not be limited or be deemed limited to funds held in the Professional Fees Account.

(c)      Funds transferred to the Professional Fees Account shall be held in trust for the Professional Persons, throughout the duration of these Chapter 11 Cases, including with respect to obligations arising out of the Carve-Out.  Funds transferred to the Professional Fees Account shall not be subject to any liens or claims granted to the DIP Agent or DIP Lenders herein or any liens or claims granted to the Prepetition ABL Agent or the Prepetition Secured Parties as adequate protection, and shall not constitute DIP Collateral, Prepetition Collateral, or cash collateral; provided that the DIP Collateral and the Prepetition Collateral shall include the Debtors' reversionary interest in funds held in the Professional Fees Account, if any, after all estimated and allowed Professional Fees have been paid in full (regardless of when such Professional Fees are allowed by the Court) and the Carve-Out is funded, which reversionary interest shall be junior to the Carve-Out.  For the avoidance of doubt, after the DIP Obligations have been paid in full, the obligation of the Debtors (but not the DIP Lenders) to fund the Professional Fees Account shall continue and stay in effect throughout the duration of these Chapter 11 Cases.

WEIL:\97593850\3\30180.0004

28.    ***Perfection of DIP Liens and Adequate Protection Liens***.

(a)    The DIP Agent and the Prepetition ABL Agent are each hereby authorized, but not required, to (i) file or record financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments in any jurisdiction and (ii) take possession of, control over, or any other action in order to validate and perfect the DIP Liens or the applicable Adequate Protection Liens granted to them hereunder, in all cases subject to the priorities set forth herein and in the DIP Documents.  Whether or not the DIP Agent or the Prepetition ABL Agent, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien, or similar instruments; choose to take possession of or control over; or choose to otherwise confirm perfection of the DIP Liens and the applicable Adequate Protection Liens, such DIP Liens and such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination as of the date of entry of this Order (other than as expressly set forth in this Order or the DIP Documents).

(b)    A certified copy of this Order may, in the discretion of the Prepetition ABL Agent and DIP Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien, or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)    The Debtors shall execute and deliver to the DIP Agent and the Prepetition ABL Agent all such agreements, financing statements, instruments, and other documents as the DIP Agent and Prepetition ABL Agent, as the case may be, may reasonably request to evidence, confirm, validate, or perfect the DIP Liens and the applicable Adequate Protection Liens.  The

36

Debtors shall cause the Non-Debtor DIP ABL Borrower and Non-Debtor Foreign DIP Guarantors (collectively, the "Non-Debtor DIP Parties") to use commercially reasonable efforts to take such actions necessary to grant and perfect or otherwise reaffirm the perfection of the liens contemplated in the DIP Documents to be granted or so reaffirmed by such Non-Debtor DIP Parties.

(d)    Notwithstanding anything to the contrary in the Motion, the DIP Documents, or this Order, in no event shall the DIP Collateral include, or the DIP Liens or Adequate Protection Liens attach to, any lease, license, contract, or agreement or other property right to which any Debtor is a party, or any of such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in: (i) the abandonment, invalidation, unenforceability, or other impairment of any right, title, or interest of any Debtor therein or (ii) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract or agreement or other property right pursuant to any provision thereof, unless, in the case of each of clauses (i) and (ii), the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code (such leases, licenses, contracts, or agreements or other property rights are collectively referred to as the "Specified Contracts"); provided that DIP Collateral shall include, and the DIP Liens, Adequate Protection Liens, and DIP Superpriority Claims shall in all events attach to and have recourse from, all proceeds, products, offspring, or profits from any and all Specified Contracts (including from the sale, transfer, disposition, or monetization thereof).

29.    ***Remedies After DIP Event of Default.***

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Secured Parties and Prepetition Secured Parties to exercise, upon the occurrence and during the continuance of a DIP Event of

Default, all rights and remedies against the DIP Collateral and Prepetition Collateral (as applicable) provided for in the DIP Documents, the Prepetition ABL Documents, and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Prepetition ABL Agent or any other Prepetition Secured Party or the DIP Agent or any other DIP Secured Party), but only after (i) the giving of five business days' prior written notice (the "Default Notice Period") to the U.S. Trustee, the Debtors, and the Committee through their respective counsel and (ii) any hearing, if requested by a party in interest, regarding any exercise of rights and remedies under, and in accordance with, the DIP Documents and this Order (which hearing must take place within the Default Notice Period) (such hearing, a "Default Hearing").

(b)      In any Default Hearing, the only issue that may be raised by any party in opposition thereto shall be whether a DIP Event of Default has occurred and is continuing, and the U.S. Trustee, the Debtors, the Committee, and all other parties in interest shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Prepetition ABL Agent, the Prepetition Secured Parties, the DIP Agent, or the DIP Secured Parties set forth in this Order, the Prepetition ABL Documents, or the DIP Documents.

(c)      For the avoidance of doubt, this paragraph 29 only applies to the exercise of remedies against the DIP Collateral and Prepetition Collateral, and the DIP Secured Parties retain the right, upon a DIP Event of Default, to (i) immediately declare all or any portion of the DIP Obligations due and payable, (ii) refuse to fund any further DIP Loans under the DIP Facilities, and/or (iii) terminate the authority to use Cash Collateral under this Order.

30.      ***Indemnification.***  The Debtors shall, and shall cause the Non-Debtor DIP Parties to, jointly and severally indemnify and hold harmless the DIP Agent (solely in its agent capacity),

WEIL:\97593850\3\30180.0004

each other DIP Secured Party, and each other Indemnified Person (as defined in the DIP Credit Agreement) as provided in the DIP Credit Agreement.

31.    ***DIP Fees and Expenses.***    The Debtors are authorized and directed to pay, in accordance with paragraph 32 of this Order, all reasonable and documented out-of-pocket fees, costs, and expenses incurred by or for the benefit of the DIP Agent in connection with the DIP Documents, the DIP Facilities, and the Chapter 11 Cases, including, without limitation, (a) the reasonable and documented out-of-pocket fees, charges, and expenses of (i) Latham & Watkins LLP (as co-counsel to the DIP Agent), (ii) Bryan Cave Leighton Paisner LLP (as co-counsel to the DIP Agent), (iii) FTI Consulting, Inc. (as financial advisor to the DIP Agent), and (iv) such other professionals that may be retained or may have been retained from time to time by or for the benefit of the DIP Agent; and (b) all costs and expenses incurred by or for the benefit of the DIP Agent in connection with any filing, registration, recording, or perfection of any security interest contemplated or permitted by the DIP Credit Agreement or any other DIP Documents.

32.    ***Professional Fee Procedural Requirements.***

(a)    For payments authorized by paragraphs 20(iii) and 31 of this Order (such fees and expenses, the "Lender Professional Fees"), the Prepetition ABL Agent and DIP Agent (as applicable) shall submit a copy of each summary invoice to the Debtors, the U.S. Trustee, and the Committee.  Such summary invoices for such Lender Professional Fees shall include the total number of hours billed and a summary description of the services provided and the expenses incurred by the applicable professional firm during the covered period; provided, however, that any such invoice (a) may be redacted to protect privileged, confidential, or proprietary information and (b) shall not be required to contain individual time detail.  None of the Lender Professional Fees shall be subject to Court approval (subject to this paragraph 32) or required to be maintained

in accordance with the fee guidelines promulgated by the U.S. Trustee, and no recipient of any payment on account thereof shall be required to file with respect thereto any interim or final fee application with the Court.

(b)     If no written objections to the reasonableness of the fees and expenses charged in any such statement or invoice (or portion thereof) is made within ten days of presentment of such statements or invoices, the Debtors shall thereafter promptly pay in cash all such Lender Professional Fees.  Any objection raised by the Debtors, the U.S. Trustee, or the Committee with respect to such fee and expense statements or invoices (with notice of such objection provided to the DIP Agent and to the respective professional(s)) shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection.  To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid.  If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the applicable professional and the Debtors, the Committee, or the U.S. Trustee, either party may submit such dispute to the Court for resolution, and this Court retains jurisdiction to resolve any such dispute.

(c)     The Lender Professional Fees shall not be subject to the Initial Approved DIP Budget or any Approved ABL Budget and shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

33.     ***Limitation on Charging Expenses Against Collateral***.  Except to the extent of the Carve-Out, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral, as the case may be, pursuant to section 506(c) of the Bankruptcy Code or any similar

40

principle of law, without the prior written consent of the DIP Agent (at the direction of the Required Lenders) or the Prepetition ABL Agent, as the case may be, and no such consent shall be implied from any other action or inaction by the DIP Agent, the other DIP Secured Parties, the Prepetition ABL Agent, or the other Prepetition Secured Parties.

34.    *Limitations under Section 552(b) of the Bankruptcy Code*.    The Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the Debtors shall not invoke the "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

35.    *Payments Free and Clear*.    Any and all payments or proceeds remitted to any DIP Secured Parties or (except as provided in paragraph 10 of this Order) to any Prepetition Secured Parties pursuant to, and in accordance with, the provisions of this Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment, or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or section 552(b) of the Bankruptcy Code, and shall not be subject to disgorgement or avoidance.

36.    *Prepetition Secured Party as Bailee*.    To the extent any Prepetition Secured Party has possession of the Collateral or has control with respect to any Collateral that is subject to a DIP Lien, then such Prepetition Secured Party shall be deemed to maintain such possession or exercise such control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Secured Parties and shall comply with the instructions of the DIP Agent with respect to the exercise of such control.

37.     *Insurance*.  To the extent any Prepetition Secured Party is listed as loss payee under the Debtors' insurance policies, the DIP Agent, for the benefit of the DIP Secured Parties, is also hereby deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and, subject to the terms of the DIP Documents, distribute any proceeds recovered or received in respect of any such insurance policies to the payment in full of the applicable DIP Obligations.

38.     *Proceeds of Subsequent Financing*.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Chapter 11 Cases or any cases succeeding these Chapter 11 Cases obtains credit or incurs debt pursuant to sections 364(b), 364(c), or 364(d) of the Bankruptcy Code or in violation of the DIP Documents at any time prior to the indefeasible repayment in full of all DIP Obligations and the termination of the DIP Secured Parties' obligations to extend credit under the DIP Facilities, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Order and the DIP Documents.

39.     *Maintenance of DIP Collateral*. Until the indefeasible payment in full of all DIP Obligations and the termination of the DIP Secured Parties' obligations to extend credit under the DIP Facilities, the Debtors shall, and shall cause the Non-Debtor DIP Parties to: (a) insure the DIP Collateral as required under the DIP Facilities; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court which has first been agreed to by the DIP Agent or as otherwise required by the DIP Documents.

WEIL:\97593850\3\30180.0004

40.      ***Prepetition ABL Obligations***.  Subject to the provisions of this Order, upon the repayment in full in cash of the Prepetition ABL Obligations, the commitments of all Prepetition Secured Parties under the Prepetition ABL Agreement and all other Loan Documents (as defined therein) shall be terminated and all security interests in, and liens on, Prepetition Collateral granted to secure the Prepetition ABL Obligations shall be immediately, and without the necessity of further action, deemed to be included among the DIP Liens granted pursuant to this Order to secure the DIP Obligations.

41.      ***Preservation and Protection of Rights Granted Under the Order***.

(a)      No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent and Prepetition ABL Agent, respectively, shall be granted or allowed while any portion of the DIP Obligations or Adequate Protection Obligations (as applicable) remain outstanding, and the DIP Liens and Adequate Protection Liens shall not be subject or subordinated to or made *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)      Unless all DIP Obligations shall have been indefeasibly paid in full in cash, it shall constitute a DIP Event of Default under the DIP Credit Agreement if (i) any Debtor seeks, or if there is entered, any modification of this Order without the prior written consent of the DIP Agent (at the direction of the Required Lenders) (and no such consent shall be implied by any other action, inaction, or acquiescence by the DIP Agent or any DIP Lender) or (ii) an order is entered converting or dismissing any of the Chapter 11 Cases.

(c)      The Debtors' right to use Prepetition Collateral shall immediately terminate without further order of this Court if (i) any of the Debtors seeks, or if there is entered, any

43

modification of this Order that adversely affects any lien, claim, right, or other protection (including without limitation Adequate Protection) granted to or for the benefit of any Prepetition Secured Party without the prior written consent of the Prepetition ABL Agent and the Required Lenders (as defined in the Prepetition ABL Agreement) (and no such consent shall be implied by any other action, inaction, or acquiescence by the Prepetition ABL Agent or such Required Lenders) or (ii) an order is entered converting or dismissing any of the Chapter 11 Cases.

(d)    If any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur shall not affect (i) the validity, priority, or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification, or vacatur or (ii) the validity, priority, or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification, or vacatur, any use of the Cash Collateral, any DIP Obligations, or any Adequate Protection Obligations incurred by the Debtors to the DIP Agent, the other DIP Secured Parties, the Prepetition ABL Agent or the other Prepetition Secured Parties, as the case may be, prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Order, and the DIP Agent, the other DIP Secured Parties, the Prepetition ABL Agent and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges, and benefits granted in section 364(e) of the Bankruptcy Code, the Interim Order, this Order, the DIP Documents (with respect to all DIP Obligations), the Adequate Protection Obligations, and use of the Cash Collateral.

(e)    Except as expressly provided in this Order or in the DIP Documents and until all DIP Obligations are indefeasibly paid in full in cash and all Adequate Protection Obligations are indefeasibly paid in full in cash or otherwise satisfied in accordance with this

44

Order, the terms of this Order, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the ABL Superpriority Claims, and all other rights and remedies of the DIP Agent, the other DIP Secured Parties, the Prepetition ABL Agent, and the other Prepetition Secured Parties granted by this Order and the DIP Documents shall survive and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Chapter 11 Cases, (ii) the entry of an order appointing a trustee in the Chapter 11 Cases, (iii) the entry of an order approving the sale of any Prepetition Collateral or DIP Collateral pursuant to section 363(b) of the Bankruptcy Code, or (iv) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases, and pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.

(f)    In no event shall any of the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to their respective liens and security interests upon and in the DIP Collateral or the Prepetition Collateral, as applicable.  Any DIP Secured Party's or Prepetition Secured Party's delay or failure to exercise rights and remedies under the DIP Documents or this Order, as applicable, shall not constitute a waiver of such DIP Secured Party's or Prepetition Secured Party's rights hereunder, thereunder, or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of a DIP Credit Agreement or this Order, as applicable.

(g)    The DIP Liens shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code.

(h)    No rights, protections, or remedies of the DIP Secured Parties or Prepetition Secured Parties granted by the provisions of this Order or the DIP Documents shall be limited,

WEIL:\97593850\3\30180.0004

modified, or impaired in any way by (i) any actual or purported withdrawal of the consent of any party to the Debtors' use of Cash Collateral, (ii) any actual or purported termination of the Debtors' authority to use Cash Collateral, (iii) the terms of any other order or stipulation related to the Debtors' use of Cash Collateral or any other matter, or (iv) the provision of adequate protection to any party.

(i)         No restrictions on the exercise of remedies provided for in this Order shall apply to any exercise of remedies by the DIP Agent, the other DIP Secured Parties, the Prepetition ABL Agent, or the other Prepetition Secured Parties against the Non-Debtor DIP Parties or any other non-Debtors or their respective assets, and nothing in this Order shall be interpreted to extend the automatic stay or any other protections to the Non-Debtor DIP Parties or any other non-Debtors or their respective assets.

42.    ***Binding Effect; Successors and Assigns***.  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including without limitation, the DIP Agent, the other DIP Secured Parties, the Prepetition ABL Agent, and the other Prepetition Secured Parties, and the Debtors and the respective successors and assigns of each (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner with expanded powers appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the other DIP Secured Parties, the Prepetition ABL Agent and the other Prepetition Secured Parties, and the Debtors and their respective successors and assigns; provided that, except to the extent expressly set forth in this Order or the DIP Documents, the DIP Agent, the other DIP Secured Parties, the Prepetition ABL Agent and the other Prepetition

46

Secured Parties shall have no obligation to permit the use of the DIP Loans or the Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

43. **_Limitation of Liability_**.  In determining to make any DIP Loan under the DIP Credit Agreement, permitting the use of Prepetition Collateral, or exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the other DIP Secured Parties, the Prepetition ABL Agent and the other Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).  Furthermore, nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the other DIP Secured Parties, the Prepetition ABL Agent and the other Prepetition Secured Parties  of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

44. **_No Jurisdiction Over Non-Debtors_**.  Notwithstanding anything to the contrary in this Order, nothing herein shall be deemed or construed to be an exercise of jurisdiction by this Court over any of the Non-Debtor DIP Parties or any of their assets.

45. **_Non-Debtor Guarantors_**.  Any direct or indirect subsidiary of the Debtors that hereafter becomes a debtor in a case under chapter 11 of the Bankruptcy Code in this Court automatically and immediately, upon the filing of a petition for relief for such subsidiary, shall be deemed to be one of the "Debtors" hereunder in all respects, and all the terms and provisions of this Order, including, those provisions granting security interests in, and liens on, the DIP

Collateral, and the DIP Superpriority Claims in each of the Chapter 11 Cases, shall, to the extent not already, immediately be applicable in all respects to such subsidiary and its chapter 11 estate, subject to the terms and conditions of this Order.  Within two business days of the filing of a petition for relief for any such subsidiary, the Debtors shall file a notice with the Court indicating that the subsidiary is a Guarantor under the DIP Credit Agreement and a "Debtor" subject to the terms of this Order.

46.      ***Proofs of Claim***.  The Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases for any claim as to which the Debtors have stipulated in paragraph 8 of this Order; provided, however, the Prepetition ABL Agent shall have the right to file a proof of claim with respect to the Prepetition ABL Obligations on behalf of the Prepetition Secured Parties.  The Debtors' stipulations and admissions contained in this Order shall be deemed to constitute timely proofs of claim for the Prepetition Secured Parties on account of their respective Prepetition ABL Obligations upon approval of this Order.

47.      ***Non-Primed Liens***.  For the avoidance of doubt, notwithstanding any other provisions included in this Order or any agreements approved hereby, to the extent (a) Jones Plastic & Engineering Company, LLC ("Jones"), (b) Ataco Steel Products Corporation ("Ataco"), and/or (c)  Trend Technologies LLC ("Trend" and together with Jones and Ataco, the "Lien Claimants") have (i) valid, perfected, non-avoidable liens in existence on, as of, or after the Petition Date or (ii) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Non-Primed Liens"), the Non-Primed Liens shall not be primed by nor made subordinate to the DIP Liens or any other liens granted to any party hereby; provided that all

WEIL:\97593850\3\30180.0004

parties' rights to object to the priority, perfection, validity, amount, and extent of the claims and liens asserted by the Lien Claimants are fully preserved.

48.     ***Picospray Settlement***.  Picospray, Inc. ("Picospray") asserts that it has a claim in these cases in the amount of $2,000,000 that is secured by a valid, perfected security interest in certain intellectual property that it sold to the debtors prior to the Petition Date.  Picospray has also informally asserted certain objections to the Motion and to the proposed sale of such intellectual property by the Debtors.  In full and final satisfaction of the any and all objections, claims or liens asserted by Picospray or any of its affiliates against the Debtors, the intellectual property, or any purchaser of the Debtors' assets, Picospray is granted: (i) an allowed secured administrative claim in the amount of $175,000, which claim shall be paid at closing from the proceeds of the sale of the Debtors' assets after the payment of any claims of the DIP Lenders, and (ii) an allowed general unsecured claim in the amount of $1,825,000 which shall be treated in accordance with any plan confirmed by the debtors in these cases.

49.     ***Order Governs***.  In the event of any inconsistency between the provisions of the Motion, the Interim Order, this Order, and/or the DIP Documents, the provisions of this Order shall govern.

50.     ***Effectiveness***.  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

51.     No later than two (2) business days after entry of this Order, the Debtors shall

serve a copy of this Order and shall file a certificate of service no later than twenty-four (24)

hours after service.

DATED:  August 20, 2020
St. Louis, Missouri                                          Barry S. Schermer
cke                                                          United States Bankruptcy Judge

WEIL:\97593850\3\30180.0004

**Order Prepared By:**

Robert E. Eggmann, #37374MO
Christopher J. Lawhorn, #45713MO
Thomas H. Riske, #61838MO
**CARMODY MACDONALD P.C.**
120 S. Central Avenue, Suite 1800
St. Louis, Missouri  63105
Telephone:  (314) 854-8600
Facsimile: (314) 854-8660
Email: ree@carmodymacdonald.com
        cjl@carmodymacdonald.com
        thr@carmodymacdonald.com

*Local Counsel to the Debtors and
Debtors in Possession*

-and-

Ronit J. Berkovich (*pro hac vice*)
Debora A. Hoehne (*pro hac vice*)
Martha E. Martir (*pro hac vice*)
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email: Ronit.Berkovich@weil.com
        Debora.Hoehne@weil.com
        Martha.Martir@weil.com

*Counsel to the Debtors and
Debtors in Possession*

WEIL:\97593850\3\30180.0004