# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

------------------------------------------------------------ x

|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11** |
|  | : |  |
| **BRIGGS & STRATTON** | : | **Case No. 20–43597-399** |
| **CORPORATION**, *et al.*, | : |  |
|  | : | **(Jointly Administered)** |
| **Debtors.** | : |  |
|  | : | **Obj. Deadline: March 31, 2021 at 4:00 p.m. (CT)** |
|  | : | **Hearing Date: April 14, 2021 at 9:00 a.m. (CT)** |
|  | : | **Hearing Location: Courtroom 5 North** |

------------------------------------------------------------ x

## SUMMARY SHEET OF SECOND INTERIM AND FINAL FEE APPLICATION OF WEIL, GOTSHAL & MANGES LLP FOR ALLOWANCE AND PAYMENT OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL TO THE DEBTORS FOR THE PERIOD JULY 20, 2020 THROUGH JANUARY 6, 2021

| | |
|---|---|
| Name of Applicant: | Weil, Gotshal & Manges LLP |
| Authorized to Provide Professional Services to: | Debtors and Debtors in Possession |
| Date of Retention: | August 19, 2020 (provisionally retained as of July 20, 2020) |
| **Second Interim Compensation Period** | |
| Period for which Compensation and Expense Reimbursement are Sought in this Application: | November 1, 2020 through January 6, 2021 |
| Total Amount of Compensation and Expense Reimbursement Sought to be Allowed in this Application: | $2,690,368.77 |
| Total Amount of Compensation Sought to be Allowed in this Application: | $2,682,719.00[1] |
| Total Amount of Expense Reimbursement Sought to be Allowed in this Application: | $7,649.77 |
| **Final Compensation Period** | |

---

[1]     Due to an inadvertent error in a previous monthly fee statement sent to the Debtors, Weil billed for an associate's time at an incorrect hourly rate resulting in an overcharge of $15,404.00 in fees. Accordingly, Weil provided the Debtors a credit by decreasing its fees sought by this same amount in its Sixth Monthly Fee Statement. Instead of $1,369,328.50 in monthly fees incurred in December, Weil has sought reimbursement for $1,353,924.50.

| | |
|---|---|
| Period for which Compensation and Expense Reimbursement are Sought in this Application: | July 20, 2020 through January 6, 2021 |
| Total Amount of Compensation and Expense Reimbursement Sought to be Allowed in this Application: | $11,234,545.09 |
| Total Amount of Compensation Sought to be Allowed in this Application: | $11,220,438.50 |
| Total Amount of Expense Reimbursement Sought to be Allowed in this Application: | $14,106.59 |
| **Other Information** ||
| Compensation Sought in this Application and Already Paid But Not Yet Allowed: | $2,146,175.20 |
| Expense Reimbursement Sought in this Application and Already Paid But Not Yet Allowed: | $7,649.77 |
| Blended Rate in this Application for Attorneys: | $946.19 |
| Blended Rate in this Application for All Paraprofessionals: | $345.21 |
| Blended Rate in this Application for All Timekeepers: | $919.89 |
| Number of Professionals Included in this Application: | 77 |
| Number of Professionals Billing Fewer than 15 Hours to the Case During this Period: | 21 |
| Are Any Rates Higher than those Approved or Disclosed at Retention? If yes, Calculate the Amount of Compensation Attributable to Any Rate Increase: | Yes.  The amount of compensation attributable to the rate increase effective as of January 1, 2021 is $5,400. |
| This is a(n):___ monthly __X__ interim __X__ final application ||

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

-------------------------------------------------------- x
: 
**In re**                                      :        **Chapter 11**
: 
**BRIGGS & STRATTON**            :        **Case No. 20–43597-399**
**CORPORATION, *et al.*,**            :
:        **(Jointly Administered)**
        **Debtors.**                        :
:        Obj. Deadline: March 31, 2021 at 4:00 p.m. (CT)
:        Hearing Date: April 14, 2021 at 9:00 a.m. (CT)
:        Hearing Location: Courtroom 5 North
-------------------------------------------------------- x

**SECOND INTERIM AND FINAL FEE APPLICATION OF**
**WEIL, GOTSHAL & MANGES LLP FOR ALLOWANCE AND**
**PAYMENT OF COMPENSATION FOR PROFESSIONAL SERVICES**
**RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED AS COUNSEL**
**TO THE DEBTORS FOR THE PERIOD JULY 20, 2020 THROUGH JANUARY 6, 2021**

Weil, Gotshal & Manges LLP ("**Weil**")[1] hereby submits its *Second Interim and Final Fee*

*Application for Allowance and Payment of Compensation for Professional Services Rendered and*

*Reimbursement of Expenses Incurred as Counsel to the Debtors for the Period from July 20, 2020*

*through January 6, 2021* (the "**Application**"), pursuant to sections 330(a) and 331 of title 11 of

the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), Rules 2016-1 and 2016-2 of the Local Rules of Bankruptcy

Procedure for the Eastern District of Missouri (the "**Local Rules**"), and the Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, Effective as of November 1, 2013 (the

"**Fee Guidelines**"), for entry of an order for final allowance of compensation in the amount of

$11,220,438.50 for professional services performed for the above-captioned debtors (the

---

[1]      Capitalized terms used in this Application, but not defined herein, shall have the meanings ascribed to such
terms in the Second Amended Plan or the Confirmation Order (each as defined below), as applicable.

"**Debtors**") and reimbursement of actual and necessary expenses incurred in the amount of $14,106.59 inclusive of (i) fees in the amount of $8,537,719.50 and expenses incurred in the amount of $6,456.82 during the period commencing July 20, 2020 through October 31, 2020 (the "**First Interim Compensation Period**") and (ii) fees in the amount of $2,682,719.00 and expenses incurred in the amount of $7,649.77 during the period commencing November 1, 2020 through January 6, 2021 (the "**Second Interim Compensation Period**" and, together with the First Interim Compensation Period, the "**Final Compensation Period**").   In support of this Application, Weil respectfully represents as follows:

## Preliminary Statement

1.      On December 18, 2020, the Court entered an order [Docket No. 1485] (the "**Confirmation Order**") confirming the *Second Amended Joint Chapter 11 Plan of Briggs & Stratton Corporation and Its Affiliated Debtors* [Docket No. 1434] (the "**Second Amended Plan**").  The Second Amended Plan became effective on January 6, 2021 [Docket No. 1538.  In accordance with the Second Amended Plan, and the Confirmation Order, this Application seeks approval of compensation and reimbursement of amounts incurred by Weil as counsel to the Debtors for the Second Interim Compensation Period and the Final Compensation Period.

2.      The Debtors' chapter 11 cases have been complex and demanding – comprised of a robust sale process in the middle of a global pandemic, hard-fought negotiations with key stakeholders culminating in the Global Settlement,[2] and an incredibly successful and primarily consensual chapter 11 plan process.  Weil's guidance and leadership at each stage of these chapter 11 cases were critical to effectuating the Sale Transaction (as defined below), preserving jobs,

---

[2]      As defined in the *Order (I) Authorizing the Sale of the Asserts and Equity Interests to the Purchaser Free and Clear of Liens, Claims, Interests, and Encumbrances; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 898] (the "**Sale Order**").

confirming the Second Amended Plan, and maximizing value for creditors, all in a timeframe of just over five months.

3.      The Debtors commenced these chapter 11 cases with a stalking horse bid from the Purchaser (as defined below) after a robust, months-long marketing process conducted by the Debtors and their advisors in pursuit of the most beneficial solution for the Debtors' stakeholders. With the assistance of the Debtors' other professional advisors, Weil secured a guaranteed purchase price of $550 million (subject to adjustment) plus assumed liabilities for the Debtors' business on a going concern basis.

4.      Following the commencement of these chapter 11 cases, Weil engaged in extensive negotiations and participated in contested evidentiary hearings to secure debtor-in-possession financing for the Debtors on a final basis.  The evidentiary hearings required significant preparation for in-court testimony.  If not for Weil's significant efforts, the Debtors would not have been able to access the necessary liquidity to manage their operations on a continuing basis and achieve the going concern Sale Transaction (as defined below).

5.      Weil also expended extensive and continuous efforts in establishing the Debtors' Bidding Procedures (as defined below).  Winning court approval for the Bidding Procedures (as defined below) over the objections filed by various parties (including the Ad Hoc Group[3] and the Creditors' Committee) and on an abbreviated timetable required intensive, virtually around-the-clock efforts from Weil's attorneys.  Although the Debtors did not receive a higher or better bid than the stalking horse bid, the Debtors still achieved a substantial purchase price for their assets

---

[3]      As defined in the *Preliminary Objection of Ad Hoc Group of Senior Noteholders to Motion of Debtors for Entry of an Order (I) Approving (A) Bidding Procedures, (B) Designation of Stalking Horse Bidder and Stalking Horse Bid Protections, (C) Scheduling Auction and Sale Hearing, (D) Form and Manner of Notice of Sale, Auction, and Hearing, and (E) Assumption and Assignment Procedures; (II) Authorizing (A) Sale of Debtors' Assets and Equity Interest Free and Clear of Liens, Claims, Interests, and Encumbrances and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 300].

on a going concern basis, allowing the Debtors to maximize recoveries for all creditors, while also preserving jobs.

6.      In the weeks leading to the hearing to approve the Sale Transaction (as defined below), Weil led extensive negotiations on behalf of the Debtors with the Creditors' Committee (as defined below), the Pension Guaranty Benefit Corporation (the "**PBGC**"), the DIP Agent[4] and DIP Lenders,[5] and the Purchaser (as defined below), which culminated in the Global Settlement. As the Court is aware, the Global Settlement ensured the support of the Debtors' key stakeholders for the Sale Transaction (as defined below) and throughout the balance of these chapter 11 cases – indeed, only a small group of creditors objected to the *Amended Disclosure Statement for Amended Joint Chapter 11 Plan of Briggs & Stratton Corporation and Its Affiliated Debtors* [Docket No. 1227] (the "**Amended Disclosure Statement**"), and only four (4) objections to the Second Amended Plan were filed by creditors, all of which were resolved consensually prior to the confirmation hearing on December 18, 2020.  The remaining objections were filed by the United States Trustee and the United States Securities and Exchange Commission.

7.      The professional services performed and expenses incurred by Weil were actual and necessary to preserve and protect the value of the Debtors' estates.  Weil assisted the Debtors in achieving a going-concern, value-maximizing Sale Transaction (as defined below) and obtaining approval of a consensual chapter 11 plan, which set the Debtors up for an efficient and equitable process of winding down the Debtors' remaining assets and distributing the proceeds to creditors.  Given the circumstances of these chapter 11 cases, the efficiency with which they were administered, and the successful outcome for the Debtors and their stakeholders, Weil's charges

---

[4]      As defined in the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Liens and Superpriority Claims, (IV) Granting Adequate Protection to Prepetition Secured Parties, and (V) Modifying Automatic Stay* [Docket No. 526] (the "**Final DIP Order**").

[5]      As defined in the Final DIP Order.

for professional services performed and expenses incurred are reasonable and appropriate under the applicable standards. Weil respectfully requests that the Court grant the Application.

### Jurisdiction

8.     The United States Bankruptcy Court for the Eastern District of Missouri (the "**Court**") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157, 1334 and Local Rule 1001 (D).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

9.     On July 20, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015(b) of the Local Rules.

10.     On August 5, 2020, the United States Trustee appointed an official committee of unsecured creditors (the "**Creditors' Committee**") in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

11.     On the Petition Date, the Debtors filed their Bidding Procedures Motion.[6]   On August 19, 2020, the Court entered the Bidding Procedures Order,[7] which, among other things, (a) approved bidding procedures in connection with the sale of the Debtors' assets, (b) approved the designation of a stalking horse bidder and stalking horse bid, (c) scheduled an auction to take place on September 1, 2020, and (d) scheduled a sale hearing for September 15, 2020.   On September 15, 2020, the Court entered the Sale Order authorizing the Debtors to sell substantially all of their assets (the "**Sale Transaction**") to Bucephalus Buyer, LLC (the "**Purchaser**").   On September 21, 2020, the Debtors closed the Sale Transaction.[8]

12.     Following the successful sale of substantially all of their assets, the Debtors focused their efforts and resources on developing and filing a workable and confirmable chapter 11 plan of liquidation supported by the Creditors' Committee.   On October 9, 2020, the Debtors filed the *Joint Chapter 11 Plan of Briggs & Stratton Corporation and Its Affiliated Debtors* [Docket No. 1066] and the *Disclosure Statement for Joint Chapter 11 Plan of Briggs & Stratton Corporation and Its Affiliated Debtors* [Docket No. 1067] (together with the Amended Disclosure Statement, the "**Disclosure Statement**").   On November 9, 2020, the Debtors filed the *Amended Joint Chapter 11 Plan of Briggs & Stratton Corporation and Its Affiliated Debtors* (the "**Amended Plan**" and, together with the Second Amended Plan, the "**Plan**") [Docket No. 1226] and the Amended

---

[6]     *Motion of Debtors for Entry of an Order (I) Approving (A) Bidding Procedures, (B) Designation of Stalking Horse Bidder and Stalking Horse Bid Protections, (C) Scheduling Auction and Sale Hearing, (D) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (E) Assumption and Assignment Procedures; (II) Authorizing (A) Sale of Debtors' Asserts and Equity Interests Free and Clear of Liens Claims, Interests, and Encumbrances and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 53] (the "**Bidding Procedures Motion**").

[7]     *Order (I) Approving (A) Bidding Procedures, (B) Designation of Stalking Horse Bidder and Stalking Horse Bid Protections, (C) Scheduling Auction and Sale Hearing, (D) Form and Manner of Notice of Sale, Auction, and Sale Hearing, and (E) Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment and (II) Granting Related Relief* (Docket No. 505) (the "**Bidding Procedures Order**").

[8]     *See Notice of (I) Filing of Amendment to Stock and Asset Purchase Agreement, And (II) the Occurrence of Closing of the Sale Transaction* [Docket No. 964].

Disclosure Statement.  On November 10, 2020, the Court entered an order approving the Amended

Disclosure Statement and scheduled the hearing for confirmation of the Amended Plan for

December 18, 2020.[9]  On December 16, 2020, the Debtors filed the Second Amended Plan [Docket

No. 1434].

13.     On December 18, 2020, the Court entered the Confirmation Order confirming the

Second Amended Plan [Docket No. 1485].  The effective date of the Second Amended Plan (the

"**Effective Date**") occurred on January 6, 2021 [Docket No. 1538].  On the Effective Date, Alan

D. Halperin was appointed as Plan Administrator[10] to implement the Plan and effectuate the

winding down of the Debtors' estates.

14.     Additional information regarding the Debtors' business and capital structure and

the circumstances leading to the commencement of these chapter 11 cases is set forth in the (i)

*Declaration of Jeffrey Ficks, Financial Advisor of Briggs & Stratton Corporation, in Support of*

*the Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 51] and (ii) the Amended

Disclosure Statement.

## The Debtors' Retention of Weil

15.     On July 20, 2020, Weil filed the *Application of Debtors Pursuant to 11 U.S.C. §*

*327(a) Fed. R. Bankr. P. 2014(a) and 2016, and Local Rules 2014 and 2016-1 for Authority to*

*Retain and Employ Weil, Gotshal & Manges LLP as Attorneys for the Debtors Effective as of the*

*Petition Date* [Docket No. 28] (the "**Retention Application**").  The Court approved the Retention

Application on a provisional basis on July 20, 2020 [Docket No. 73] and on a final basis by Order

---

[9]     *See Order (I) Approving Disclosure Statement; (II) Establishing Notice and Objection Procedures for*
*Confirmation of Plan; (III) Approving Solicitation Packages and Procedures for Distribution Thereof;*
*(IV) Approving the Form of Ballots and Establishing Procedures for Voting on the Plan; and (V) Granting*
*Related Relief* [Docket No. 1233].

[10]    As defined in the Second Amended Plan.

dated August 19, 2020 [Docket No. 511] (the "**Retention Order**").   The Retention Order

authorizes the Debtors to compensate and reimburse Weil in accordance with the Bankruptcy

Code, the Bankruptcy Rules, and the Fee Guidelines.   The Retention Order also authorizes the

Debtors to compensate Weil for services rendered and to reimburse Weil for its reasonable and

necessary expenses incurred at Weil's normal hourly rates and disbursement policies, subject to

application to this Court.   The Retention Order authorizes Weil to, among other things:

   a.   prepare on behalf of the Debtors, as debtors in possession, all necessary
        motions, applications, answers, orders, reports and other papers in
        connection with the administration of the Debtors' estates;

   b.   take all necessary actions in connection with any chapter 11 plan and related
        disclosure statement and all related documents, and such further actions as
        may be required in connection with the administration of the Debtors'
        estates;

   c.   take all necessary action to protect and preserve the Debtors' estates,
        including the prosecution of actions on the Debtors' behalf, the defense of
        any actions commenced against the Debtors, the negotiation of disputes in
        which the Debtors are involved, and the preparation of objections to claims
        filed against the Debtors' estates; and

   d.   perform all other necessary legal services in connection with the
        prosecution of these chapter 11 cases; provided, however, that to the extent
        Weil determines that such services fall outside of the scope of services
        historically or generally performed by Weil as lead debtors' counsel in a
        bankruptcy case, Weil will file a supplemental declaration.

### Summary of Professional Compensation
### and Reimbursement of Expenses Requested

16.    On September 25, 2020, Weil submitted its first monthly fee statement (the "**First

Monthly Fee Statement**") seeking (i) interim allowance of Weil's compensation for professional

services rendered in the amount of $1,246,859.70 for the total amount of fees and actual and

necessary expenses incurred on behalf of the Debtors for the period of July 20, 2020 through and

including July 31, 2020; (ii) payment in the amount of $997,062.00, which is equal to 80% of the

total compensation ($1,246,327.50) sought for professional services rendered to the Debtors

during the period; and (iii) reimbursement for expenses incurred in connection with the rendition of such services in the amount of $532.20.  No objections were received with respect to the First Monthly Fee Statement.

17.  On October 7, 2020, Weil submitted its second monthly fee statement (the "**Second Monthly Fee Statement**") seeking (i) interim allowance of Weil's compensation for professional services rendered in the amount of $3,077,463.50 for the total amount of fees and actual and necessary expenses incurred on behalf of the Debtors for the period of August 1, 2020 through and including August 31, 2020; (ii) payment in the amount of $2,460,321.60, which is equal to 80% of the total compensation ($3,075,402.00) sought for professional services rendered to the Debtors during the period; and (iii) reimbursement for expenses incurred in connection with the rendition of such services in the amount of $2,061.05.  No objections were received with respect to the Second Monthly Fee Statement.

18.  On November 12, 2020, Weil submitted its third monthly fee statement (the "**Third Monthly Fee Statement**") seeking (i) interim allowance of Weil's compensation for professional services rendered in the amount of $2,854,229.50 for the total amount of fees and actual and necessary expenses incurred on behalf of the Debtors for the period of September 1, 2020 through and including September 30, 2020; (ii) payment in the amount of $2,282,977.20, which is equal to 80% of the total compensation ($2,853,721.50) sought for professional services rendered to the Debtors during the period; and (iii) reimbursement for expenses incurred in connection with the rendition of such services in the amount of $508.00.  No objections were received with respect to the Third Monthly Fee Statement.

19.  On December 1, 2020, Weil submitted its fourth monthly fee statement (the "**Fourth Monthly Fee Statement**") seeking (i) interim allowance of Weil's compensation for professional services rendered in the amount of $1,365,624.07 for the total amount of fees and actual and necessary expenses incurred on behalf of the Debtors for the period of October 1, 2020

through and including October 31, 2020; (ii) payment in the amount of $1,089,814.80, which is equal to 80% of the total compensation ($1,362,268.50) sought for professional services rendered to the Debtors during the period; and (iii) reimbursement for expenses incurred in connection with the rendition of such services in the amount of $3,355.57. No objections were received with respect to the Fourth Monthly Fee Statement.

20.     On December 18, 2020, Weil submitted its first interim fee application (the "**First Interim Fee Application**") seeking interim allowance of $8,537,719.50 in compensation for professional services rendered and $6,456.82 in reimbursement for actual and necessary expenses incurred on behalf of the Debtors during the First Interim Compensation Period, which covered the period commencing July 20, 2020 through October 31, 2020. No objections were received with respect to the First Interim Fee Application. The Court entered an order approving the First Interim Fee Application on January 22, 2021 [Docket No. 1586].

21.     On January 5, 2021, Weil submitted its fifth monthly fee statement (the "**Fifth Monthly Fee Statement**") seeking (i) interim allowance of Weil's compensation for professional services rendered in the amount of $1,243,111.58 for the total amount of fees and actual and necessary expenses incurred on behalf of the Debtors for the period of November 1, 2020 through and including November 30, 2020; (ii) payment in the amount of $990,820.40, which is equal to 80% of the total compensation ($1,238,525.50) sought for professional services rendered to the Debtors during the period; and (iii) reimbursement for expenses incurred in connection with the rendition of such services in the amount of $4,586.08. No objections were received with respect to the Fifth Monthly Fee Statement. Weil's fees and expenses from the Fifth Monthly Fee Statement are annexed hereto as **Exhibit I**.

22.     On February 2, 2021, Weil submitted its sixth monthly fee statement (the "**Sixth Monthly Fee Statement**") seeking (i) interim allowance of Weil's compensation for professional services rendered in the amount of $1,354,902.24 for the total amount of fees and actual and

necessary expenses incurred on behalf of the Debtors for the period of December 1, 2020 through and including December 31, 2020; (ii) payment in the amount of $1,083,139.60, which is equal to 80% of the total compensation ($1,353,924.50) sought for professional services rendered to the Debtors during the period; and (iii) reimbursement for expenses incurred in connection with the rendition of such services in the amount of $977.74.  No objections were received with respect to the Sixth Monthly Fee Statement.  Weil's fees and expenses from the Sixth Monthly Fee Statement are annexed hereto as **Exhibit J**.

23.     On February 17, 2021, Weil submitted its seventh monthly fee statement (the "**Seventh Monthly Fee Statement**") seeking (i) interim allowance of Weil's compensation for professional services rendered in the amount of $92,354.95 for the total amount of fees and actual and necessary expenses incurred on behalf of the Debtors for the period of January 1, 2021 through and including January 6, 2021; (ii) payment in the amount of $72,215.20, which is equal to 80% of the total compensation ($90,269.00) sought for professional services rendered to the Debtors during the period; and (iii) reimbursement for expenses incurred in connection with the rendition of such services in the amount of $2,085.95.  No objections were received with respect to the Seventh Monthly Fee Statement.  Weil's fees and expenses from the Seventh Monthly Fee Statement are annexed hereto as **Exhibit K**.

24.     Weil seeks allowance of compensation for professional services performed during the Second Interim Compensation Period (covering the period commencing November 1, 2020 through January 6, 2021) in the amount of $2,682,719.00 and during the Final Compensation Period in the amount of $11,220,438.50.  Weil also seeks reimbursement of expenses incurred in connection with the rendition of such services in the Second Interim Compensation Period in the amount of $7,649.77 and during the Final Compensation Period in the amount of $14,106.59. During the Second Interim Compensation Period, Weil attorneys and paraprofessionals expended a total of 2,980.50 hours in connection with the necessary services performed.  During the Final

Compensation Period, Weil attorneys, paraprofessionals and other non-legal staff expended a total of 12,197.60 hours in connection with the necessary services performed.

25.     There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these chapter 11 cases.  During the Final Compensation Period, Weil received no payment or promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.

26.     Prior to the Petition Date, the Debtors paid Weil certain amounts as fee advances for professional services to be performed and expenses to be incurred in connection with its representation of the Debtors and in preparation of the Debtors seeking relief under chapter 11. Based on a reconciliation of all charges and expenses through the date of this Application, the balance of the advances as of the date of this Application is $0.00.  Pursuant to the Retention Order, Weil applied the entirety of its prepetition advances against the first monthly invoice.

27.     The fees charged by Weil in these cases are billed in accordance with Weil's existing billing rates and procedures in effect during the applicable compensation periods.  The rates Weil charges for the services rendered by its professionals and paraprofessionals in these chapter 11 cases generally are the same rates Weil charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

### **Supporting Documents**

28.     Attached hereto as **Exhibit A** is the Declaration of Ronit J. Berkovich regarding Weil's compliance with the Fee Guidelines.

29.     Attached hereto as **<u>Exhibit B</u>** is a summary of Weil's monthly fee statements during the Final Compensation Period.

30.     Attached hereto as **<u>Exhibit C</u>** is a schedule of all Weil attorneys, paraprofessionals and other non-legal staff who have performed services for the Debtors during the Second Interim Compensation Period and the Final Compensation Period, respectively, the capacities in which each individual is employed by Weil, the department in which each individual practices, the hourly billing rate charged by Weil for services performed by such individuals, the year in which each attorney was first licensed to practice law, where applicable, and the aggregate number of hours expended in this matter and fees billed in connection therewith.

31.     Weil maintains computerized records of the time spent by all Weil attorneys and paraprofessionals in connection with the prosecution of these chapter 11 cases.  Attached hereto as **<u>Exhibit D</u>** is a schedule of Weil's computerized time records billed during the Second Interim Compensation Period using project categories hereinafter described in the format specified by the Fee Guidelines.

32.     Attached hereto as **<u>Exhibit E</u>** is an itemized schedule of the expenses during the Second Interim Compensation Period and the Final Compensation Period, respectively, for which Weil is seeking reimbursement and a summary specifying the categories of expenses included in the schedule and the total amount for each such expense category.

33.     Attached hereto as **<u>Exhibit F</u>** is a summary and comparison of the aggregate blended hourly rates billed by Weil's domestic offices timekeepers to non-bankruptcy matters during the prior twelve-month period ending January 31, 2021, and the blended hourly rates billed to the Debtors during the Second Interim Compensation Period.

34.     Attached hereto as **<u>Exhibit G</u>** is a budget prepared in connection with Weil's representation of the Debtors during the Second Interim Compensation Period.

35.     Attached hereto as **Exhibit H** is a summary of Weil's staffing plan for the Second Interim Compensation Period.

36.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Second Interim Compensation Period and the Final Compensation Period, but were not processed prior to the preparation of this Application, Weil reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application to the Court.

**Summary of Services Performed by
Weil During the Second Interim Compensation Period**

37.     During the Second Interim Compensation Period, Weil devoted substantial resources and rendered significant professional services to negotiate, draft, and confirm a chapter 11 plan.  The following is a summary of the significant professional services rendered by Weil during the Second Interim Compensation Period, organized in accordance with Weil's internal time-tracking system, and broken down by project or task codes:

a.      <u>Administrative Expense Claims (Task Code 001)</u>
        Fees:  $93,700.00; Total Hours:  100.50

- Reviewed applications for payment of administrative expense claims and drafted responses and objections thereto.

- Communicated and negotiated with claimants' counsel to resolve applications for payment of administrative expense claims.

- Drafted, revised, and finalized stipulations resolving applications for payment of administrative expense claims.

b.      <u>Asset Disposition/363 Asset Sales (Task Code 003)</u>
        Fees:  $49,785.50; Total Hours:  52.30

- Attend to numerous post-closing issues arising from the Sale Transaction, including working capital adjustment, organizational document amendments, accounts receivable allocation, and severance adjustment.

- Obtained approval of a motion to establish procedures for *de minimis* asset sales and purchases,[11] and advised the Debtors with respect to the sale of certain *de minimis* assets pursuant to such procedures, including filing notices with respect to the same.

c.    <u>Automatic Stay (Task Code 004)</u>
       Fees:  $96,407.50; Total Hours:  95.80

- Reviewed and analyzed motions to lift the automatic stay.

- Drafted, revised, and finalized objections to motions for relief from the automatic stay.

- Conferred with counsel for moving parties to negotiate stipulations in resolution of the motions to lift the automatic stay.

- Drafted, revised, and finalized stipulations resolving motions to lift the automatic stay.

- Reviewed and revised proposed order lifting the automatic stay.

d.    <u>Bar Date Motion and Claims Issues (Task Code 005)</u>
       Fees:  $191,044.50; Total Hours:  219.50

- Conferred with the Debtors and their advisors on the claims process and related matters, and advised the Debtors in connection therewith.

- Analyzed filed claims, conferred with the Debtors and the Debtors' advisors regarding the claims reconciliation process, and advised the Debtors in connection therewith.

- Negotiated with counsel to various parties that filed proofs of claim to resolve such claims.

- Drafted, revised, and finalized fourteen objections to claims on grounds of wrong debtor, amended or superseded claims, and no liability.[12]

---

[11]    *Motion of Debtors for Order (I) Authorizing Use, Sale, or Lease of Certain Property of the Estate, (II) Establishing Procedures for De Minimis Asset Sales, and (III) Granting Related Relief* [Docket No. 1124].

[12]    *See* Docket Nos. 1265 – 1278.

15

e.   Case Administration (Task Code 006)
Fees: $47,110.00; Total Hours: 71.60

- Prepared and maintained case calendars and comprehensive work-in-process list for use by the Debtors, the Debtors' other professionals, and the Weil team.

- Reviewed newly filed pleadings on the docket and summarized same for the Weil team and the Debtors.

f.   Chapter 11 Plan/Confirmation/Implementation/Plan Supplement (Task Code 007)
Fees: $875,332.50; Total Hours: 977.80

- Drafted, revised, and finalized the Plan and the information and documents to be included in the supplement to the Plan ("the **Plan Supplement**").[13]

- Coordinated with the Debtors, the Debtors' other advisors, and various Weil practice groups regarding amendments to the Plan and the Plan Supplement.

- Reviewed various formal and informal objection to the Plan, and conferred with counsel for objecting parties to resolve the same.

- Conducted research regarding various potential chapter 11 issues in connection with the Second Amended Plan, including issues relating to the confirmation and implementation of the Second Amended Plan.

- Drafted, revised, and finalized the *Memorandum of Law in Support of Confirmation of Second Amended Joint Chapter 11 Plan of Briggs & Stratton Corporation and Its Affiliated Debtors and Response to Objections to Confirmation* [Docket No. 1445] and related filings in support of confirmation.

- Drafted, revised, and finalized several documents, including the proposed Confirmation Order, in preparation for the confirmation hearing on the Second Amended Plan and the Debtors' emergence from chapter 11.

- Advised the Debtors, in consultation and coordination with the Debtors' other advisors, Weil practice groups, and the Plan Administrator and his counsel, regarding the implementation of the Second Amended Plan.

---

[13]   *Notice of Filing of Plan Supplement in Connection with Amended Joint Chapter 11 Plan of Briggs & Stratton Corporation and Its Affiliated Debtors* [Docket No. 1369]

- Conferred with and prepared reference materials for the Plan Administrator to facilitate the transition of post-Effective Date work streams.

g.    Corporate Governance/Securities (Task Code 008)
Fees: $92,546.00; Total Hours: 86.30

- Drafted, revised, and filed form filings with the Securities and Exchange Commission, including form 4, 8-K, S-8, and 15 filings, to provide update on bankruptcy related events, and conducted research regarding the same.

- Drafted, revised, and finalized materials in preparation for meetings of the Debtors' board of directors and participated in the same.

- Prepared response to inquiry from the Financial Industry Regulatory Authority regarding the Plan.

h.    Customer/Vendor Issues and Reclamation/503(b)(9) Claims (Task Code 009)
Fees: $10,048.50; Total Hours: 10.10

- Attended to various vendor-related matters, including corresponding with vendors regarding the status of their claims and providing matrices of critical vendor payments to certain parties in interest pursuant to the Critical Vendor Order.[14]

i.    DIP Financing/Cash Management (Task Code 010)
Fees: $17,873.00; Total Hours: 19.80

- Conferred with the Debtors regarding their cash management system and advised the Debtors in connection therewith.

- Reviewed payoff documents in connection with the termination of debtor-in-possession financing and the release of liens.

j.    Disclosure Statement/Solicitation/Voting (Task Code 011)
Fees: $195,386.00; Total Hours: 217.20

- Drafted, negotiated, revised, and finalized the Disclosure Statement.

- Reviewed various formal and informal objection to the Disclosure Statement, conducted research in connection therewith, and conferred with counsel for objecting parties to resolve the same.

---

[14]    *Final Order (I) Authorizing Debtors to Pay Prepetition Obligations in the Ordinary Course of Business to (A) Critical Vendors, (B) Foreign Creditors, and (C) 503(b)(9) Claimants; and (II) Granting Related Relief* [Docket No. 534] (the "**Critical Vendor Order**").

- Drafted, revised, and finalized the *Debtors' Omnibus Reply to Objections to Debtors' Motion for Approval of Disclosure Statement and Related Relief* [Docket No. 1213] and related filings in support of approval.

- Drafted, revised, and finalized *Order (I) Approving Disclosure Statement; (II) Establishing Notice and Objection Procedures for Confirmation of Plan; (III) Approving Solicitation Packages and Procedures for Distribution Thereof; (IV) Approving the Form of Ballots and Establishing Procedures for Voting on the Plan; and (V) Granting Related Relief* [Docket No. 1233].

- Prepared for solicitation of the Plan, drafted materials necessary for solicitation, and managed solicitation process.

- Communicated with the Debtors' claims and voting agent regarding the voting process, publication of solicitation and voting, and the Voting Declaration.[15]

k. <u>Employee Issues (Task Code 012)</u>
   Fees:  $156,559.00; Total Hours:  150.10

- Conferred with the Debtors, the Debtors' other advisors, and Weil practice groups regarding various employee matters, including deferred compensation, pensions, life insurance, severance, workers' compensation, employee claims, employment tax deferrals, and advised the Debtors in connection therewith.

- Reviewed claims filed by the PBGC and conferred with the Debtors and their advisors to analyze the same.

- Reviewed claims filed by employees, and drafted a memorandum to filers of employee equity claims.

- Coordinated and negotiated with workers' compensation boards from various states on the administration of workers' compensation claims, and prepared stipulations addressing security payments regarding the same.

l. <u>Executory Contracts/Leases/ (Non-Real Property Issues) (Task Code 014)</u>
   Fees:  $189,603.50; Total Hours:  204.30

- Conferred with Debtors and their advisors regarding executory contracts and leases and strategy for the assumption and assignment of same.

---

[15]     *Declaration of Angela M. Nguyen with Respect to the Tabulation of Votes on the Amended Joint Chapter 11 Plan of Briggs & Stratton and its Affiliated Debtors* [Docket No. 1410] (the "**Voting Declaration**").

- Coordinated a list of contracts to be assumed and assigned with the Debtors and the Debtors' advisors and reconciled the cure costs of the same.

- Drafted, revised, and finalized notices of contracts to be assumed and assigned, and negotiated with counsel to various contract counterparties to resolve any objections thereto.

- Reviewed and revised amendments to contracts the Debtors held with various parties in relation to the assumption and assignment of such contracts.

- Updated exhibits to motion to reject certain executory contracts.[16]

m. <u>General Case Strategy (including Client/Team calls) (Task Code 015)</u>
Fees: $119,820.50; Total Hours: 120.80

- Conferred with the Debtors and their advisors regarding case strategy, pending and upcoming matters, filings, key dates, and deadlines and advised the Debtors in connection therewith.

- Conducted internal Weil team calls and meetings to discuss case strategy and case progress.

n. <u>Hearing and Court Matters (Task Code 016)</u>
Fees: $67,924.50; Total Hours: 79.20

- Prepared for and represented the Debtors at hearings, including the disclosure statement hearing, the confirmation hearing, and various omnibus hearings.

- Conferred and coordinated with the Debtors and their advisors in preparation for various hearings regarding related matters and advised the Debtors in connection therewith.

o. <u>Insurance Issues (Task Code 017)</u>
Fees: $144,425.50; Total Hours: 159.60

- Conferred with the Debtors and their advisors regarding various insurance matters, including surrender of life insurance policies, and advised the Debtors in connection therewith.

---

[16] *Notice of Filing of Updated Exhibit to Debtors' Motion for Order (I) Authorizing (A) Rejection of Certain Executory Contracts and Unexpired Leases and (B) Abandonment of Property in Connection Therewith; and (II) Granting Related Relief* [Docket No. 1287].

- Drafted, revised, and finalized *Motion of Debtors for Order (I) Authorizing Debtors to Surrender Life Insurance Policies and (II) Granting Related Relief* [Docket No. 1338].

p.    Non-Bankruptcy Litigation (Task Code 018)
      Fees: $58,129.00; Total Hours: 58.00

- Conferred with the Debtors and their advisors regarding various outstanding and potential litigations, including the Exmark Litigation,[17] and advised the Debtors in connection therewith.

- Drafted, revised, and finalized *Motion of Debtors for Order Authorizing and Approving Settlement Between Exmark Manufacturing Company, Inc. and Debtor Briggs & Stratton Corporation* [Docket No. 1316].

- Negotiated and revised the proposed order authorizing and approving the settlement with Exmark Manufacturing Co., Inc.

- Revised and finalized a memorandum in connection with internal investigation of potential claims of the estate.

q.    Real Property Leases/Real Estate Lease Issues (Task Code 020)
      Fees: $19,281.50; Total Hours: 22.90

- Reviewed and revised listing agreements for various real property.

- Drafted, revised, and finalized *Motion of the Debtors for Authority to Extend the Time to Assume or Reject Unexpired Lease of Nonresidential Real Property* [Docket No. 1290].

r.    Regulatory/Environmental Issues (Task Code 021)
      Fees: $12,297.00; Total Hours: 11.10

- Conferred with the Debtors and their advisors and the advisors to various stakeholders regarding certain regulatory and environmental matters related to the Debtors' marketing and sale process.

s.    Retention/Fee Application: OCPs (Task Code 022)
      Fees: $12,780.50; Total Hours: 15.50

- Drafted, revised, and finalized *Debtors' First Quarterly Statement Regarding Payments Made to Ordinary Course Professional for Services Rendered During the Period July 20, 2020 Through October 20, 2020* [Docket No. 1309].

---

[17]    As defined in the *Motion of Debtors to Lift the Automatic Stay Solely to Permit Appeals Court to Issue a Ruling in the Exmark Appeal* [Docket No. 549].

- Communicated with Ordinary Course Professionals[18] to obtain reasonable estimates of unpaid fee claims through the Effective Date.

t.   Retention/Fee Applications: Retained Professionals non Weil (Task Code 023)
     Fees: $64,601.00; Total Hours: 88.60

- Drafted, revised, and finalized retention applications for the Debtors' professionals, including Perkins Coie LLP; Kohner, Mann & Kailas, S.C.; Polsinelli PC; and CBRE Group, Inc., and conferred with the respective professionals and their counsel regarding same.

- Reviewed and summarized monthly fee statements submitted by various professionals retained by the Debtors, the Creditors' Committee, and the Debtors' lenders.

- Reviewed and coordinated the filing of the first interim fee applications of the Debtors' professionals.

- Communicated with various professionals retained by the Debtors and the Creditors' Committee to obtain reasonable estimates of unpaid fee claims through the Effective Date.

u.   Retention/Fee Application: Weil (Task Code 024)
     Fees: $81,704.50; Total Hours: 120.00

- Prepared Weil's monthly fee statements, interim fee applications, final fee application, and budget and staffing plans.

- Drafted, revised, and finalized Weil's supplemental retention declarations.

v.   Schedules/Statement of Financial Affairs/2015.3 Report (Task Code 025)
     Fees: $10,658.50; Total Hours: 14.60

- Drafted, revised, and finalized the Debtors' Amended Schedules of Assets and Liabilities (the "**Amended Schedules**") and the related notice.[19]

- Reviewed and prepared for filing the Amended Schedules, and conferred with Debtors and their advisors regarding same.

---

[18]   As defined in the *Motion for Order Authorizing Debtors and Debtors-in-Possession to Employ Professionals Used in Ordinary Course of Business* [Docket No. 208].

[19]   *See* Docket Nos. 1370 – 1373.

w.  Tax Issues (Task Code 027)
    Fees:  $81,219.00; Total Hours:  74.10

- Conferred with the Debtors and their advisors with regard to various tax issues, including transfer tax, deferred payroll tax, future sales tax refund, and conducted research in connection therewith.

- Reviewed and revised the Plan Administrator Agreement[20] with respect to tax issues and conducted related research and analysis.

x.  US Trustee/Monthly Operating Report (Task Code 030)
    Fees:  $7,693.50; Total Hours:  7.50

- Reviewed and revised monthly operating reports.[21]

38.    The professional services performed by partners, counsel, and associates of Weil were rendered by the Restructuring, Corporate, Litigation, and Tax, Benefits & Executive Compensation Departments predominantly in the New York office.  Weil has a preeminent Restructuring practice and enjoys a national reputation for its expertise in financial reorganizations and restructurings of troubled entities, with approximately 100 attorneys that specialize in this area of law.

39.    The professional services performed by Weil on behalf of the Debtors during the Second Interim Compensation Period required an aggregate expenditure of approximately 2,980.50 hours by Weil's partners, counsel, associates, and paraprofessionals.  Of the aggregate time expended, approximately 683.20 recorded hours were expended by partners and counsel of Weil, approximately 2,159.70 recorded hours were expended by associates, and approximately 137.60 recorded hours were expended by paraprofessionals of Weil.  Of the forty (40) Weil attorneys who billed time, nineteen (19) billed fewer than 15 hours to this matter.  Of the sixteen (16) Weil paraprofessionals who billed time, thirteen (13) billed fewer than 15 hours to this matter.

---

[20]    As defined in the Second Amended Plan.

[21]    *Monthly Operating Report for Briggs & Stratton Corporation, et al. for the Period September 28, 2020 Through October 25, 2020* [Docket No. 1313]; *Monthly Operating Report for Briggs & Stratton Corporation, et al. for the Period October 26, 2020 Through November 22, 2020* [Docket No. 1450].

40.      During the Second Interim Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly rates ranging from $595.00 to $1,695.00 per hour for attorneys.  Allowance of compensation in the amount requested would result in a blended hourly billing rate for Weil attorneys in this Application of approximately $927.59 (based on 2,842.90 recorded hours for attorneys at Weil's agreed billing rates in effect at the time of the performance of services).

### Actual and Necessary Disbursements of Weil

41.      Weil has disbursed $7,649.77 as expenses incurred in providing professional services during the Second Interim Compensation Period.  These expenses are reasonable and necessary and were essential to, among other things, timely respond to motions and objections filed in the Debtors' chapter 11 cases and the overall administration of the cases.

42.      With respect to black-and-white photocopying expenses, in compliance with the Fee Guidelines and Local Rule 2016-1, Weil charges all of its clients $.10 per page; for color copies, Weil charges $.50 per page.  Each of these categories of expenses does not exceed the maximum rate set by the Local Rules or the "Guidelines for Compensation" set forth in the appendix to the Procedures Manual that accompanies the Local Rules (the "**Local Guidelines**"). These charges are intended to cover Weil's direct operating costs, which costs are not incorporated into the Weil hourly billing rates.  Only clients who actually use services of the types set forth in the summary sheet are separately charged for such services.  Including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.  The amount of the standard photocopying charge is intended to allow Weil to cover the related expenses of its photocopying service.  A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

43.      On certain occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services. These disbursements are not included in Weil's overhead for the purpose of setting billing rates. Weil has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates and creditors.

## Requested Compensation Should Be Allowed

44.      Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a Court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered [and] reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)      the time spent on such services;
>
> (B)      the rates charged for such services;
>
> (C)      whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)      whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

24

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

45.     In addition to the factors set forth in section 330(a)(3) of the Bankruptcy Code, in evaluating the reasonableness of attorneys' fees, Local Rule 2016-1(B)(1) (by reference to the Local Guidelines) requires that all professional fee applications analyze the twelve factors for allowance of compensation as set forth in *Johnson v. Georgia Highway Express,* 388 F.2d 714 (5th Cir. 1974) (the "***Johnson* Factors**"); *see also P.A. Novelly v. Palans*, 960 F.2d 728 (8th Cir. 1992); *Chamberlain v. Kula,* 213 B.R. 729, 736–39 (B.A.P. 8th Cir. 1997).

46.     Weil submits that this Application satisfies section 330 of the Bankruptcy Code Section 330 and the *Johnson* Factors, as outlined below:

a.     <u>The Time and Labor Required</u>.     Weil's attorneys and paraprofessionals have expended 12,197.60 hours during the Final Compensation Period in the representation of the Debtors.  All of the time spent was necessary and appropriate for the representation of the Debtors in these cases to ensure that the Debtors maximized the value of their estates to the benefit of the Debtors' creditors.  This is especially true when considering the urgency of the tasks and issues that arose in these chapter 11 cases during the Final Compensation Period, including, among other things, drafting procedural and operational motions, finalizing the debtor-in-possession financing and the Sale Transaction, negotiating the treatment of creditors under the Plan with interested parties, and drafting the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, and other related documents to consummate the Plan.  Weil submits that the hours spent were reasonable given the size and complexity of these cases, the significant and often urgent legal and business issues raised, and the numerous pleadings filed in these cases.  All of the services performed were necessary to assist the Debtors in fulfilling their statutory duties and proceeding through these chapter 11 cases in an expeditious and efficient manner.  Weil has additionally made every effort to avoid any unnecessary duplication of time or services.

b.     <u>The Novelty and Difficulty of the Questions Involved</u>.     These chapter 11 cases involve a significant number of complex issues in the areas of restructuring, acquisitions, corporate finance, tax, insurance, and labor law.  These cases are a large and complex restructuring, involving approximately $500 million

of outstanding debt-funded obligations as of the Petition Date, significant obligations to vendors and contract counterparties, the sale of substantially all of the Debtors' assets to the Purchaser, and the confirmation of a plan of reorganization in the middle of a global pandemic. Weil's effective advocacy and creative approach helped clarify and resolve a number of complex issues as described in this Application.

        c.    <u>The Skill to Perform the Professional Services Properly</u>. Weil believes that its recognized expertise in the area of corporate reorganization, its ability to draw from highly experienced professionals in other areas of Weil's practice, and its creative approach to the resolution of issues have contributed to the successful administration of these cases and benefitted the Debtors' estates and creditors. Due to the nature and complexity of the legal issues presented in these chases, Weil was required to exhibit a high degree of legal skill in areas related to, among others, bankruptcy, litigation, tax, labor, insurance, acquisitions, and other corporate matters. Additionally, Weil's strong working relationship with the legal and financial advisors retained on behalf of the various interested parties involved in these cases enabled Weil to work with such professionals towards consensual resolutions of many of the issues that have arisen thus far in these cases. Weil respectfully submits that its professionals have provided substantial benefits to the Debtors and their estates during the Final Compensation Period.

        d.    <u>The Preclusion of Other Employment by the Professional Due to Acceptance of the Case</u>. Due to the size of Weil's restructuring department, Weil's representation of the Debtors did not preclude its acceptance of new clients.

        e.    <u>The Customary Fee</u>. The rates charged by Weil attorneys, paraprofessional, and other-non legal staff in these chapter 11 cases are the same rates charged by Weil in connection with non-bankruptcy work. The professional fee sought herein are based upon Weil's normal hourly rates for services of this kind. Weil respectfully submits that the professional fees sought herein are not unusual given the magnitude and complexity of these cases and time expended in representing the Debtors, and are commensurate with fee Weil has been awarded in other cases, as well with professional fees charged by other attorneys of comparable experience.

        f.    <u>Whether the Fee is Fixed or Contingent</u>. Weil's fees in these chapter 11 cases are based upon the hourly billing rates of Weil's attorneys and paraprofessionals. As in all bankruptcy cases, however, pursuant to sections 330 and 331 of the Bankruptcy Code, fees for professionals employed under section 327 of the Bankruptcy Code are subject to court approval and the availability of funds in the Debtors' estates. In this limited sense, Weil's fees are contingent in nature.

        g.    <u>Time Limitations Imposed by the Client or the Circumstances</u>. Many of the matters Weil has handled for the Debtors have been on an expedited basis, including first day motions, approval of the Sale Transaction, and confirmation of the Plan. Weil guided the Debtors through all stages of these

chapter 11 cases with speed and efficiency and has helped to preserve the value of the Debtors' assets and businesses.

h.      The Amount Involved and the Results Obtained.  During the Final Compensation Period, Weil assisted the Debtors' efforts to, among other things, finalize the Sale Transaction, arrange for the treatment of pensions and other employment obligations under the Sale Transaction, and obtain approval of a plan of reorganization.  The end result, a consensual reorganization, is a significant and satisfying result given the complex issues that arose in these chapter 11 cases.  Accordingly, Weil submits that the fees requested in this Application are reasonable and appropriate when considering the results obtained on behalf of the Debtors.

i.      The Experience, Reputation and Ability of the Professionals.  Weil has an extensive, diversified experience and expertise, including Weil's recognized expertise in the field of debtors' protections, creditors' rights, and the administration of cases under chapter 11 of the Bankruptcy Code.  For example, Weil currently represents or has represented, among others, the following debtors and their affiliates: CBL & Associates Properties, Inc.; Fieldwood Energy LLC; Brooks Brothers Group, Inc.; Vivus, Inc.; NPC International, Inc.; Speedcast International Limited; EP Energy Corporation; Skillsoft Corporation; Chinos Holdings, Inc.; Chisholm Oil & Gas Operating, LLC; 24 Hour Fitness Worldwide, Inc.; Fairway Group Holdings Corp.; Gavilan Resources Holdings, Inc.; Exide Holdings, Inc.; Kingfisher Midstream LLC; Halcon Resources Corporation; Fusion Connect, Inc.; Insys Therapeutics, Inc.; CTI Foods, LLC; Ditech Holding Corporation; PG&E Corporation and Pacific Gas and Electric Company; Checkout Holding Corp.; Waypoint Leasing Holdings Ltd.; LBI Media, Inc.; Sears Holdings Corporation; Tops Holding Company LLC; Southeastern Grocers, LLC; Claire's Inc.; Walter Inv. Mgmt. Corp.; Westinghouse Electric Company LLC; TK Holdings Inc.; Angelica Corp.; Azure Midstream Partners, LP; Memorial Production Partners LP; CHC Group Ltd.; Breitburn Energy Partners LP; Basic Energy Services, Inc.; American Gilsonite Company; and Aéropostale, Inc.  Weil's experience enabled it to perform the services described herein competently and expeditiously.  In addition to its expertise in the area of restructuring, Weil called upon the expertise of its partners and associates in other practice areas to perform the wide ranging scope of legal work necessitated by these chapter 11 cases, including corporate, tax, labor, and litigation work.

j.      The Undesirability of the Case.  Weil does not consider these cases to be undesirable.

k.      The Nature and Length of the Professional Relationship with the Client.  Weil has acted as counsel to the Debtors since April 2020 and has rendered services continuously to the Debtors.

l.      Awards in Similar Cases.  Weil submits that the fees and expenses for which it seeks compensation and reimbursement in this Application are not excessive and are commensurate with the rates awarded in similar cases in the United States Bankruptcy Court for similar services rendered and results obtained.

The fees requested by Weil are more fully described in **Exhibits C and D** attached hereto and in the invoices attached hereto as **Exhibits I, J, and K**.

47.     In the instant case, Weil submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for and beneficial to the preservation and maximization of value for all stakeholders.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

48.     In sum, the services rendered by Weil were necessary and beneficial to the Debtors' estates and were consistently performed in a timely manner commensurate with the types of issues involved in these chapter 11 cases.  Accordingly, approval of the compensation for professional services and reimbursement of expenses sought in this Application is warranted.

## **Notice**

49.     Notice of this Application will be provided to (i) the Debtors (Attn: Kathryn Buono, Esq. (Buono.Kathryn@basco.com)), (ii) Halperin Battaglia Benzijia, LLP (Attn: Alan D. Halperin, Esq., Debra Cohen, Esq., and Julie Goldberg, Esq.) and Carmody MacDonald P.C. (Attn: Robert E. Eggman, Esq., Christopher J. Lawhorn, Esq., and Thomas H. Riske, Esq.), as counsel to the Plan Administrator; (iii) the Office of the United States Trustee for the Eastern District of Missouri (Attn: Sirena Wilson, Esq.); (iv) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (v) Latham & Watkins LLP (Attn:  Peter P. Knight, Esq. and Jonathan C. Gordon, Esq.), as counsel to JPMorgan Chase Bank, N.A., as the administrative agent and collateral agent under the ABL Credit Facility and DIP Facility; (vi) Pryor Cashman LLP (Attn:  Seth H. Lieberman, Esq. and David W. Smith, Esq.), as counsel to Wilmington Trust, N.A., as successor indenture trustee under the Unsecured Notes; (vii) the United States Attorney's Office for the Eastern District of Missouri; (viii) Brown Rudnick LLP (Attn: Oksana P. Lashko, Esq.), as

counsel to the Creditors' Committee; (ix) any other party that has requested notice pursuant to Bankruptcy Rule 2002; and (x) any other party entitled to notice pursuant to Local Rule 9013-3(E).  Notice of this Application and any order entered hereon will be served in accordance with Local Rule 9013-3(E)(1).

[*Remainder of page intentionally left blank*]

## <u>Conclusion</u>

50.    Weil respectfully requests that the Court (i) award interim allowance of Weil's compensation for professional services rendered during the Second Interim Compensation Period in the amount of $2,690,368.77, consisting of $2,682,719.00 in fees and $7,649.77 in actual and necessary expenses, in all instances as incurred during the Second Interim Compensation Period, (ii) final allowance of Weil's compensation for professional services rendered during the Final Compensation Period in the amount of $11,234,545.09, consisting of $11,220,438.50 in fees and $14,106.59 in actual an necessary expenses, in all instances as incurred during the Final Compensation Period, and that such allowance be without prejudice to Weil's right to seek additional compensation for services performed and expenses incurred during the Final Compensation Period, which were not processed at the time of this Application, (iii) direct payment of the difference between the amounts allowed and any amounts previously paid, and (iv) grant such other and further relief as is just and proper.

Dated:  March 5, 2021
　　　　New York, New York

　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　 /s/  Ronit J. Berkovich
　　　　　　　　　　　　　　WEIL, GOTSHAL & MANGES LLP
　　　　　　　　　　　　　　Ronit J. Berkovich (admitted *pro hac vice*)
　　　　　　　　　　　　　　Debora A. Hoehne (admitted *pro hac vice*)
　　　　　　　　　　　　　　Martha E. Martir (admitted *pro hac vice*)
　　　　　　　　　　　　　　Eli Blechman (admitted *pro hac vice*)
　　　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　　　New York, New York 10153
　　　　　　　　　　　　　　Telephone:  (212) 310-8000
　　　　　　　　　　　　　　Facsimile:  (212) 310-8007
　　　　　　　　　　　　　　Email:  Ronit.Berkovich@weil.com
　　　　　　　　　　　　　　　　　　Debora.Hoehne@weil.com
　　　　　　　　　　　　　　　　　　Martha.Martir@weil.com
　　　　　　　　　　　　　　　　　　Eli.Blechman@weil.com

　　　　　　　　　　　　　　*Counsel to the Debtors*
　　　　　　　　　　　　　　*and Debtors in Possession*