U.S. Bankruptcy Court, Eastern District of Missouri, Southeastern Division

In re:  Briggs & Stratton Corporation, et. Al, Debtors    Chapter 11

Case no. 20-43597-399

RESPONSE TO OBJECTION

In Re: Case 20-43597

Counsel for the Plan Administrator repeatedly cites the word equity in its Objection to the relief sought. The Court is requested to deny the relief requested in the Objection.

While a share of common stock is, admittedly, an equity interest ; the word has a greater breadth of meaning directly relevant to the present dispute before the Bankruptcy Court.

Merriam-Webster defines equity as:

1. A. justice according to natural law or right specifically: freedom from bias or favoritism
2. Common stock of a corporation
3. A right, claim, or interest existing or valid in equity
4. A body of legal doctrines and rules developed to enlarge, supplement, or override a narrow rigid system of law.

Thus, this Opposition to Plan Administrator's Objection will repeatedly cite equity as the reason the Court should deny counsel's motion on behalf of the Administrator.

At issue is not the common stock of a corporation but the Dividend Reinvestment Plan for Shareholders of Briggs & Stratton Corporation in which shares of stock were held in a Plan created, controlled, and encouraged by the Corporation. CUSIP#109043 10 9

"The Plan Administrator, its nominee and the Corporation shall have no responsibility beyond

The exercise of ORDINARY CARE (emphasis added) for any action taken or omitted pursuant to the Plan..." See, Dividend Reinvestment Plan at 15 attached.

The Corporation encouraged participation in the Plan and trumpeted benefits of the plan "every penny goes to work for you, buying full and fractional shares (computed up to three decimal places) of the Corporation common stock. You pay no brokerage fees or service charges". See, Dividend Reinvestment Plan at page 1. The Dividend Reinvestment Plan has remained silent to this date about anything relating to the reorganization, bankruptcy, or this case in the Bankruptcy Court. Briggs & Stratton and its successors have not exercised ordinary care with respect to DRIP participants but rather have exercised no care at all. The participants were left penniless without notice.

The fundamental equity involved here relates to a dividend reinvestment plan controlled by Briggs & Stratton for the financial benefit of both the corporation and the participants. Under the reorganization plan the equity interests of the participants were cancelled and a single share of common stock was issued in favor of the Plan Administrator. See Plan at 4.30 et seq. Counsel even included a declaration from Alan Halperin as Plan Administrator that each "no liability claim" has been examined at that it is "rather an equity interest; and that such equity interest was cancelled under the Plan." See , declaration at pg.2.

As we examine the equity interest at stake, the Court can and should be reminded.    (1)

In Re: Case 20—43597

> "Lawyers have their duties as citizens, but they also have special duties as lawyers. Their obligations go far deeper than earning a living as specialists in corporation or tax law. The have a continuing responsibility to uphold the fundamental principles of justice from which the law cannot depart."
>
> Robert Kennedy

I return to those fundamental principles and remind the Court the Dividend Reinvestment Plan, controlled by Briggs & Stratton, knew of the plummeting share price, pending corporate reorganization, bankruptcy and the Plan Administrator's actions as his own declaration affirms he looked at the claims of shareholders. Yet, the DRIP remained silent.

The relationship between a shareholder and a stockbroker is remote and mercantile. Counsel cites at page 6 that the use of brokerage statements as proof of a claim is evidence of an equity claim. The corporation encouraged this participant for years to participate and when the present events transpired the corporation while paying retention bonuses to corporate officers paid little attention to the thousands of participants in the Dividend Reinvestment Plan leaving them holding an empty plan which has still not written its members. Ordinary care was not exercised; rather, the members of the DRIP were abandoned.

Some would argue the Bankruptcy Court is not one of equity. See, Marcia S. Krieger, "The Bankruptcy Court is a Court of Equity": What Does That Mean? 50 S.C.L. Rev 275 (1999). Contrary to the narrow definition of equity asserted by counsel for the Plan Administrator, equity demands relief for the participant common stockholders in the Briggs & Stratton Dividend Reinvestment Plan to override a narrow rigid system of law emphasized by counsel to the Plan Administrator.

This is not a political or philosophical dispute but a challenge by the Plan Administrator to the valid claims of members of the Dividend Reinvestment Plan like myself who ask for fairness, due process, and a recognition of valid claims as debtors not as some some distant shareholder of a huge brokerage house. Instead, we placed our money with the corporation that manufactured quality motors for generations with the assurance of a concerned management who actively solicited our DRIP participation every quarter.

It matters not if the Plan Administrator views this matter as secured, administrative, priority or unsecured the equity supports the legitimacy and supremacy of a claim from a participant in the Dividend Reinvestment Plan. By the preponderance of the evidence, participants like myself in the DRIP have rebutted the Objection in the name of true equity.

The successors who are reaping the benefits of the capital influx from the DRIP cannot be allowed to hide under the engine of a high quality Briggs & Stratton lawn mower and cut the equity out of the Dividend Reinvestment Plan.

Objection by the Plan is opposed. (2)

Submitted by,

Patrick C. Joyce, III          3/24/21

5413 Albemarle ST

Bethesda, MD 20816


Copies by U.S. Mail to

1. Clerk of the U.S. Bankruptcy Court, 111 South Tenth St, 4th Floor, St. Louis MO 63102

2. Robert Eggmann, Carmody Macdonald PC, 120 S. Central Avenue, Suite 1800, St Louis, MO 63105

3. Julie Dyas Goldberg, Halperin Battaglia Benzija LLP, 40 Wall Street, 37th FL, NY, NY 1005, Counsel to Plan Administrator



# Dividend Reinvestment Plan for Shareholders of Briggs & Stratton Corporation

CUSIP # 109043 10 9

Administered by:
Wells Fargo Shareowner Services

Have your Briggs & Stratton Corporation (the "Corporation") dividends automatically reinvested in additional common stock through the Dividend Reinvestment Plan (the "Plan"). Administered by Wells Fargo Shareowner Services, a division of Wells Fargo Bank, N.A. (the "Plan Administrator,") this service is an easy, practical way to build your common stockholdings.

### BENEFITS OF THE PLAN

- Your dividends are paid directly to your Plan account.
- You may view your account information and perform certain transactions online.
- You may receive account information and perform certain transactions via telephone.
- Every penny goes to work for you, buying full and fractional shares (computed up to three decimal places) of the Corporation common stock. You pay no brokerage fees or service charges.
- You may send additional funds, if you wish (minimum of $25 and $5,000 maximum per quarter) to buy more common stock.
- You may have funds automatically withdrawn from your checking or savings account each month and invested in your Plan account.
- You may send your stock certificate(s) to the Plan Administrator for safekeeping, if you wish.
- The Plan Administrator keeps detailed records of your account and will mail you a statement after each transaction. This will be at least quarterly for the dividend purchases. The statements will reflect how much stock is bought and how many shares you own.
- You may join or withdraw from the Plan at any time.

### WHO IS ELIGIBLE

Any registered owner of the Corporation common stock is eligible to participate in the Plan. However, regulations in certain countries may limit or prohibit participation in this type of Plan. Accordingly, persons residing outside the United States who wish to participate in the Plan should first determine whether they are subject to any governmental regulation prohibiting their participation.

1

shares held by the Plan Administrator for the participant and will combine the resultant funds with the next regular dividend or optional cash investment for reinvestment at that time. If a participant desires to exercise such rights, the participant should request that full shares be issued in book-entry (DRS) or certificated.

- The Plan Administrator, its nominee and the Corporation shall have no responsibility beyond the exercise of ordinary care for any action taken or omitted pursuant to the Plan, nor shall they have any duties, responsibilities or liabilities except such as are expressly set forth herein.

- In administering the Plan, neither the Corporation, the Plan Administrator nor any Independent Agent selected by the Plan Administrator shall be liable for any good faith act or omission to act, including but not limited to any claim of liability (i) arising out of the failure to terminate a participant's account upon such participant's death prior to receipt of a notice in writing of such death, (ii) with respect to the prices or times at which shares are purchased or sold, or (iii) as to the value of the shares acquired for participants. Selling participants should be aware that the share price of the Corporation's common stock may fall or rise during the period between a request for sale, its receipt by the Plan Administrator, and the ultimate sale in the open market. Participants should evaluate these possibilities while deciding whether and when to sell any shares through the Plan. The price risk will be borne solely by the participant.

- The Plan Administrator is acting solely as agent of the Corporation and owes no duties, fiduciary or otherwise, to any other person by reason of this Plan, and no implied duties, fiduciary or otherwise, shall be read into this Plan. The Plan Administrator undertakes to perform such duties and only such duties as are expressly set forth herein, to be performed by it, and no implied covenants or obligations shall be read into this Plan against the Plan Administrator or the Corporation.

- In the absence of negligence or willful misconduct on its part, the Plan Administrator,

15

Patrick Joyce
5413 Albemarle St
Bethesda, MD 20816

CAPITAL DISTRICT 208

25 MAR 2021 PM 1 L



FOREVER / USA

RECEIVED-FILED
2021 MAR 30 AM 10: 51

CLERK
U.S. Bankruptcy Court
111 South Tenth St, 4TH FL
St. Louis, MO 63102

63102-112599