UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| | § | Case No. 20-43597-399 |
| **BRIGGS & STRATTON CORPORATION,** *et al.,* | § § § | (Jointly Administered) |
| Debtors.[1] | § § § § § § § § § | Hearing Date & Time: March 10, 2022 at 2:00 p.m. (prevailing Central Time) Hearing Location: St. Louis Courtroom 5-North |

### PLAN ADMINISTRATOR'S MOTION FOR AN ORDER AUTHORIZING THE ESTABLISHMENT OF A QUALIFIED SETTLEMENT FUND FOR CERTAIN EMPLOYEE CLAIMS

Alan D. Halperin as Plan Administrator (the "**Plan Administrator**") under the *Amended Joint Chapter 11 Plan of Briggs & Stratton Corporation and its Affiliated Debtors*, dated November 9, 2020 [Docket No. 1226] (the "**Plan**"),[2] respectfully represents as follows in support of this motion (the "**Motion**") for an Order authorizing the establishment of a Qualified Settlement Fund (the "**QSF**") for certain claims of former employees (collectively, the "**Claimants**") whose distributions are subject to withholding taxes.[3] In support of the Motion, the Plan Administrator respectfully submits the following:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Briggs & Stratton Corporation (2330), Billy Goat Industries, Inc. (4442), Allmand Bros., Inc. (4710), Briggs & Stratton International, Inc. (9957), and Briggs & Stratton Tech, LLC (2102).  The address of the Debtors' corporate headquarters is 12301 West Wirth Street, Wauwatosa, Wisconsin 53222.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

[3] For the avoidance of all doubt, distributions on account of the Claimants have been fully reserved for while these tax issues are being properly addressed.

**Preliminary Statement**

1. The Plan Administrator, together with his professionals, has worked diligently since his appointment to reconcile claims and establish reserves so that he could make a distribution to general unsecured creditors in a timely manner. He is pleased to report that he was able to accomplish this goal and made a 6% distribution to the majority of the general unsecured creditors of Briggs & Stratton Corporation and a combined 1.5% distribution at the Allmand Bros., Inc. and Billy Goat Industries, Inc. levels in December 2021. Additional distributions are anticipated.

2. Distributions to the Claimants,[4] Debtors' former employees, were reserved for and held back due to the taxable nature of distributions on their claims. Distributions to the Claimants must be made net of withholding taxes, which the Plan Administrator is required to deduct from the total distribution amount prior to making a distribution. The Plan Administrator is informed by both tax professionals and prior experience that establishing a QSF is an economical and time efficient vehicle to effectuate distributions to former employees.

3. A QSF is akin to a trust that allows the Plan Administrator to allocate the distribution amounts to the Claimants and disburse the funds pursuant to a court order. The Plan Administrator may use it to open new payroll accounts with the requisite authorities in order to properly deduct taxes (and, if appropriate, pay the employer's share of taxes) and streamline distributions made to the Claimants without reopening the Debtors' prior payroll accounts, which have largely been closed due to inactivity. Establishing a QSF will allow the Plan Administrator to make such distributions to the Claimants in an expeditious and economical fashion and without

---

[4] For purposes of scope, the Plan Administrator estimates that there are approximately 150 Claimants whose distributions are affected. The reason a precise number cannot be quantified is that the Plan provides for a minimum distribution threshold, for administrative purposes, of $100, so as the distribution percentage increases, more Claimants may qualify for a distribution.

2

conflating the pre-sale operating Debtors' (now closed) payroll accounts with distributions being made in accordance with the Plan, which provides an added benefit to the Claimants in clearly delineating the withholdings relevant to their claims for purposes of any applicable tax refunds.

4. By this Motion, the Plan Administrator requests an Order authorizing him to establish a QSF for the purpose of making distributions to the Claimants. The Plan Administrator acknowledges that under both the Treasury Regulations and the relevant case law, a separate court order expressly establishing a QSF may not be necessary and he may be seeking a "comfort order" from this Court. However, in addition to erring on the side of caution in terms of obtaining an Order, he submits that this Motion serves two additional important purposes. First, this Motion puts all interested parties on notice of the issues regarding employment withholdings on this subset of claims and second, it provides transparency to the Claimants regarding the status and timing of their initial distributions. In his judgment, the Plan Administrator believes that this is in the best interests of the Claimants and the Wind-Down Estates.

**Background**

A. **The Bankruptcy Cases**

5. On July 20, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On August 5, 2020, the United States Trustee appointed an official committee of unsecured creditors (the "**Creditors' Committee**") in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner was appointed in these chapter 11 cases. The Debtors' chapter 11 cases were jointly administered for procedural purposes

only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015(b) of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri.

7. Pursuant to an order dated August 24, 2020 [Docket No. 564] (the "**General Bar Date Order**"), this Court established October 7, 2020 (the "**General Bar Date**") as the last day for non-governmental entities to file pre-petition claims against the Debtors and their estates, and January 19, 2021 as the last day for governmental entities to file pre-petition claims against the Debtors and their estates. In accordance with the General Bar Date Order, Kurtzman Carson Consultants, LLC served a Notice of Deadlines to File Proofs of Claim and a Proof of Claim Form as evidence by the Certificate of Service filed with this Court [Docket No. 576]. Additionally, in accordance with the General Bar Date Order, the Debtors published a notice of the General Bar Date in the national edition of the *New York Times* and in the *St. Louis Post Dispatch*, as evidenced by the Certificate of Publication filed with this Court [Docket No. 826].

8. On September 15, 2020, the Court entered an order authorizing the Debtors to sell substantially all of their assets[5] to Bucephalus Buyer, LLC and on September 21, 2020, the Debtors closed the Sale Transaction.[6] On December 16, 2020, the Debtors filed the Plan, which was confirmed by the *Findings of Fact, Conclusions of Law, and Order Confirming the Plan* on December 18, 2020 [Docket No. 1485] (the "**Confirmation Order**").

9. The Effective Date of the Plan occurred on January 6, 2021 and the *Notice of (I) Entry of Order Confirming Second Amended Joint Chapter 11 Plan of Briggs & Stratton Corporation and Its Affiliated Debtors and (II) Occurrence of Effective Date* [Docket No. 1538]

---

[5] *Order (I) Authorizing the Sale of the Asserts and Equity Interests to the Purchaser Free and Clear of Liens, Claims, Interests, and Encumbrances; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 898].

[6] *See Notice of (I) Filing of Amendment to Stock and Asset Purchase Agreement, And (II) the Occurrence of Closing of the Sale Transaction* [Docket No. 964].

4

was filed, at which time the Creditors' Committee was relieved of its duties and Alan D. Halperin was appointed as Plan Administrator to "serve as the initial director or manager, as applicable, and sole officer of each Wind-Down Estate." *See* Plan, § 5.4(c).

10. The Plan Administrator is in the process of implementing the Plan, including resolving claims disputes and making distributions to creditors.

**B.     Distributions Under the Plan**

11. Implementation of the Plan includes, *inter alia*, liquidation of any remaining assets of the Debtors and distribution of proceeds to the holders of Allowed Claims. The holders of allowed general unsecured claims against the Debtors, Classes 4(a) – (e), are entitled to receive their Pro Rata Share of Net Cash Proceeds (of the applicable Debtor) after the Priority Tax Claims, Priority Non-Tax Claims, and the Other Secured Claims are satisfied, or reserved for, in full in accordance with the Plan. *See* Plan, §§ 4.16(b), 4.17(b), 4.18(b), 4.19(b) and 4.20(b). "Net Cash Proceeds" is defined as all Cash realized from business and/or Wind-Down operations and Sale Transaction Proceeds less the Cash required to pay (or reserved for) Administrative Expense Claims, Fee Claims, DIP Claims, the Wind-Down Budget, and Statutory Fees. *See* Plan § 1.70. To date, the Plan Administrator has paid all allowed Administrative Expense Claims, Secured Claims, Priority Claims, and Statutory Fees.

12. In December 2021, the Plan Administrator made an interim distribution to the majority of the holders of allowed general unsecured claims against the Debtors, Classes 4(a) – (e). However, the Plan Administrator reserved and held back interim distributions to the Claimants holding allowed claims, who were former employees of the Debtors, due to the taxable nature of their claims and the legal requirement to withhold and remit such funds to the proper taxing authorities. The Plan Administrator is now seeking to establish a QSF so that he can take

5

the proper tax withholdings from the distributions and efficiently and timely distribute the net funds to the Claimants. The Plan Administrator recognizes that it is relatively settled law – at least in jurisdictions where the issue has been confronted – that a separate court order is not necessarily required to establish a QSF. However, he files this Motion out of an abundance of caution to ensure that the QSF is properly formed and in order to provide (i) notice regarding his proposed actions and (ii) transparency to the all interested parties as to why employee claims were reserved for in the interim distribution process.

13.     Thus, for the reasons described below, the Plan Administrator has determined that the creation of a QSF for the purpose of making distributions to the Claimants is appropriate and in the best interest of the creditors of the Wind-Down Estates.

## Jurisdiction

14.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

15.     Pursuant to section 105(a) of the Bankruptcy Code and Treasury Regulation section 1.468B-1(c), the Plan Administrator respectfully requests entry of an Order (the "**Proposed Order**")[7] authorizing the establishment of a QSF to make distributions to the Claimants.

## Relief Requested Should Be Granted

16.     Treasury Regulation section 1.468B-1(c) lists the requirements that must be met in order to establish a QSF:

---

[7] Copies of the Proposed Order will be made available on the Debtors' case information website at http://www.kccllc.net/Briggs.

6

  (1)  It is established to pursuant to an order of, or is approved by, the United States … any agency or instrumentality (including a court of law) of any of the foregoing and is subject to the continuing jurisdiction of that governmental authority;

  (2)  It is established to resolve or satisfy one or more contested or uncontested claims that have resulted or may result from an event … (ii) Arising out of a tort, breach of contract, or violation of law; and

  (3)  The fund, account, or trust is a trust under applicable state law, or it assets are otherwise segregated from the other assets of the transferor (and related persons).

26 CFR § 1.468B-1(c).

  17.  In *O'Chesky v. United States*, the District Court for the Northern District of Texas outlined the requirements for the establishment of a QSF. *O'Chesky v. United States*, No. 3-00-CV-0142-P, 2001 WL 1658144 (N.D. Tex. Dec. 21, 2001). "First, a governmental entity (such as a judge) must approve setting up a fund . . . . Second, the fund must be established to 'resolve or satisfy' certain kinds of claims including tort, breach of contract . . . . rather than trade claims or equity claims . . . . Third, the fund must be held in trust or in a fund segregated from the other assets of the transferor . . . ." *Id*. at *19 (*citing* Treas. Reg. § 1.458B-1(c)). The Court found that the plan confirmation process was sufficient to establish a QSF even absent the explicit intent to do so. *Id*. at *20. The Court stated "the statute and the evidently deliberate omission of an intent requirement lead this court to conclude that mere creation of the fund is sufficient to give it QSF status." *Id*.

  18.  The Plan Administrator submits that the three requirements to establish a QSF have been met. First, the confirmation process and Confirmation Order are sufficient to satisfy 26 CFR § 1.468B-1(c)(1). Second, the Claimants' claims result from a breach of contract, in satisfaction of 26 CFR § 1.468B-1(c)(2)(ii). Finally, the Plan Administrator will segregate the

7

QSF funds from the other funds held by the Plan Administrator on behalf of the Wind-Down Estates, in satisfaction of 26 CFR § 1.468B-1(c)(3).

19. The Court's equitable powers are codified in section 105(a) of the Bankruptcy Code. Section 105(a) authorizes the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." The Plan Administrator believes that the establishment of a QSF for the purpose of making distributions to the Claimants net of withholdings is an appropriate exercise of the Court's equitable powers under section 105(a). Here, the Plan Administrator needs a vehicle to make distributions to the Claimants net of withholdings. Establishing a QSF allows him to make such distributions to the Claimants in an expeditious and economical fashion and without conflating the pre-sale operating Debtors' (now closed) payroll accounts with distributions being made in accordance with the Plan, which provides an added benefit to the Claimants in clearly delineating the withholdings relevant to their claims for purposes of any applicable tax refunds. Thus, the Plan Administrator submits that an Order establishing a QSF is in the best interest of the creditors of the Wind-Down Estates.

## **Reservation of Rights**

20. Without limiting any of the foregoing, the Plan Administrator reserves the right to amend this Motion, file additional pleadings in support of this Motion, or take other appropriate actions, including, but not limited to, responding to any allegation that may be raised in a response filed by a Claimant or interested party.

## **Notice**

21. Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Eastern District of Missouri (Attn: Sirena Wilson, Esq.); (ii) the known Claimants;

(iii) any other party that has requested notice pursuant to Bankruptcy Rule 2002; and (iv) any other party entitled to notice.

## **No Prior Request**

22.     No prior request for the relief sought herein has been made by the Plan Administrator to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Plan Administrator respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  February 7, 2022
       St. Louis, Missouri

Respectfully submitted,

CARMODY MACDONALD P.C.


 /s/ Robert E. Eggmann
Robert E. Eggmann, #37374MO
Christopher J. Lawhorn, #45713MO
Thomas H. Riske, #61838MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:  (314) 854-8600
Facsimile: (314) 854-8660
Email: ree@carmodymacdonald.com
      cjl@carmodymacdonald.com
      thr@carmodymacdonald.com

*Local Counsel to the Plan Administrator*

-and-

HALPERIN BATTAGLIA BENZIJA LLP
Julie Dyas Goldberg
Carrie E. Essenfeld
40 Wall Street, 37th Floor
New York, New York 10005
Telephone:  (212) 765-9100
Email: jgoldberg@halperinlaw.net
      cessenfeld@halperinlaw.net

*Counsel to the Plan Administrator*