**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| | § | **Case No. 20-43597-399** |
| **BRIGGS & STRATTON** | § | |
| **CORPORATION,** *et al.,* | § | **(Jointly Administered)** |
| | § | |
| Debtors. | § | Hearing Date: October 5, 2022 |
| | § | Hearing Time: 9:30 a.m. (Central Time) |
| | § | Hearing Location: Courtroom 5 North |
| | § | 111 S. 10th St., St. Louis, MO 63102 |

**PLAN ADMINISTRATOR'S APPLICATION FOR AN
ORDER PURSUANT TO 11 U.S.C. § 502(c) ESTIMATING
THE GENERAL UNSECURED CLAIM VALUE OF
PROOFS OF CLAIM NUMBERED 466 AND 468**

> **THIS IS A MOTION TO ESTIMATE YOUR CLAIM(S). THE OBJECTING PARTY IS ASKING THE COURT TO SET THE AMOUNT OF THE CLAIM(S) THAT YOU FILED IN THIS BANKRUPTCY CASE FOR PURPOSES OF DISTRIBUTIONS.**
>
> **IF YOU CHOOSE TO RESPOND, A WRITTEN RESPONSE MUST BE FILED WITH THE CLERK OF COURT, U.S. BANKRUPTCY COURT, 111 SOUTH TENTH STREET, 4TH FLOOR, ST. LOUIS, MISSOURI 63102, AND A COPY SERVED UPON COUNSEL TO THE PLAN ADMINISTRATOR, (A) HALPERIN BATTAGLIA BENZIJA LLP, 40 WALL STREET, 37TH FLOOR, NEW YORK, NEW YORK 10005 (ATTN: JULIE DYAS GOLDBERG, ESQ. AND CARRIE E. ESSENFELD, ESQ.) AND (B) CARMODY MACDONALD P.C., 120 S. CENTRAL AVENUE, SUITE 1800, ST. LOUIS, MISSOURI 63105 (ATTN: THOMAS H. RISKE, ESQ.), SO THAT THE RESPONSE IS RECEIVED NO LATER THAN 11:59 P.M. (PREVAILING CENTRAL TIME) ON SEPTEMBER 28, 2022.**
>
> **FAILURE TO FILE A RESPONSE TIMELY MAY RESULT IN THE COURT GRANTING THE RELIEF REQUESTED PRIOR TO THE HEARING DATE. YOU SHOULD READ THIS NOTICE AND THE ACCOMPANYING MOTION CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE.**

Alan D. Halperin as Plan Administrator (the "**Plan Administrator**") under the

*Amended Joint Chapter 11 Plan of Briggs & Stratton Corporation and its Affiliated Debtors*, dated

November 9, 2020 (the "**Plan**", Docket No. 1226),[1] respectfully represents as follows in support of this application (the "**Application**") for an order estimating the general unsecured claim value of proofs of claim numbered 466 and 468 (collectively, the "**Litigation Claims**" and the creditors named on the Proofs of Claim filed in connection with the Litigation Claims are collectively referred to as the "**Litigation Claimants**") at $0 for purposes of distribution. In support of this Application, attached hereto as **Exhibit A** is the *Declaration of Alan D. Halperin as Plan Administrator in Support of the Application for an Order Pursuant to 11 U.S.C. § 502(c) Estimating the General Unsecured Claim Value of Proofs of Claim Numbered 466 and 468* (the "**Halperin Declaration**").

## Preliminary Statement

For purposes of this Application, there is one (1) relevant lawsuit the Plan Administrator has identified naming Briggs & Stratton as a defendant. The lawsuit was filed by Joseph Ward, and Krista Danyale Ward, for personal injury.[2] The Lawsuit is in the preliminary stages of litigation and the claims asserted have not been comprehensively tested or investigated in discovery. The Plan Administrator does not admit the veracity, sufficiency or accuracy of any of the allegations raised by the Litigation Claimants in the pending litigation, or underlying any and all of the Litigation Claims, and, after consultation with his professionals, believes that certain defenses/offsets to the Litigation Claims and in the pending litigations may exist. ***Of utmost importance and relevance to the relief requested herein, the Plan Administrator submits that the Debtors are fully indemnified by a (non-debtor) third-party for the Litigation Claims,***

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

[2] The caption of this case is: *Krista "Danyale" Ward and Joseph Ward, husband and wife, v. Nilfisk, Inc., Nilfisk Pressure-Pro LLC., Kochel Equipment Co., Inc., The Plastics Group, Inc., Briggs & Stratton Corporation and Gotwals Brothers LLC*, Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida, Case No. 19-CA-001352.

{00326294.2 / 1380-001 }

*which indemnity was agreed to as part of various transaction documents whereby the Debtors licensed certain of their intellectual property to a third-party manufacturer whose product allegedly caused harm to the Litigation Claimants.*

The Plan Administrator seeks a procedural resolution that will estimate the Litigation Claims at $0 for distribution purposes so that the estates and holders of other unsecured claims will not be prejudiced by such undue delay while the cases advance. Likewise, the Litigation Claimants will not be prejudiced given that the Debtors are fully indemnified for the Litigation Claims and their (non-debtor) economic counterparty (the "**Licensee**") is not impacted by the relief requested.

It is undisputed that the Debtors are fully indemnified for the damages associated with the Litigation Claims. Accordingly, by this Application, the Plan Administrator seeks to estimate the Litigation Claims at $0 for purposes of distributions only.

By this Application, the Plan Administrator seeks to estimate, for distribution purposes, the two (2) Litigation Claims at $0 because the Debtors are fully indemnified with regard to these claims. As a result, the Wind-Down Estates can reasonably anticipate they will have no liability. In his judgment, the Plan Administrator believes this to be both fair and equitable treatment of the Litigation Claims, as well as a necessary step in order to make distributions in accordance with the Plan and avoid undue delay of the administration of the estates. For the reasons set forth in detail below, the Plan Administrator requests the Court's entry of an Order estimating each of the Litigation Claims for distribution purposes as a general unsecured claim in the amount of $0.

## Background

A. **The Chapter 11 Bankruptcy Case**

1. On July 20, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On August 5, 2020, the United States Trustee appointed an official committee of unsecured creditors (the "**Creditors' Committee**") in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner was appointed in these chapter 11 cases. The Debtors' chapter 11 cases were jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 1015(b) of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "**Local Rules**").

3. Pursuant to an order dated August 24, 2020 (the "**General Bar Date Order**") [Docket No. 564], this Court established October 7, 2020 (the "**General Bar Date**") as the last day for non-governmental entities to file pre-petition claims against the Debtors and their estates, and January 19, 2021 (the "**Governmental Bar Date**") as the last day for governmental entities to file pre-petition claims against the Debtors and their estates. In accordance with the General Bar Date Order, the Claims Agent served a Notice of Deadlines to File Proofs of Claim and a Proof of Claim Form as evidence by the Certificate of service filed with this Court (the "**Bar Date COS**") [Docket No. 576]. Additionally, in accordance with the General Bar Date Order, the Debtors published a notice of the General Bar Date in the national edition of the *New York Times* (national edition) and once in the *St. Louis Post Dispatch*, as evidenced by the Certificate of Publication with this Court (the **Publication Notice**") [Docket No. 826].

4. On September 15, 2020, the Court entered an order authorizing the Debtors to sell substantially all of their assets[3] to Bucephalus Buyer, LLC (the "**Purchaser**") and on September 21, 2020, the Debtors closed the Sale Transaction.[4] On December 16, 2020, the Debtors filed the Plan, which was confirmed by the *Findings of Fact, Conclusions of Law, and Order Confirming the Plan* on December 18, 2020 [Docket No. 1485] (the "**Confirmation Order**").

5. The Effective Date of the Plan occurred on January 6, 2021 and the *Notice of Entry of Order Confirming the Plan and Occurrence of the Effective Date* [Docket No. 1538].

6. On the Effective Date, pursuant to the Plan, Alan D. Halperin was appointed as Plan Administrator to "serve as the initial director or manager, as applicable, and sole officer of each Wind-Down Estate." *See* Plan, § 5.4(c).

7. The Plan Administrator is in the process of implementing the Plan, including resolving Claims disputes and making distributions to creditors.

**B. Distributions Under the Plan**

8. The Plan Administrator is responsible for implementing the Plan, which provides for the liquidation of any remaining assets of the Debtors and distribution of proceeds to the holders of Allowed Claims. The holders of allowed general unsecured claims against the Debtor, Classes 4(a) – (e), are entitled to receive their Pro Rata Share of Net Cash Proceeds (of the applicable Debtor) after the Priority Tax Claims, Priority Non-Tax Claims and the Other Secured Claims are satisfied, or reserved for, in full in accordance with the Plan. See Plan, §§ 4.16(b), 4.17(b), 4.18(b), 4.19(b) and 4.20(b). Net Cash Proceeds is defined as all Cash realized from

---

[3] *Order (I) Authorizing the Sale of the Asserts and Equity Interests to the Purchaser Free and Clear of Liens, Claims, Interests, and Encumbrances; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 898].

[4] *See Notice of (I) Filing of Amendment to Stock and Asset Purchase Agreement, And (II) the Occurrence of Closing of the Sale Transaction* [Docket No. 964].

business and/or Wind-Down operations and Sale Transaction Proceeds less the Cash required to pay (or reserve for) Administrative Expense Claims, Fee Claims, and DIP Claims, fund the Wind-Down Budget and pay Statutory Fees. See Plan § 1.70. To date, the Plan Administrator has paid all allowed Administrative Expense Claims, Secured Claims, Priority Claims and Statutory Fees.

9. The Plan Administrator has made two (2) interim distributions to the Debtors' general unsecured creditors. The Plan Administrator is hopeful additional distributions can be made, however, there are a number of large litigation claims, including but not limited to, the Litigation Claims that are the subject of this Application, which need to be fixed before any additional distributions to such creditors may occur. This Application is an important and necessary step in fixing unliquidated claims. Because the Wind-Down Estates are fully indemnified with respect to the Litigation Claims, the Plan Administrator submits that no reserves for the Litigation Claims are required.

**C. The Claims Reconciliation Process**

10. The Plan Administrator, with the assistance of his professionals and advisors has reviewed the Debtors' schedules of assets and liabilities, the filed proofs of claim, the Debtors' books and records and other data. The review process included identifying particular categories of claims that should be disallowed, expunged, reduced and allowed, or reclassified in order to avoid possible double recovery or otherwise improper recovery to claimants. The Plan Administrator has made great strides in the claims resolution process. To date, the Debtors or the Plan Administrator have filed thirty-two (32) omnibus objections to claims, and multiple motions to estimate claims, thus resolving the majority of the Disputed Claims (as defined in § 1.43 of the Plan).[5]

---

[5] On December 3, 2021, this Court entered an *Order Sustaining the Plan Administrator's Application for an Order Pursuant to 11 U.S.C. § 502(c) Estimating the General Unsecured Claim Value of Proofs of Claim Numbered 466,*

{00326294.2 / 1380-001 }

11. As set forth in the Halperin Declaration, the Plan Administrator and his professionals have examined the Litigation Claims, the documentation provided by the Litigation Claimants with respect to the Litigation Claims, and the Debtors' respective books and records and have determined that the Debtors have no liability as to the Litigation Claim because the Debtors are fully indemnified by a third-party for any possible liability in connection therewith.

12. Thus, for the reasons described below, the Plan Administrator has determined that the Litigation Claims should be estimated at $0 for distribution purposes only.

## Jurisdiction

13. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and § 7.5 of the Plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

14. Pursuant to sections 105(a), 502(c) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 9014 Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3007(C) of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the Eastern District of Missouri (the "**Local Rules**") the Plan Administrator respectfully requests entry of an order (the "**Proposed Order**"),[6] estimating and setting the maximum liability amount for each of the Litigation Claims at $0 for distribution purposes only.

## Relief Requested Should Be Granted

15. Section 502(c) of the Bankruptcy Code provides in pertinent part that "[t]here shall be estimated for purpose of allowance under this section – (1) any contingent or

---

*468, 1377, and 1663* (the "**December Estimation Order**") [Docket No. 2031], which estimated the Litigation Claims at no more than $2 million.

[6] Copies of the Proposed Order will be made available on the Debtors' case information website at http://www.kccllc.net/Briggs.

unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c). The Plan Administrator submits that, absent the estimation of the Litigation Claims, their resolution would unduly delay administration of the estates, as the full scale litigation of the Litigation Claims will consume significant judicial hours, leading to delays of months or years, and unnecessary expenditures of significant amounts of estate resources.

The Litigation Claimants filed proofs of claim identifying a dollar amount in line with what they assert is the full amount of their damages resulting from their respective litigations. On December 3, 2021, after notice and a hearing, this Court estimated the Wind-Down Estate's maximum liability related to each of the Litigation Claims at $2 million.  Subsequently, the Plan Administrator was able to confirm that the Debtors' liability to the Litigation Claimants in connection with the Litigation Claims is indemnified pursuant to a certain *License Agreement*, dated as of July 1, 2017, between Briggs & Stratton Tech, LLC ("Briggs") and The Plastics Group, Inc. ("TPGI").  A copy of the License Agreement containing the indemnification agreement is attached as **Exhibit B**. The License Agreement provides, in pertinent part, that licenses are granted to TPGI with respect to the trademarks and trade names "Briggs & Stratton Corporation" and "Briggs & Stratton Power Products Group, LLC," in exchange for which TPGI agreed, in pertinent part, to

> [I]ndemnify and hold harmless [Briggs], its directors, officers, agents, representatives, employees, subsidiaries, affiliates and agents from and against any and all Losses including without limitation any claims involving product liability. . . [Briggs] shall give [TPGI] written notice of any such claims within thirty (30) days of any claim being made against [Briggs] and thereafter [TPGI] shall promptly attend to the defense or settlement thereof at Licensee's own cost and expense.
>
> * * *
>
> [TPGI] shall, throughout the term of this Agreement of this Agreement, maintain at its own cost a liability insurance policy including contractual and product liability

coverage with broad form vendor's endorsement, with single limits of not less than Five Million Dollars ($5,000,000) or other such figure agreed upon by the parties in writing, and shall name [Briggs] as additional insured.

*See* Exhibit B at ¶¶ 25-26.  By *First Amendment to License Agreement*, dated May 23, 2018 and executed by Pavel Smyschlyaev as Chief Financial Officer of TPG Plastics, LLC ("**TPGL**"), TPGL agreed to and did assume all rights, responsibilities and obligations of TPGI under the *License Agreement* referenced above. A copy of the *First Amendment to License Agreement* is attached as **Exhibit C**. The *License Agreement* and *First Amendment to License Agreement* are collectively referred to herein as the "Agreements."

16. Per paragraph 26 of the License Agreement, liability insurance was secured which, if liability against the Debtors is established, would cover the claims underlying the Litigation Claims. A copy of the *Certificate of Liability Insurance* naming Briggs & Stratton Corporation, among others, as Additional Insureds, is attached as **Exhibit D**.

17. Because Litigation Claims are claims that are the subject of the Agreements, and included in coverage confirmed by the aforementioned *Certificate of Liability Insurance,* the Debtors are fully indemnified for the Litigation Claims and the Plan Administrator submits it is appropriate to estimate the Wind-Down Estates' liability related to the Litigation Claims at $0 for distribution purposes only.

18. After entry of the December Estimation Order the Plan Administrator was advised that the insurance carrier for TPGL has appointed counsel to defend the Debtors (named as defendants) in connection with the litigation underlying the Litigation Claims. The Plan Administrator has been provided relevant portions of TPGL's Commercial General Liability Policy (the "**Policy**") and upon review believes that the injuries and damages asserted in the litigation underlying the Litigation Claims shall be covered by the Policy in the event liability is

established.  Given that the Debtors are fully indemnified by TPGL and the relevant insurance carrier has appointed counsel to defend the litigation underlying the Litigation Claims[7], the Plan Administrator asserts that it is reasonable to conclude that, worst case scenario, the Debtors and the Wind-Down Estates will bear no liability related to the litigation underlying the Litigation Claims.

19. The litigation underlying the Litigation Claims is unresolved, and may take many months, or even years to resolve given their current posture and complexity.  As of the date of this Application, no court has determined liability related to the Litigation Claims.  The Plan Administrator submits that setting the maximum aggregate amount of each of the Litigation Claims at $0 for distribution purposes only represents a fair and reasonable approach that is exactly the type of equitable treatment the powers of estimation exist to address.

20. A court may authorize the estimation and approximation of the value of a claim using "whatever method is best suited to the circumstances" at issue and recognizing that absolute certainty is not possible. *In re Brints Cotton Marketing, Inc.,* 737 F.2d 1338, 1341 (5th Cir. 1984).  The Court is not bound by legal rules that govern the ultimate value of the claim and has wide discretion in establishing the method to be used to arrive at an estimate of the value of a claim or claims. *Id.; Bittner v. Borne Chemical Co*., 691 F.2d 134, 135 (3rd Cir. 1982) (estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim"); *In re Baldwin-United Corp.,* 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985) (estimation "does not require that a bankruptcy judge be clairvoyant").

---

[7] A copy of this motion will be provided to counsel for the insurance carrier appointed to defend the litigation underlying the Litigation Claims.

{00326294.2 / 1380-001 }

21. Bankruptcy courts have wide discretion in choosing the process for estimating a claim. The methods used by courts include summary trials, a review of written submissions of proposed facts and a review of the pleadings and briefs, *See e.g., In re Baldwin-United Corp.*, 55 B.R. at 899, *In re Windsor Plumbing Supply*, 170 B.R. 503, 517 (Bankr. E.D.N.Y. 1994), *In re Lane*, 68 B.R. 609, 613 (Bankr. D. Hawaii 1986). A court may also apply summary trial procedures for each claim subject to estimation. *In re Apex Oil Corp.,* 92 B.R. 843, 845 (Bankr. E.D. Mo. 1988) (applying summary trial briefing schedule for each claim subject to estimation).

22. In addition to the Court's ability to estimate claims, the Court's equitable powers are codified in section 105(a) of the Bankruptcy Code. Section 105(a) authorizes the Court's authority to "issue any order, process, or judgment that is necessary to carry out the provisions of this title."

23. The Plan Administrator submits that given both the need for an expeditious resolution of the Litigation Claims together with the Debtors' full indemnification by a third-party related to the Litigation Claims should any liability be established, the exercise of the Court's broad powers under section 105(a) to carry out section 502(c) by estimating each of the Litigation Claims at an amount of $0 for purposes of distribution by the Wind-Down Estates is necessary and appropriate. If the Litigation Claims are not fixed for distribution purposes, the Wind-Down Estates would be required to reserve for amounts far in excess of the Debtors' maximum potential liability related to the Litigation Claims and will interfere with the Plan Administrator's ability to make distributions to Class 4(a) – (e) Claimants. The Plan Administrator further posits that estimating the Litigation Claims as proposed in this Application should not be controversial as the relief requested seeks to estimate the Litigation Claims at the maximum amount of exposure given

the indemnification that exists in this case. The Plan Administrator submits that fixing the Litigation Claims, (without admitting any liability) at $0 is a necessary step toward fulfilling his duty to timely distribute to the general unsecured creditors in these cases. The Plan Administrator submits that estimating the Litigation Claims is in the best interests of the Litigation Claimants, all creditors of the Wind-Down Estates, and all other parties-in-interest.

## Reservation of Rights

24. Without limiting any of the foregoing, the Plan Administrator reserves the right to amend this Application, file additional pleadings in support of this Application or take other appropriate actions, including (i) respond to any allegation that may be raised in a response filed by a claimant or interested party; and/or (ii) object further to any claim for which a claimant provides additional support; and/or (iii) object further to any of the Litigation Claims based on additional information that may be discovered upon further review by the Plan Administrator or through discovery pursuant to the Bankruptcy Rules.

## Separate Contested Matter

25. To the extent a response is filed regarding the Litigation Claims and the Plan Administrator is not able to resolve such response, the request for estimation and/or objection to such claim by the Plan Administrator shall be a separate contested matter under Bankruptcy Rule 9014.

## Notice

26. Notice of this Application will be provided to (i) the Office of the United States Trustee for the Eastern District of Missouri (Attn: Sirena Wilson, Esq.); (ii) the Claimant; (iii) any other party that has requested notice pursuant to Bankruptcy Rule 2002; and (iv) any other

{00326294.2 / 1380-001 }

party entitled to notice pursuant to the Omnibus Procedures Order (collectively, the "**Notice Parties**").

## No Prior Request

27. No prior request for the relief sought herein has been made by the Plan Administrator to this or any other court.

WHEREFORE, the Plan Administrator respectfully requests entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  September 13, 2022
       St. Louis, Missouri

                                         Respectfully submitted,

                                         CARMODY MACDONALD P.C.

                                         */s/ Robert E. Eggmann*
                                         Robert E. Eggmann, #37374MO
                                         Christopher J. Lawhorn, #45713MO
                                         Thomas H. Riske, #61838MO
                                         120 S. Central Avenue, Suite 1800
                                         St. Louis, Missouri 63105
                                         Telephone:  (314) 854-8600
                                         Facsimile: (314) 854-8660
                                         Email: ree@carmodymacdonald.com
                                                     cjl@carmodymacdonald.com
                                                     thr@carmodymacdonald.com

                                         *Local Counsel to the Plan Administrator*

                                         -and-

HALPERIN BATTAGLIA BENZIJA LLP
Julie Dyas Goldberg
Carrie E. Essenfeld
Neal W. Cohen
40 Wall Street, 37th Floor
New York, New York 10005
Telephone: (212) 765-9100
Email: jgoldberg@halperinlaw.net
   cessenfeld@halperinlaw.net
   ncohen@halperinlaw.net

*Counsel to the Plan Administrator*