**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | § | **Chapter 11** |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 20-43597-399** |
| **BRIGGS & STRATTON** | § | |
| **CORPORATION,** *et al.,* | § | **(Jointly Administered)** |
| | § | |
| **Debtors.** | § | |

**APPLICATION OF THE PLAN ADMINISTRATOR FOR ENTRY OF AN ORDER CLOSING CERTAIN CHAPTER 11 CASES AND GRANTING RELATED RELIEF**

Alan D. Halperin, as Plan Administrator (the "**Plan Administrator**") under the *Amended Joint Chapter 11 Plan of Briggs & Stratton Corporation and its Affiliated Debtors*, dated November 9, 2020 [Docket No. 1226] (the "**Plan**"),[1] by and through undersigned counsel, hereby files this application (the "**Application**"), pursuant to sections 105(a) and 350(a) of 11 U.S.C. §§ 101-1532 (as amended and applicable herein, the "**Bankruptcy Code**"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 3022(A) of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Eastern District of Missouri (the "**Local Rules**"), for entry of an order (a) authorizing the closure of: (1) Case No. 20-10575 (*In re Billy Goat Industries, Inc.*) and (2) Case No. 20-43598 (*In re Allmand Bros., Inc.*) (collectively, the "**Closing Cases**"); (b) leaving open the lead case, Case No. 20-43597 (*In re Briggs & Stratton Corporation*); and (c) granting related relief.  In support of the Application, the Plan Administrator respectfully represents as follows:

1. On July 20, 2020 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under the Bankruptcy Code.  The Debtors are authorized to continue

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

{00321965.1 / 1380-001 }

to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On August 5, 2020, the United States Trustee appointed an official committee of unsecured creditors (the "**Creditors' Committee**") in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. The Debtors' chapter 11 cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015(b).

3. On September 15, 2020, the Court entered an order authorizing the Debtors to sell substantially all of their assets[2] to Bucephalus Buyer, LLC and on September 21, 2020, the Debtors closed the Sale Transaction.[3] On December 16, 2020, the Debtors filed the Plan, which was confirmed by the *Findings of Fact, Conclusions of Law, and Order Confirming the Plan* on December 18, 2020 [Docket No. 1485] (the "**Confirmation Order**").

4. The Effective Date of the Plan occurred on January 6, 2021 and the *Notice of (I) Entry of Order Confirming Second Amended Joint Chapter 11 Plan of Briggs & Stratton Corporation and its Affiliated Debtors and (II) Occurrence of Effective Date* [Docket No. 1538] was filed, at which time the Creditors' Committee was relieved of its duties and the Plan Administrator took over the administration of the Wind-Down Estates in accordance with the Plan. The Wind-Down Estates continue to honor their post-closing sale obligations, wind down the estates, and otherwise work on concluding these chapter 11 cases.

---

[2] *Order (I) Authorizing the Sale of the Asserts and Equity Interests to the Purchaser Free and Clear of Liens, Claims, Interests, and Encumbrances; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 898].

[3] *See Notice of (I) Filing of Amendment to Stock and Asset Purchase Agreement, And (II) the Occurrence of Closing of the Sale Transaction* [Docket No. 964].

5. On February 12, 2020, the Bankruptcy Court entered that certain *Order Approving (I) Claims Objection Procedures; (II) Claims Hearing Procedures; and (III) Granting Related Relief* [Docket No. 1614].

6. Pursuant to an order dated August 24, 2020 [Docket No. 564] (the "**General Bar Date Order**"), this Court established October 7, 2020 (the "**General Bar Date**") as the last day for non-governmental entities to file pre-petition claims against the Debtors and their estates, and January 19, 2021 as the last day for governmental entities to file pre-petition claims against the Debtors and their estates. In accordance with the General Bar Date Order, Kurtzman Carson Consultants, LLC, as Claims and Noticing Agent and Administrative Advisor, served a Notice of Deadlines to File Proofs of Claim and a Proof of Claim Form as evidenced by the Certificate of Service filed with this Court [Docket No. 576]. Additionally, in accordance with the General Bar Date Order, the Debtors published a notice of the General Bar Date in the national edition of the *New York Times* (national edition) and once in the *St. Louis Post Dispatch*, as evidenced by the Certificate of Publication filed with this Court [Docket No. 826].

7. By order dated October 19, 2020 [Docket No. 1121] (the "**Administrative Bar Date Order**"), this Court fixed November 23, 2020 as the deadline by which all persons or entities who hold claims arising during the administration of the chapter 11 cases between the Petition Date and October 19, 2020 (the "**Administrative Claims**") must file proofs of administrative claim against the Debtors.

8. In the Administrative Bar Date Order, the Court also established the deadline of January 19, 2021 at 5:00 p.m. (Central Time) for each Governmental Unit that asserts entitlement to administrative priority status under sections 503 and/or 507 of the Bankruptcy Code for claims that arose between the Petition Date and October 19, 2020.

9. On March 10, 2022, the Court entered that certain Order Closing Certain Chapter 11 Cases and Granting Related Relief [Docket No. 2101] (the "**First Case Closure Order**"). The First Case Closure Order closed the two non-operating debtor companies, *In re Briggs & Stratton International, Inc.* (Case No. 20-43599) and *In re Briggs & Stratton Tech, LLC* (Case No. 20-43600).

10. Pursuant to the Plan, the Reorganized Debtors continue to file quarterly reports and pay U.S. Trustee fees (the "**U.S. Trustee Fees**") based on the volume of disbursements made by each of the Debtors in the applicable calendar quarter. *See*, *e.g.*, 28 U.S.C. § 1930(a)(6) (requiring the payment of quarterly fees to the trustee). In light of the revised U.S. Trustee Fee scale recently enacted under the Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, on a prospective basis, ***each*** Debtor is required to pay between $325.00 and $250,000.00 in U.S. Trustee Fees per calendar quarter.

11. Pursuant to the Plan, the Plan Administrator has satisfied all allowed secured, administrative and priority claims and has made two interim distributions on account of general unsecured claims. The first interim distribution was in the amount of six percent (6%) at the Briggs & Stratton Corporation level, with corresponding amounts at the other operating company subsidiaries in accordance with the Plan's waterfall. The second interim distribution was in the amount of two percent (2%) at the Briggs & Stratton Corporation level, with corresponding amounts at the other operating company subsidiaries in accordance with the Plan's waterfall. The Disclosure Statement in these cases anticipated a recovery to general unsecured creditors of Briggs & Stratton Corporation in the range of 6-8%, the high end of which has been achieved.[4]

---

[4] Billy Goat and Allmand Bros. were forecasted much lower percentage recoveries, in the range of 1-2% total, at each company. For the avoidance of doubt, the vast majority of the anticipated recoveries at the Billy Goat and Allmand Bros. level have been distributed.

12. The Plan Administrator anticipates that there will be at least one more distribution to general unsecured creditors, but the timing of that and/or a final distribution in these cases is uncertain. That is because the timing of liquidation of the remaining assets to be liquidated for the benefit of creditors is not in the Plan Administrator's control (e.g. pending tax refunds, potential recoveries on workers' compensation collateral, plaintiff side litigations). Accordingly, the Plan Administrator believes it is in the Wind-Down Estates' best interests to minimize the administrative burden of the estates as much as possible to preserve and, hopefully, increase the remaining assets to be distributed to creditors. Closing the Billy Goat and Allmand Bros. cases will ease the administrative burden of the Wind-Down Estates for reporting and other administrative purposes.

13. All claims reconciliation in the Closing Cases is complete, and substantially all distributions have been made. The Plan Administrator proposes to report any small distributions that may remain under the Lead Case and to pay the requisite U.S. Trustee fees within that Lead Case.

## JURISDICTION

14. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

15. The statutory predicate for the relief requested herein is Bankruptcy Code sections 105(a) and 350(a). Such relief is also warranted under Bankruptcy Rule 3022 and Local Rule 3022(A).

## RELIEF REQUESTED

16. Pursuant to sections 105(a) and 350(a) of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 3022(A), the Plan Administrator requests the entry of an order (the

"**Proposed Order**")⁵ (a) authorizing the closure of: (1) Case No. 20-10575 (*In re Billy Goat Industries, Inc.*), and (2) Case No. 20-43598 (*In re Allmand Bros., Inc.*); (b) leaving open Case No. 20-43597 (*In re Briggs & Stratton Corporation*); and (c) granting related relief.

## BASIS FOR RELIEF

17. Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Further, Bankruptcy Rule 3022 provides that "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party interest, shall enter a final decree closing the case." Fed. R. Bankr. P. 3022.

18. In addition, in the Eastern District of Missouri, an application for a final decree must include information concerning:

- the date the order confirming the plan became final;
- whether deposits required by the plan have been made;
- whether the property proposed by the plan to be transferred has been transferred;
- whether the debtor or successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;
- whether payments under the plan have commenced;
- a breakdown of the disbursements, as applicable, from the inception of the case for fees and expenses of debtor's counsel and other professionals;
- the percentage dividend paid and/or to be paid, or an explanation of why the dividend percentage is not yet determinable;
- the status of all pending motions, contested matters, objections to claims, and adversary proceedings;
- a list of all motions, contested matters, objections to claims, and adversary proceedings which are to be filed;
- whether all fees due the United States Trustee have been paid; and
- other facts as may be necessary to enable the Court to determine whether entry of the final decree is appropriate. The application for final decree shall state that the estate has been fully administered.

*See* Local Rule 3022(A). Local Rule 3022(A) further provides that:

---

⁵ Copies of the Proposed Order will be made available on the Debtors' case information website at http://www.kccllc.net/Briggs.

{00321965.1 / 1380-001 }                                  6

> No later than 3 months after entry of the confirmation order in a Chapter 11 case, the plan proponent must file an application for a final decree or show cause why the final decree should not be entered. At or before the show cause hearing, the plan proponent must file a status report as required herein. Commencing with the seventh month after confirmation, the plan proponent shall file a status report every 4 months until the entry of the final decree.

*Id.*

19. While the phrase "fully administered" is not defined in the Bankruptcy Code or in the Bankruptcy Rules, "fully administered" can be interpreted in various ways. "At one extreme, an estate could be fully administered when a Chapter 11 plan is confirmed and the estate dissolves . . . [a]t the other extreme, an estate could be fully administered when all that is called for under a plan occurs." *In re Mold Makers, Inc.*, 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990).

20. Bankruptcy Rule 3022 gives the court "flexibility in determining whether an estate is fully administered." *In re Federated Dep't Stores, Inc.*, 43 F. App'x 820, 822 (6th Cir. 2002). In fact, "bankruptcy courts are charged with reviewing each request for entry of a final decree on a case-by-case basis in determining whether an estate has been fully administered." *In re Shotkoski*, 420 B.R. 479, 483 (B.A.P. 8th Cir. 2009).

21. The Advisory Committee Note to Bankruptcy Rule 3022 explains that courts may consider the following factors when determining whether an estate has been fully administered:

- whether the order confirming the plan has become final;
- whether deposits required by the plan have been distributed;
- whether the property proposed by the plan to be transferred has been transferred;
- whether the debtor or the successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan;
- whether payments under the plan have commenced; and
- whether all motions, contested matters, and adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022 Advisory Committee Note (1991). However, several courts have noted that these six (6) factors are not requirements – rather, they are non-exclusive guides used in

determining if a case has been fully administered. *See In re Shotkoski*, 420 B.R. at 483; *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 542 (Bankr. E.D.N.Y. 1999); *In re SLI, Inc.*, Case No. 02-12608, 2005 WL 1668396, at *2 (Bankr. D. Del. 2005); *In re Mold Makers, Inc.*, 124 B.R. at 768. "The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future." Fed. R. Bankr. P. 3022 Advisory Committee Note (1991).

22. Additionally, other courts have found "that a Chapter 11 case should be considered 'fully administered' when it reaches a point of substantial consummation as defined in Section 1101(2) [of the Bankruptcy Code]." *In re Gates Cmty. Chapel of Rochester, Inc.*, 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) (citing *Walnut Assocs. v. Saidel*, 164 B.R. 487 (E.D. Pa. 1994)); *accord In re BankEast Corp.*, 132 B.R. 665 (Bankr. D.N.H. 1991). Section 1101(2) of the Bankruptcy Code defines "substantial consummation" as:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of business or of the management of all or substantially all of the property dealt with the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

## ARGUMENT

23. The Closing Cases have been "fully administered" within the meaning of section 350 of the Bankruptcy Code and the factors enumerated in the Advisory Committee Note to Bankruptcy Rule 3022. Specifically, in support of the entry of a final decree closing the Closing Cases, and pursuant to Local Rule 3022(A), the Reorganized Debtors disclose the following information:

| Question | Response |
|---|---|
| 1. The date the order confirming the Plan became final: | Confirmation Order – December 18, 2020<br>Plan Effective Date – January 6, 2021 |

{00321965.1 / 1380-001 }                                8

| Question | Response |
|---|---|
| 2. Whether deposits required by the Plan have been made: | Yes. |
| 3. Whether the property proposed by the Plan to be transferred has been transferred: | Yes. |
| 4. Whether each debtor or successor of each debtor under the Plan has assumed the business or the management of the property dealt with by the Plan: | Yes. |
| 5. Whether payments under the Plan have commenced: | Yes. |
| 6. A breakdown of the disbursements, as applicable, from the inception of the case for fees and expenses of the debtor's counsel and other professionals: | See FN.[6] |
| 7. The percentage dividend paid and/or to be paid, or an explanation of why the dividend percentage is not yet determinable:[7] | Briggs & Stratton Corp. – 8.0% <br><br> Billy Goat – 1.27% <br><br> Allmand Bros. – 0.99% |
| 8. The status of all pending motions, contested matters, objections to claims, and adversary proceedings: | There are no pending motions, contested matters, objections to claims, or adversary proceedings related to the Closing Cases. |
| 9. A list of all motions, contested matters, objections to claims, and adversary proceedings which are to be filed: | There are no anticipated motions, contested matters, objections to claims, or adversary proceedings expected to be filed related solely to the Closing Cases. The Plan Administrator will administer claims in the remaining case (Case No. 20-43597 (*In re Briggs & Stratton Corporation*). |
| 10. Whether all fees due to the United States Trustee have been paid: | Yes. |

---

[6] The Plan Administrator posits that this question is better answered when the Lead Case is sought to be closed. Given that all fees of Debtors' counsel were disclosed in final applications more than a year ago, the information is publicly available to any interested party. To randomly assign the value of such services to the Closing Cases, which are being closed for administrative convenience, would not provide any meaningful information to parties in interest. To the extent required, the Plan Administrator assigns no value to the disbursements for fees and expenses of Debtors' counsel and other professionals on account of the Closing Cases.

[7] These percentages apply to all creditors except for the Pension Benefit Guaranty Corporation, which subordinated the first $5 million of its recoveries for the benefit of other unsecured creditors, reducing its percentage recovery.

24. Closing the Closing Cases would eliminate inefficiencies in management of estate assets by virtue of carrying the burden of reporting on two entirely administered cases. The Plan Administrator remains focused on returning the greatest recovery to the creditors. In furtherance of this goal, entry of an order closing the Closing Cases would stop the financial drain on the Debtors imposed by the accrual of the revised U.S. Trustee Fees and support the Plan Administrator's continued efforts to streamline these chapter 11 cases. *See In re Jay Bee Enters., Inc.*, 207 B.R. 536, 539 (Bankr. E.D. Ky. 1997) (concluding "it seems appropriate to close this case to stop the financial drain on the debtor" on account of the continuing accrual of fees under 28 U.S.C. § 1930).

25. The closure of the Closing Cases will not impair the rights of any economic party in interest. Rather, the continuation of the Closing Cases is simply unnecessary for the Debtors to accomplish the remaining claims administration process. Therefore, for the reasons outlined above, the Plan Administrator submits that justification exists for the Court to grant the relief requested herein.

## **RESERVATION OF RIGHTS**

26. The Plan Administrator reserves the right to further supplement this Application as necessary, in accordance with applicable law. Without limiting the generality of the foregoing, the Plan Administrator specifically reserves the right to amend this Application, file additional papers in support of this Application, and take other appropriate actions, including, but not limited to, responding to any allegation or objection that may be raised in response to this Application.

## **NOTICE**

27. Notice of this Application has been given to the Office of the United States Trustee, the PBGC, and any other party entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Plan Administrator submits that no further notice is required.

## NO PRIOR REQUEST

28. No prior request for the relief sought in this Application has been made to this Court or any other court in connection with these chapter 11 cases.

## CONCLUSION

WHEREFORE, the Plan Administrator respectfully requests entry of the Proposed Order (a) authorizing the closure of: (1) Case No. 20-10575 (*In re Billy Goat Industries, Inc.*), and Case No. 20-43598 (*In re Allmand Bros., Inc.*); (b) leaving open Case No. 20-43597 (*In re Briggs & Stratton Corporation*); (c) entry of a final decree; and (d) granting such other and further relief as the Court may deem just and appropriate.

[*Reminder of Page Intentionally Left Blank*]

Dated: September 19, 2022
      St. Louis, Missouri

Respectfully submitted,

CARMODY MACDONALD P.C.

*/s/ Robert E. Eggmann*
Robert E. Eggmann, #37374MO
Christopher J. Lawhorn, #45713MO
Thomas H. Riske, #61838MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 854-8600
Facsimile: (314) 854-8660
Email: ree@carmodymacdonald.com
        cjl@carmodymacdonald.com
        thr@carmodymacdonald.com

*Local Counsel to the Plan Administrator*

-and-

HALPERIN BATTAGLIA BENZIJA LLP
Julie Dyas Goldberg
Matthew Murray
40 Wall Street, 37th Floor
New York, New York 10005
Telephone: (212) 765-9100
Email: jgoldberg@halperinlaw.net
        mmurray@halperinlaw.net

*Counsel to the Plan Administrator*